## PROCEDURAL HISTORY

Petitioner was convicted by jury on February 18th, 2017 for allegedly committing the offenses of Aggravated Obstruction of a Highway of Commerce, and possession of cocaine. On November 15, 2016, a habitual offender hearing was held, in which petitioner was found to be a fourth-felony offender. Thereafter, the trial judge sentence petitioner under LSA- R.-S. 15:529.1 to the mandatory sentence of life as to count one (Aggravated Obstruction of a Highway) and twenty years at hard labor as to count two (possession of cocaine). The sentences were order by the trial court to be serve concurrently.

Petitioner appealed his conviction and sentence to the Louisiana's Court of Appeal, First Circuit. The Circuit Court affirmed petitioner's conviction and sentence on September 21, 2017. (No: 2017-KA-0080) Petitioner then sought Review from Louisiana's Supreme Court. On June 15, 2018, the Louisiana Supreme Court denied Review.

On July 29th, 2019, petitioner filed an Application for Post-Conviction- Relief with Memorandum of Law and exhibits into the 22nd Judicial District Court, Parish of St. Tammany, presenting constitutional violations that will be discuss below. On September 17th, 2019, the trial court denied relief. Petitioner Sought Supervisory Review from Louisiana's Court of Appeal, First Circuit. *State v. Brumfield, 2019 KW 1414.* The Circuit Court denied review on March 13, 2020. On April 8th, 2020, petitioner applied for Supervisory Review from the Louisiana Supreme Court. On November 4th, 2020, the Louisiana Supreme Court denied relief.

After reviewing the Procedural History of this case, it must be determine this Application for Writ of Habeas Corpus is timely filed.

2

## CONSTITUTIONAL VIOLATION

*1).   HAS THE STATE COURTS COMMITTED REVERSIBLE ERROR WHEN THEY MADE DETERMINATION OF FACTS AND EVIDENCE IN DISPUTE WHICH WAS CONTRARY TO AND/ OR INVOLVED AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW AS DETERMINE BY THE SUPREME COURT OF THE UNITED STATES?*

### SUMMARY OF EVIDENCE

**A. Denied a right to judicial review on direct appeal.**

**LSA-Const. Art. 1 § 19 provides:**

No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. This right may be intelligently waived....

La. Cr.C.P. Art. 843 pertinently states:

In felony cases . ...the clerk of court stenographer shall record all of the proceedings, including the examination of witnesses, statements, rulings, orders and charges by the court and objections, questioning, statements and arguments of counsel.

Moreover, in criminal proceedings the court reporter shall record all portions of the proceedings required by law and shall transcribe those portions of the trial proceedings required by R.S. 13: 961 (C).

The Louisiana Supreme Court and the Untied States Supreme Court have made it clear that a criminal defendant has a right to a complete transcript of the trial proceedings particular where, as in this case appellant counsel was not counsel at trial. *State v. Boatner,* 03-485 (La. 12/3/03, 861 So.2s 149, 152).

Material omissions from trial court proceedings bearing on the merits on an appeal require reversal. *State v. Boatner,* 03-485 (La. 12/3/03, 861 So.2s 149, 153. However, "slight inaccuracy in a

3

record or an inconsequential omission from it which is immaterial to the proper determination of the appeals" does not require reversal of a conviction. Id., quoting *State v. Brumnfield*, 96-2667 (La. 10/28/98), 737 So.2s 660, 669, cert denied, 526 U.S. 1025 (1999); *State v. Parker*, 361 So.2d 226, 227 (La. 1978). A defendant is not entitled to relief of an incomplete record absent a showing of prejudice based on the missing portions of the transcripts. Id.

In this case, there are portions of the transcripts that weren't transcribed because it was an off the record bench discussion, see Exhibit-"A", pages 135,137,143, 157,159, 166,168,267,457,& 485-89. On pages 172,m 73,273, 290, off the record discussion were held but such was transcribed and did correctly and accordingly to the law and statute. Petitioner would like to point out on page 485, the court stated:

THE COURT

Yes, Lets do the charge conference (court adjourned).

Petitioner represents and shows he wasn't present during said proceedings and such wasn't transcribed and made part of the appellant record. On the following day of trial (page 489 attached under Ex.- A) which states:

THE COURT

Counsel, we went over instructions yesterday after court and made a few changes.

MR. MACKE

No objection from the state, pursuant to the changes that were made at that pretrial conference or the charge conference.

MR. BARROW

The only objection I had your honor is, and I asked for it was the off the record in chambers asked for a responsive to the Agg. Obstruction of a highway to be reckless operation. I believe it contains some of the lesser included facts, and I believe it would be appropriate to include it as a

4

responsive verdict to Agg. Obstruction. I know your Honor is not inclined to do that, but just note my objection.

Petitioner wasn't present, whatever went on during the charge conference should have been transcribed and made part of the appellate record, being such was did off the record in chambers. Petitioner can't challenge on appeal or post-conviction proceedings if his lawyer was ineffective at such conference or if any of his other constitutional rights were violated.

La.Cr.C.P. Art. 843 requires either the clerk of the court reporter to record all proceedings, including the examination of prospective jurors, rulings, objections, and arguments of counsel. In State Pinion, 06-2436 (La. 10/26/07), 968 So.2d 131, 134-35 (per curiam)(citations omitted), the Louisiana Supreme Court explained that "the failure to record bench conferences will ordinarily not affect the direct review process when the record suggest that the unrecorded had no discernible impact on the proceedings and did not result in any specific prejudice to the defendant.

As in *State v. Landry*, 97-499 (La. 6/29/990, 751 So.2d 214, 216, the record is grossly incomplete in several respects and the deficient record deprived the defendant of his constitutional rights of appeal and judicial review, Landry reaffirmed that "it is not the defendants obligation to ensure an adequate record....it is the duty of the court...to see that the court reporter makes a true, complete, and accurate record of the trial." 751 So.2d @ 216, citing in part La. Cr.C.P. Art. 17.

Petitioner represents and shows at one point the District Attorney had a discussion with one of the arresting narcotic agents, and such wasn't made part of the record. See Exhibit -A, last page which is transcript page 341, line 14-17, which provides:

THE COURT

I want you to discuss it with him now, and I'm sure you-all don't have any objection to that.

The trial was recessed, and I assumed at that time, the DA went discuss such with the officer. However, Petitioner, his lawyer, or the judge wasn't part of said discussion, and being such wasn't

5

transcribed and made part of the record, petitioner can't raise no claim or issue regarding such discussion. Such should have been made part of the appellate record. Whatever was discussed, counsel for petitioner had a right to be present.

Further, Petitioner represents and shows the appellate record didn't consist of any of the police reports regarding this matter or the affidavit of probable cause (See Ex.-B"), neither did said record contain any of petitioners Boykin transcripts regarding prior charges used to enhance his sentences see Ex.-"C". Petitioner represents he was prejudiced by such not being made part of the record, because he was denied error patent review, pursuant to La.Cr.C.P. Art 920(2), therefore, relief should be granted on this claim in its entirety.

B.   WHETHER THE PROSECUTOR KNOWINGLY USED FALSE TESTIMONY / INFORMATION TO OBTAIN A CONVICTION?

Petitioner avers that his constitutional rights by the United States Constitution 5th, 6th and 14th Amendment as well as the Louisiana Constitution Art. 1 § 13 and 16 were violated when the prosecution knowingly used false testimony or information to secure a conviction for the Aggravated Obstruction of a Highway of Commerce and Possession of Cocaine.

Petitioner avers that on June 10, 2019, he received a copy of his criminal file from his trial lawyer, Mr. Ernest E. Barrow, pertaining to his arrest, prosecution and conviction in this matters See Ex.-"D".

Petitioner contends that upon reviewing the documents in said file, he discovered a copy of his affidavit of probable cause, and several police reports, In the affidavit of probable cause, it clearly states:

"On Wednesday August 26, 2015, pursuant to a narcotics investigation it was learned Marlin Brumfield would be driving a white four door Nissan Titan and delivering promethazin with Codine (Schedule II) to an individual in the Wendy's parking lot located at 69340 Highway 21, Convington,

6

La."

Now at the Criminal trial in this matter Detective Scott Thomas testified at trial, that:

"Once he saw the vehicle description that we gave him that we were going to be in, he actually sent a text message to the cooperating individual asking who the white guy was with him."

Tr.p. 412.

So with that being testified to, under oath at trial, and in the affidavit of probable cause means the cooperating individual was in the parking lot. So, when detective Bart Ownby (T.p. 412), that the person was at the Sheriff's Complex such was a lie at trial, and perjured testimony at trial, and the prosecutor stayed mum and silent.

Further, detective Bart Ownby testified on trial p. 412 that:

"Detective, did the text message that you previously testified to in which the defendant said who is that white boy, is that what that text message said? Yes."

The only was that Det. Ownby and other detectives can say what the text message said, they either had to see said text, the only way that could have happened, if the cooperating individual was in the car with the detectives at the Wendy's parking lot, which shows and proves all detectives that testified to such at trial, lied under oath and perjured themselves. Petitioner never text-ed anyone he called the guy on his cell phone so that is why they could not retrieve any text off petitioner's phone or the so called cooperating individual phone.

Next perjury issue deals with the state allowing the detectives at trial calling the C.I. Cooperating individual a confidential informant. Although both words starts with a C/I, both words meant the same, and doesn't have the same meaning. Please see Tr.p. 335, which states:

A.   "We were working with the individual from a separate incident who determined he was going to cooperate with us and he subsequently led us to Mr. Brumfield.

Q.   It there a certain terminology for that individual?

7

A.    That's going to be a "cooperating individual."

A confidential informant is an unknown person who informs against another or a person who makes a practice esp. for money or informs police of others criminal activity and has been reliable in the past. At the trial of this matter, confidential informant was stated several times, see Tr.p. 322, 414, 417, 502, & 511. The prosecutor even referred to this guy as a confidential informant in his opening arguments (Tr.p. 322). Clearly, this guy should not have been called a confidential informant, when he wasn't one. Please see trans. p. 156, which states:

"Well, we was attempting to make a traffic stop to determine, to investigate further if we were wasting time or we were actually --if this guy was giving us good information."

The police themselves knew this guy wasn't reliable. Obviously he wasn't a confidential informant, because they wouldn't have referred to him as being a cooperating individual, they would have known he was reliable and credible. Again, the prosecutor never said one word, when such was stated at trial.

Next issue the petitioner would like to point out, several detectives testified at trial, when the petitioner was apprehended he immediately stated: "I will give you anybody you want." (Tr.P. 354)

Said statement is not true and perjured testimony. If said statement was true, why didn't the officers allow petitioner to do the very same as the cooperating individual was doing to the petitioner? The officers clearly stated that they were investigating Narcotics in St. Tammany Parish. So if they use a small fish to catch a medium fish, why not use a mid-level dealer to catch a King Pen ? Such was never the intentions of said officers. The intentions of the officers was to arrest the petitioner and send him to prison for life, being the officers were upset, that petitioner was a black man, dating a white female.

The state cannot contend these officers did not testify falsely in this case, because the record shows otherwise, and the use of perjured testimony violated clearly established law in accordance with

8

such cases as: *Napue v. Illinois*, 360 U.S. 264 (1954); *Pyle v. Kansas*, 317 U.S. 213 (1942); *Mooney v. Holohan*, 294 U.S. 103 (1935). In *Napue*, the Supreme Court held:

"Convictions obtained through the use of false testimony known to be such by representatives of the state is a denial of due process, and there is also a denial of due process when the state though not soliciting false evidence allows it to go uncorrected when it appears."

The material fact in this knowing use of perjury is evident. Petitioner's allegations are apparently true, as can bee seen from the exhibits and the trial testimony. Any reasonable court official should have known to allow these witnesses to testify falsely is shameful and violates Petitioner's constitutional rights. This court can find that the genuine issues of fact exist, that those particular state witnesses testified falsely, and the attached documents and trial records clearly established these reports were used to bring charges against petitioner. It would prove that the officers have filed false reports and false information to have charges brought against petitioner.

Petitioner further contends that he suffered prejudice due to these police witnesses committing perjury and testifying falsely. Had the witnesses not committed perjury or testified falsely, petitioner would not have been convicted. The testimony of these witnesses were the only testimony (evidence) that was vital to the petitioners case. The jury relied upon their testimony in reaching a verdict. Had the jury been made known of these witnesses perjury (untruthfulness) there would have been a different outcome. Petitioner submit that his conviction and sentence be reversed on the prosecution knowing use of false or perjured testimony. Being that the prosecutor made the jury aware of the fact no nuns were in that van. Please be advised that is the sole and only time the state pointed out a lie to the jury. See Tran.p. 494 which states:

"And I know some of you have probably heard one of the officers testimony that were nuns and then the deacon came and said, oh, it was me and my wife."

The above is what is required by law, and should have been did each time when such occurred

9

at this trial, but wasn't therefore, relief should be granted in its entirety.

C.      Whether law enforcement and the district attorney discriminates against the Black, African-American Race in St. Tammany Parish?

Petitioner represents and shows race plays a major factor in St. Tammany Parish when a person is arrested and prosecuted. African-American (black), males are discriminated when arrested. A black male more then likely will be over-charged for violating the laws in said parish. However, a white male with the same record more likely won't be arrested, and he has violated too. If he is arrested, he would be arrested for a lesser crime than the black male, which is unconstitutional.

Petitioner further represents and shows its unfair and offensive and discriminatory practices for a black defendant charged with a crime, be charged as a habitual offender when they exercise constitutional rights to a trial and get convicted. However, when a white male or white person exercises their rights to trial in St. Tammany Parish, and get convicted they don't get prosecuted as a habitual offender, and their record is 10 times worse than a black defendants record. Such has been the practice in St. Tammany parish for several years. Article 61 states:

"Subject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every prosecution instituted or pending in his district, and determines whom, when and how he shall prosecute."

Petitioner represents and shows he would like to propound discovery on the district attorney for the parish of St. Tammany Parish for the last 10 years for further support his claim. Said discovery will clearly show blacks are discriminated against and receive harsher sentences that white offenders. Therefore, once discovery is completed, petitioner would like to supplement this claim, and other claims. To deny petitioner to propound discovery would be stopping petitioner from proving his claim. Also, such would be denying him due process and equal protection of the laws which is forbidden by the United States Constitution, Amendment 14. Petitioner further represents and shows this honorable

10

court and other judges within St. Tammany Parish may be called to court to testify regarding this claim, which may cause for all judges within the 22nd Judicial District Court to rescue themselves from this case, and have the Louisiana Supreme Court, to appoint a retired judge to handle all future proceedings in this matter, as it pertains to this instant application for post-conviction relief, as it pertains to petitioner.

## LAW AND ARGUMENT OF CLAIM 2

### THE STATUTE CREATING THE OFFENSE FOR WHICH HE WAS CONVICTED AND SENTENCED IS UNCONSTITUTIONAL

Aggravated Obstruction of a Highway of Commerce is Unconstitutional being its vague, overboard, ambiguous, and doesn't include interstate in the statute.

As a general matter, a statute is presumed to be constitutional, and the burden of showing otherwise falls to the challenger. *State v. Muschkat*, 706 So.2d 429. Further, criminal statutes are given a genuine construction according to the fair import of their words, taken in their usual sense, in context, and with reference to the purpose for the provision La. R.S. 14:3; *Muschkat*, 706 So.2d @ 432; *State v. Griffin*, 495 So.2d 1306, 1308 (La. 1986). Additionally, when the constitutionality of a statute is at issue, and under one construction it can be upheld, while under the other it cannot, a court must adopt the constitutional construction. *State v. Lecompte*, 406 So.2d 1300, 1311 (La. 1981). Therefore, a court may avoid constitutional problems by adopting a narrowing construction of the statute as long as that interpretation remains consistent with the overall purpose behind the legislation. *Muschkat, Supra.*, (stating "[W]hile we recognize our duty to interpret statutes in a manner consistent with the state and federal constitutions, we may only preserve a statue by a constitutional construction provided that the saving construction is a plausible one.") (Citation omitted). In addition to criminal statutes being strictly and narrowly construed, any ambiguity must be resolved in favor of the accused. *State v. Williams*, 800 So.2d 790; *State v. Carr*, 761 So.2d 1271.

Petitioner represents and shows within the current statutory criminal law and procedure it states each and every offense except for R.S. 14:96. Whereas, the alleged conduct is not allowed by statute is clearly spelled out. However, R.S. 14: 96 is unconstitutional because it does not spell out what conduct is a violation of the statute. A citizen can not be arrested for violating state laws when the law is as vague as R.S. 14:96, because a citizen cannot reasonably understand the conduct, citizens cant be punished or arrested, unless they have been given advance "fair notice" of the action they charged with is prohibited. The prohibited description must be clear and not vague. Citizens should not be made to abide by laws that they have not been informed of. The criminal statute defines R.S. 14:96, as follows:

"Simple Obstruction of a highway of commerce is the intentional or criminally neglect placing of anything or performance of any act on any railway, railroad, navigable waterway, roadway of an air port, wherein it is foreseeable that human life might be endangered."

Being that performance of "any act" is too broad, uncertain, vague, and ambiguous. The citizens do not know what conduct they are being arrested for. This allows law enforcement to make rules as they go or as incidents arise. Legislature can not make a rule or law, that conflicts with state and federal law or the Louisiana and United States Constitution. If a citizen as myself, was aware that the act or actions were a crime or a violation of the law, there is a very strong probability they would have not done the violation. By having such a vague law when law enforcement can not charge a citizen with a certain violation they use the statute R.S. 14:96, which is a catch-all, and is illegal, unlawful, and unconstitutional. Especially, in the petitioner's case. He should have been charged with speeding, hit a run, flight from an officer, running a red light or two, which all are misdemeanor offenses which carries no more than 6 months (non-felony).

According to the statue as it is currently written, anybody who is speeding, driving reckless, runs a red light or stop sign, throws trash out of the window while driving, a person who crosses the road or highway walking really slow and a car must swerve or leave the highway from hitting that

12

person, all could be charged under this unconstitutionally broad statute (R.S. 14:96). Even a mother or parent whom allows their young child to walk across the roads or highways, and a car almost hit the child, and must leave the highway to keep from hitting said child. Petitioner can go on and on but will stop here, the law is vague and nobody shouldn't have to guess or wonder if or if not their actions constitute a crime.

Now if, and I say only if this Honorable Court does not find R.S. 14:96, to be unconstitutional, such is unconstitutional as it is applied to the petitioner in this instant case, being interest is not part of the criminal statute. Further, because Louisiana has a stand your ground law, which gives a person the right to use deadly force if he fears for his life or to stop an intruder. All officers testified at trial, petitioner hadn't broken any laws when they tried to box him in their unmarked car. So at that point, petitioner feared for his life, and had the right to kill, but instead, he fled the scene, at a high rate of speed being being he was scared, afraid, and out of his mind thinking several white men were out to kill him and kidnap him, especially since none of the policemen had their lights or sirens on when they tried to block him in, when the chase first started. Please see transcript page 385, lines 15-21, which states:

"My practice is being an unmarked, I know people don't really recognize my truck to be a police vehicle. They may not see the light because they are more directed to the front and not the side, so I typically slow or stop, if I have to at every intersection and make sure I don't injure someone or get injured."

Now, the state of Louisiana is trying to hold the petitioner to a higher standard than everyday citizens. If citizens of this state, and St. Tammany Parish can't recognize and determine an unmarked police car with flashing lights and sirens on, what makes the petitioner so different, that he suppose to recognize such? Petitioner urges this honorable court to find such unconstitutional as it pertains to petitioner's case, under these circumstances being he was out of his mind, afraid being he thought he

13

was about to be killed by these unknown white men.

## CLAIM NO. 3
### THE COURT EXCEEDED ITS JURISDICTION

Petitioner contends that his conviction and sentence regarding the crime of aggravated obstruction of a highway of commerce is illegal and contrary and in conflict with La. Cr.C.P. Art. 872, which states: "A valid sentence must rest upon a valid and sufficient:

(1) Statute;

(2) Indictment; and

(3) Verdict, Judgment, or plea of guilty."

Petitioner represents and shows his conviction and sentence are invalid, and the trial court didn't have jurisdiction to proceed to trial regarding count-1, in this matter. In order for trial and its verdict and judgment to be valid it is essential that the indictment it is based upon be itself valid. The judge therefore had no authority or legal power to sentence petitioner as to count one. There can be no trial, conviction, or punishment for a crime without a formal and sufficient accusation. *State v. Soileau*, 138 So.92 (1931), recognizes the jurisdictional requirements by making a valid and sufficient indictment a prerequisite for a valid sentence.

Although petitioner was charged by a bill of information rather than by indictment, the law is the same as it pertains to both. An indictment must contain every element of the charged offense to pass constitutional muster. This is because "[t]he Sixth Amendment guarantees every defendant the right to be informed of the governments accusation against him." The district court should have observed that count 1 failed to allege that the state failed to charge the petitioner with a crime in count 1 of the bill of information, Exhibit-E which states:

"Count-1, R.S. Aggravated Obstruction of a Highway, Marlone R. Brumfield, on or about August 26, 2015, by the intentional or criminally neglect placing of anything or performance of any

14

act, on any railway, railroad, navigable waterway, road, way of an airport, wherein it is foreseeable that human life might be endangered."

Please note, "of commerce" is not within the information but is included in the statute of said offense. Such does not charge a crime / offense, the prosecutor merely recited the statute as is written in the criminal code, which is incorrect. Petitioner has enclosed a bill of information which was filed, against him in his previous charges, see Ex- "F" which is the correct way to file a bill of information. The petitioner represents and shows he was prejudiced in preparing a defense in this matter. The statute does not include "interstate" in the wording of said statue. Petitioner represents and shows if he did violate any laws, it would be on the interstate. However, since interstate is not part of the statute itself, petitioner didn't and couldn't violate said statute. Clearly, when the state didn't include in the bill of information what unlawful act petitioner committed.

Now the prosecutor is a very smart and intelligent individual whom went to law school and pass the bar to be a lawyer. Also has filed many bills of information within the 22nd Judicial District Court, therefore this honorable court shouldn't allow the state to use mistake or ignorance of the law, for not filing a proper bill of information. If the defendant cant use mistake or ignorance for a defense for breaking the law, the state shouldn't be allowed to use such when prosecuting the law.

Being Count -1, neither contains every element of the offense charged under R.S. 14:96, nor refers with sufficient specificity to the alleged act committed by petitioner, the bill of information did not allege

a cognizable offense and the trial court neither the state had jurisdiction to proceed to trial on said charges, therefore, relief should be granted in its entirety on this claim pursuant to *U.S. v. Cabera-Teran*, 168 F.3d 141 (C.A. 5 Cir. 1999).

## LAW AND ARGUMENT CLAIM NO. 4

15

## INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Generally, an ineffective assistance of counsel claim must be appropriately addressed through an application for post conviction relief filed in the district court, where a full evidentiary hearing can be conducted, if necessary, rather than by direct appeal. *State v. Jones*, 13-19 (La. App. 5 Cir. 8/27/13), 123 So.3d 758, 765, See *State v. Hartshorn*, 09-47 (La. App. 5 Cir. 11/10/09), 25 So.3d 172, 181., writ denied, 09-2654 (La. 6/4/10), 38 So.3d 298.

Under the Sixth Amendment to the United States Constitution and Article 1 § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. *State v. McDonald*, 04-550 (La. App.5 Cir. 11/16/045), 889 So.2d 1039, 1042, writ denied, 04-3088 (La. 4/1/05), 897 So.2d 599. A claim of ineffective assistance of counsel must satisfy the two pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984); *State v. Dabney*, 05-53 (La. App. 5 Cir. 6/28/05), 908 So.2d 60, 63.

Under the *Strickland v. Washington* test, the defendant must show: 1) that counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under the professional norms; and 2) that the deficient performance prejudiced the defense. *State v. Dabney*, 05-53, 908 So2d at 63(Citing *Strickland*,466 U.S. at 687, 104 S,Ct. At 2064). This requires showing that counsel's errors were so serious as to deprive the defendant of a trial whose result is reliable. Id. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the out come. Id.

A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Id. There is no precise definition of reasonably effective assistance of counsel, so any inquiry into the effectiveness of

counsel must be specific to the facts of the case, and must take into consideration the counsel's perspective at the time. *State v. LeCaze*, 99-0584(La. 1/25/02), 824 So.2d 1063, 1078-79, cert. Denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed. 2d 110 (2002). The Sixth Amendment does not guarantee error-less counsel or counsel judged ineffective by hindsight. Id.

Petitioner represents and shows his counsel was ineffective at trial when he did not move for a mistrial. At trail on transcript page 340 & 341, which states:

BY MR. MACKE

Q.      You may continue.

A.      "Once he sent that text message, we had a good idea that that's who was going to be in the vehicle. And one of the other detectives has dealt with him on numerous other occasions and actually know him personally through previous arrests. And once that detective, saw him he said that's who it is and that's when we knew - -

MR. BARROW

I'm going to object. That's hearsay. Although counsel lodged an objection, he should have requested a mistrial at that moment. Once the bell has rung, you can not take away the sound. La.C.Cr.P. Art. 775 provides that the trial court shall grant a mistrial when prejudicial conduct in or outside of the court room make it impossible for the defendant to obtain a fair trial. Being counsel did not request for a mistrial, the court could not grant a mistrial. However, the judge immediately knew that the Petitioner would be prejudiced and could not receive a fair trial at that point. So what does the judge do ? Still on trial page 340, line 15-31, which states:

THE COURT

I'm going to sustain that objection. I'm going to admonish the jury not to consider the last answer at all. Don't consider that at all, okay ?

I want to take a short recess. Ladies and gentlemen, if you would just step out, it's not going to be more than two minutes. Okay.   (JURY EXITS)

THE COURT

17

Be seated, counsel, I'm going to give you an opportunity to speak to your client - - to your witness and advise him that prior arrests are not something that can be gone into, and I need you -- all to make sure that other witness understand that that's totally improper.

Trial Transcript page 341, which provides:

THE COURT

I don't think in this case it was done maliciously, and I have admonished. But I'm going to admonish it now and make sure that it doesn't happen again.

Petitioner represent and shows the court in its decision to admonish knew Petitioner was prejudiced, but since he said: 'I don't think in this case it was done maliciously," he allowed the trial to continue. However, the statute does not require if it was did intentionally or unintentionally or maliciously or not, the statue says if the prejudice conduct make it impossible for the defendant to obtain a fair trial.

Now, defendant wanted to testify and catch the stand at his trial, however, he refused to do so, being other arrest and convictions would come before the jury and they would use such to convict on this instant charges he stood trial for, so other arrest and numerous run-ins with law enforcement prejudiced the petitioner before the jury, and made it appear as if the petitioner was a straight up out-law and bad person, and the jury would convict on such, without even considering any further evidence or testimony adduced at trial.

Now the State of Louisiana also knew that petitioner was prejudiced too, please continue trial transcripts page 341, lines 7-13, which provides:

MR MACKE

And the judge, the state just wants to put on the record that this individual is not the narcotic agent that does know Mr. Brumfield from the prior arrest, and we did speak with that individual any my apologies to the court for that.

18

A apology to the court does not cure that defect, only a mistrial would have done so. Now, what is more prejudiced to the petitioner, at no time whatsoever did his lawyer or the state make a request for the judge to even admonish the jury. La. Cr.C.P. Art. 771 which provides in part:

In the following cases, upon the request of the defendant or the state the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument withing the hearing of the jury when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:

(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Art. 770.

In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

In this case, if the trial court himself, went beyond the statute and law to admonish the jury without being asked by either party, the trial court obviously felt like the petitioner was prejudiced. The trial court even felt the need to talk to the witness and admonish the jury twice in this matter. Still on trial transcript page 341, lines 14-30, which provides:

THE COURT

    I want you to discuss it with him now, and I'm sure you all don't have any objection to that.

MR. BARROW

    No, you honor.

THE COURT

    Take about a two minutes. (Recess taken).

THE COURT

    Let's return the jury. (JURY ENTERS).

19

THE COURT

      Be seated please. I just want to re-emphasize and admonish again not to consider anything in that prior answer.

By the trial court putting further emphasis on the jury not to consider the prejudicial testimony and evidence of prior arrest and dealing with the petitioner such prejudice the petitioner and counsel was ineffective for not requesting a mistrial.

Next reason why counsel was ineffective during these proceedings because counsel brought race into his trial, and petitioner was on trial with an all white jury, except for one juror whom appeared to be half white. Counsel at trial stated on transcript page 331, that:

"In fact, Mr. Brumfield was getting a hamburger at Wendy's when four, at least four, burley white guys, late at night, in some ragged out cars with lights decide to chase him."

Such was not sound trial strategy,  and inflame the jury and prejudice the petitioner in the eyes of the jury. If the jury had considered finding the petitioner not guilty, once petitioner's counsel brought race in the trial, all defendant's chances of being found not guilty vanished. It wasn't no longer about the trial, the evidence, the testimony, it then became a race issue, being counsel had insulted the white jury, by alleging that their race of people jumped out on a black man, such prejudiced the petitioner, and had race not came before the jury as it did, petitioner would have been found not guilty at trial in this matter.

Now the next reason why counsel was ineffective in these proceedings, because at trial, he stated on transcript page 288, lines 12-18, which provides:

"Now, I know a lot of you, and I am too concerned about our budget situation. And I know a lot of you have probably been reading a lot about what—where we can cut, about how Louisiana has the highest incarceration rate per capital in the country.

The above statement prejudiced the petitioner before the jury at trial. First of all, the above

20

mentioned is not related to this case in any way whatsoever. Further, by counsel talking about high incarceration rate in Louisiana, he is basically saying that my client is guilty as charged, no need for a trial in this matter, but don't convict him to make the incarceration rate one more person on the already high rate. Once the jury had heard such, it had already determined petitioner was guilty as charged. No lawyer in his right mind would tell the jury his client is guilty but, this lawyer did such, making him totally ineffective at trial, which resulted in prejudice to petitioner, and led him to being convicted.

Next reason why counsel is ineffective in these proceedings, because trial transcript page 333, lines 15-20, which trial counsel stated:

"And knowledge that he had the cocaine on him is an element of the crime. If you find that he had the cocaine on him and that it was cocaine, then I put it to you, he had no idea it was there.

Said argument is without merit, and it prejudiced the petitioner at trial before the jury. At the trial on the merits several officers got on the stand and testified that he found the cocaine in a cigarette pack, on the petitioner's person. Counsel has committed a fraud upon the court and the jury, which made the jury look at counsel and defendant is a totally different light. The jury concluded if counsel went to the point to lie for defendant, the defendant had to be guilty of both charges being counsel was trying to fool and trick the jury. Had counsel not tried to trick and fool, lie, or commit a fraud upon the jury, he would have been found not guilty at trial.

Next reason why counsel was ineffective during these proceedings for the reasons stated in claims two and three of this application for post conviction relief, and claim 1(b) no competent attorney or no attorney in his right mind would allow his client to go to trial, and the trial court didn't have jurisdiction to proceed on one of the charges, or allow the prosecutor to use perjured testimony and information, or an unconstitutional charge / offense, said actions clearly prejudiced petitioner at trial.

Finally, petitioner represents and shows counsel was ineffective in these proceedings because he filed several different motions in this matter, and not one of said motions or pleadings are a motion to

21

quash, based on the statute being unconstitutional or the bill of information doesn't list the elements of the crime or the elements which constitute a crime within the statute. Said bill of information was defective and such prejudiced petitioner at trial. Had counsel filed a per-trial motion to quash, the outcome would have been different, therefore, relief should be granted on this claim in it entirety. Accumulative, all of defense counsel's errors amount to a denial of effective assistance of counsel during per-trial, and during trial in this matter.

**Witnesses addresses and names who could testify in support of my claims.**

### Claim 1 (A)

Ernest F. Barrow, III 113 E. 23rd Ave., Convington, La. 70433; Frederick H. Kroenke, Jr. 707 Rapides Street, Baton Rouge, La. 70806; Rachel Yezbeck 701 Loyola Ave., Ste. 404, New Orleans, La. 70113; The Three Judge Panel of the Court of Appeals, First Circuit Court of Appeals, whom heard said appeal, Baton Rouge, La.; Marlone Rashen Brumfield, Louisiana State Prison, Angola, La., Court Reporter, Theresa Trapan, Courthouse, Convington, La; and this case, Courthouse, Convington, La. Plus the record transcript of the trial proceedings.

### Claim 1 (B)

Asst. District Attorney, Kilion and Macke, both at Courthouse in Convington, La. Plus the record transcript of the trial proceedings. Marlone R. Brumfield La. State Prison; Attorney Ernest E. Barrow III,  113 E. 23rd Ave., Convington, La. 70433; and all police officers whom testified at trial, being that I am incarcerated and I don't have their addresses.

### Claim 1 (C)

The Sheriff and district attorney of St. Tammany Parish, Courthouse in Convington, La; Marlone R. Brumfield, Louisiana State Prison, Angola, La; Whatever discovery the state provides to petitioner in this matter, Attorney Ernest E. Barrow, III 113 E. 23rd Ave., Convington, La. 70433.

### Claim No. 2

22

The Louisiana Legislatures, State Capital, 22nd Floor, Baton Rouge, La. 70809, Marlone R. Brumfield, La. State Prison, Angola, La 70712, and all judges over this case, Courthouse, Convington, La. 70433;

### Claim No. 3

The District Attorney whom prosecuted this case, Courthouse, Convington, La.  Marlone R. Brumfield, La. State Prison, Angola, La 70712; Ernest E. Barrow, III 113 E. 23rd Ave., Convington, La. 70433;

### Claim No. 4

Marlone R. Brumfield, La. State Prison, Angola, La 70712; Ernest E. Barrow, III 113 E. 23rd Ave., Convington, La. 70433; The trial transcripts and appellant record, will best support this claim, plus the court reporter and clerk of court both located at the Courthouse in Convington, La.


## CONCLUSION AND PRAYER

WHEREFORE, petitioner pray that this Honorable Court reverse this conviction and sentence and order the State's court to either re-try petitioner in 90 days or release him from custody.


Respectfully Submitted,

Marlone R. Brumfield

Marlone Rashen Brumfield # 496966
CBC, L/R Cell # 8
Louisiana State Prison
Angola, La. 70712

23

## CERTIFICATE OF SERVICE

I _Marlone R. Brumfield_, have mailed a copy of this Application for Writ of Habeas Corpus with Memorandum of Law attached to THE Office of the District Attorney for the Parish of St. Tammy by placing same in the hands of the Classification Officer for this unit to be mail in accordance with the Department of Correction rules for mailing indigent legal mail. Done this _4th_ day of _December_, 2020.

_Marlone R. Brumfield_
Marlone Brumfield

Respectfully submitted

Marlone R. Brumfield #496966
General Delivery
Louisiana State Penitentiary
Angola, Louisiana, 70712

## CERTIFICATE OF SERVICE

I hereby certify that the enclose Application for Writ of Habeas Corpus has been forward to respondent by placing same in the  hands of the classification officer to be mail via legal mail for indigent inmates.

Amber Vittorio
EX-Officio  90067

TWENTY-SECOND JUDICIAL DISTRICT COURT
FOR THE PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 567470                                        DIVISION "E"

STATE OF LOUISIANA

VERSUS

MARLONE BRUMFIELD

FILED: _____          _____
                                              DEPUTY CLERK

## STATE'S RESPONSE TO MARLONE BRUMFIELD'S APPLICATION FOR POST-CONVICTION RELIEF

MAY IT PLEASE THE COURT:

This matter is before the Court pursuant to an application for post-conviction relief filed by Marlone Brumfield and dated July 23, 2019. There is no next scheduled court date.

*Summary of the argument.* The petitioner's arguments in support of his application for post-conviction relief lack merit, as follows: (1A) the record presented to the appellate court was sufficient to permit review of Brumfield's assignments of error on appeal; (1B) the prosecution did not knowingly present perjured testimony; (1C) the petitioner offers no evidence that the prosecution of his case was motivated by consideration of race; (2) the aggravated obstruction of a highway of commerce statute is not unconstitutionally vague; (3) the court did not lack subject matter jurisdiction; and (4) the petitioner's ineffective assistance of counsel claims lack merit because the petitioner fails to demonstrate deficient performance or prejudice.

*Request for summary adjudication.* Attached to this pleading are three supporting documents, which are enumerated in the margin.[1] The State submits that these documents—along with the existing trial record—are sufficient to allow the Court to determine the factual and legal issues summarily and "without further proceedings" pursuant to Article 929(A) of the Code of Criminal Procedure.

---

[1]  The attached documents are:
   Exhibit 1.   Probable Cause Determination (one page).
   Exhibit 2.   Police Report (thirteen pages).
   Exhibit 3.   Court of Appeal, First Circuit – *Notice of Lodging* (seven pages).

- 1 of 23 -

FILED

SEP 1 0 2019

MELISSA R. HENRY - CLERK
Deputy_____



# TABLE OF CONTENTS

1.    PERTINENT FACTS AND PROCEDURAL HISTORY.................................................3

2.    PETITIONER'S CLAIMS...............................................................................................6

3.    MERITS RESPONSE.....................................................................................................7

    3.1.    The petitioner's claim that he has been denied the right to
            appellate review (Claim 1A)..........................................................................7

    3.2.    The petitioner's claim that the prosecution knowingly presented
            false testimony
            at the trial (Claim 1B)................................................................................... 10

    3.3.    The petitioner's claim that "the district attorney discriminates against
            the Black, African-American Race in St. Tammany Parish" (Claim 1C). ........... 15

    3.4.    The petitioner's claim that La. R.S. 14:96 is unconstitutional (Claim 2)............. 16

    3.5.    The petitioner's claim that "the court exceeded its jurisdiction" (Claim 3). ....... 17

    3.6.    The petitioner's claims of ineffective assistance of counsel (Claim 4)................ 19

4.    CONCLUSION AND PRAYER. ...............................................................................23

1.    PERTINENT FACTS AND PROCEDURAL HISTORY

A.

The petitioner, Marlone Brumfield, has been convicted of two offenses: aggravated obstruction of a highway of commerce (R.S. 14:96) and possession of cocaine (R.S. 40:967C). He has been sentenced to life imprisonment as a habitual offender (R.S. 15:529.1).

The Louisiana First Circuit Court of Appeal has affirmed his convictions and sentences, which became final when the Louisiana Supreme Court denied writs on June 15, 2018. State v. Brumfield, 17-0080 (La. App. 1 Cir. 9/21/17), 232 So.3d 42, writ denied, 17-1790 (La. 6/15/18), 257 So.3d 683; La. C.Cr. P. art. 922(D).

II.

The petitioner in this case was arrested without a warrant. The arresting officer, Detective Scott Davis, submitted the following information in support of a determination of probable cause pursuant to Article 230.2 of the Code of Criminal Procedure:

> On Wednesday, August 26, 2015, Pursuant to a narcotics investigation it was learned Marlin Brumfield would be driving a white four door Nissan Titan and delivering Promethazine with Codeine (Schedule II) to an individual in the Wendy's parking lot located at 69340 Highway 21, Covington, LA.  Detective's set up surveillance in the parking lot, and at approximately 2139 hours, Detective's observed Brumfield's vehicle enter the Wendy's parking in the above Nissan Titan. Detective Jason Prieto initiated a traffic stop on Brumfield's vehicle using his audible siren and red and blue emergency lights as the vehicle was leaving Wendy's headed Northbound on Highway 21.  The Nissan Titan ignored the lights and sirens and made a U turn and headed Southbound on Highway 21 in excess of speeds of 100 miles per hour.  The Nissan Titan entered onto I12 Eastbound and turned off the headlights going in excess of 100 miles per hour running vehicles off the roadway.  The vehicle then exited on highway 190 going towards Covington.  Once on highway 190 the Nissan Titan ran several red lights and ran civilian vehicles off the roadway ignoring several fully marked St. Tammany Parish patrol units as they joined in the pursuit.  The Nissan Titan also hit another vehicle while fleeing, which resulted in taking off the side mirror of that vehicle.  After a lengthy vehicle pursuit the Nissan Titan crashed into a building located at 832 Boston St, Covington, LA.  Brumfield then fled on foot and was apprehended by St. Tammany Parish Criminal Patrol deputies. Search incidental to arrest, Detective's located suspected Marijuana in his pockets and "Crack" Cocaine inside a cigarette pack tucked in his underwear.  Upon searching the vehicle, Detective's discovered two large bottles of suspected Promethazine with Codeine.  Upon conducting a criminal history inquiry, it was discovered Brumfield had been convicted of two prior Possession of Marijuana charges and that his driver's license was suspended.

Detective Scott Thomas #9635 /_____
Arresting Officer

Sworn to and subscribed before me this 27th day of August , 2015 /0107hr

NOTARY PUBLIC   _____ #9605
Sgt Darren Blackman # 9605

Exhibit 1.

III.

The events occurring in the Wendy's parking lot were described in more detail in the report authored by Detective Thomas:

> Detective Scott Thomas of the St. Tammany Parish Sheriffs Office Narcotics Task Force, received information from a cooperating individual concerning the illegal distribution of controlled dangerous substances within the Covington, Louisiana area.
>
> In the presence of detectives, the CI used his personal telephone to initiate a text message conversation with a subject known to him as "Wacko". The

CI was unable to provide Wacko's real name. The CI coordinated a meeting with Wacko to buy a pint of codeine/promethazine cough syrup. Codeine/promethazine is commonly abused by mixing it in various sweetened beverages and drinking it, resulting in effects ranging from mild stimulation to dissociation by the user. Codeine/promethazine is classed as a schedule II controlled dangerous substance.

Wacko agreed to meet with the CI in the parking lot of Wendy's restaurant (located at 69368 Highway 21, Covington). The detectives involved in the operation were as follows: Detectives Scott Thomas, Roger Gottardi, Jay Quinn, Jason Prieto, Bart Ownby, Shane Wilkinson, and Sergeant Darren Blackmon. Detective Ownby was familiar with "Wacko", as he had previously arrested "Wacko" during a separate incident while working with Covington Police Department Criminal Investigations Division, and identified him as Marlon R. Brumfield (b/m, 27). He also stated Mr. Brumfield would probably attempt to evade the detectives.

A criminal history inquiry revealed Mr. Brumfield has been arrested on eight (8) separate occasions, with offenses including but not limited to: two (2) counts of possession of a controlled dangerous substance, two (2) batteries, two (2) assaults, two (2) counts of illegal use of weapons, one (1) count of resisting an officer. A copy of Mr. Brumfield's criminal history was printed and later turned. is as an attachment to his report.

*The CI remained at the St. Tammany Parish Sheriff's Office Law Enforcement Center (referred to in this report as LEC) with Detective Wilkinson. While at the LEC, the CI was in constant contact with Mr. Brumfield, via text messages.* The information the CI obtained from Mr. Brumfield was relayed to the detectives positioned at Wendy's by Detective Wilkinson, via department issued cellular phones and handheld radios. The CI described Mr. Brumfield's vehicle as a white or silver four door, either a Nissan or Chevrolet, truck.

At approximately 9:30 pm detectives strategically staged in the vicinity of Wendy's to ensure the entire parking lot was in view of at least one detective. After a few minutes, the detectives observed a white Nissan Titan pickup truck enter the parking lot.

As the vehicle entered the north side of the parking lot, the driver, a b/m wearing a white t-shirt, slowly drove around the restaurant. The vehicle moved slower than other traffic entering and leaving the parking lot. As he slowly drove past Detective Thomas and Gottardi's vehicle, the driver was staring at the detectives inside the vehicle; it seemed unusual that the driver stared at the detectives so intensely. He then slowly drove toward the back (west) side of the restaurant and noticed Detective Quinn's vehicle. Detective Ownby was also inside the vehicle.

Detective Quinn informed the other detectives he may have been identified as a law enforcement officer by the driver, however the detectives were unsure if the vehicle was the one Mr. Brumfield was in. *As the driver passed Detective Quinn, the CI received a text message asking who the white guy was. Detective Wilkinson relayed this message to the other detectives, via handheld radio.* Based off the text message, it was determined the vehicle the detectives were observing was the suspect vehicle. The vehicle exited the Wendy's parking lot before detectives could make contact with it and conduct a traffic stop. . . .

<u>Exhibit 2,</u> Bates-stamped pages 023-024 (emphasis supplied).

The Louisiana First Circuit Court of Appeal summarized the testimony about the events

occurring after the petitioner left the Wendy's parking lot as follows:

> Once defendant exited the Wendy's parking lot, the detectives decided to
> effect a traffic stop of the vehicle. In an attempt to do so, the detectives
> began to maneuver their unmarked vehicles around defendant's truck to
> try to box it in and prevent him from fleeing. At that time, they had not
> activated their emergency lights or sirens. Once defendant was boxed in
> on three sides (front, back, and left), the detectives activated their
> emergency lights. In response, defendant applied the truck's brakes,
> causing the police vehicles to the left and front to continue onward
> without him. He cut from the right lane of traffic, turned through the left
> lane, jumped the median on La. Hwy. 21, and began to travel at a high rate
> of speed in the opposite direction, disregarding traffic signals. Defendant
> eventually entered I-12 and traveled eastbound at speeds in excess of 100
> miles per hour. In doing so, he maneuvered his vehicle around several
> tractor-trailers and other passenger vehicles. In one particular incident,
> defendant cut in front of a tractor-trailer, causing it to slam on its brakes
> and the pursuing officers to drive on the interstate's shoulder to prevent a
> collision. As defendant continued to evade officers on I-12, he turned off
> his vehicle's headlights despite the darkness and time of day
> (approximately 9:45 pm.). Defendant exited the interstate at U.S. Hwy.
> 190 in Covington and continued to drive at a high rate of speed,
> disregarding traffic signals, and driving on the shoulder and median. He
> reached the Claiborne Hill area, where he sideswiped a church van that
> was traveling in the middle lane. He then turned onto Boston Street (U.S.
> Hwy. 190 Business) and then onto Lee Lane. He entered the Boston
> Commons parking lot, where the vehicle ultimately struck the
> handicapped ramp of an area business. Defendant exited the crashed
> vehicle and began to flee on foot, but he was soon apprehended.
>
> After being apprehended, defendant was informed of his Miranda rights
> and Deputy T.J. Schlesinger initiated an outer clothing pat down. Deputy
> Schlesinger felt what appeared to be a cigarette box on defendant's lower
> body. He received permission from defendant to remove the box, which
> was located inside defendant's underwear. Deputy Schlesinger opened the
> box with the defendant's permission and observed a substance that later
> tested positive as containing cocaine. Deputy Schlesinger also found a
> small quantity of marijuana in defendant's back pocket. A search of the
> vehicle driven by defendant revealed two bottles of red liquid. Chemical
> analysis of the liquid in these bottles indicated that the substance was
> diphenhydramine (Benadryl). Defendant did not testify at trial.

State v. Brumfield, 17-0080 (La. App. 1 Cir. 9/21/17), 232 So.3d 42, 46-47.

### 2.    PETITIONER'S CLAIMS.

The petitioner makes six claims in his application for post-conviction relief (four claims including one claim with three sub-claims), as follows:

1.    The conviction was obtained in violation of the Constitution of the United States and Louisiana Constitution.

     A.    Denied a right to judicial review on direct appeal.

     B.    Whether the prosecutor knowingly used false testimony / information to obtain a conviction?

     C.    Whether law enforcement and the district attorney against the the Black, African-American Race in St. Tammany Parish?

2.    The statute creating the offense for which he was convicted and sentenced is unconstitutional.

3.    The court exceeded its jurisdiction.

4.    Ineffective assistance of trial counsel.

See Memorandum of Law in Support, pp. 3-5 (Claim 1-A); id. at pp. 5-8 (Claim 1-B); id. at pp. 8-9 (Claim 1-C); id. at pp. 9-11 (Claim 2); id. at pp. 11-12 (Claim 3); id. at pp. 12-17).

3.     **MERITS RESPONSE.**

    3.1.     **The petitioner is not entitled to post-conviction relief based upon his claim that he has been denied the right to appellate review (Claim 1A).**

        A.     **The details of the petitioner's claim.**

The petitioner claims that he has been denied his right to appellate review because "there are portions of the [proceedings] that weren't transcribed because it was an off the record bench discussion." Memorandum of Law in Support of PCR Application, pp. 3-4. He identifies three deficiencies in the record on appeal, concerning: (1) trial court's instructions to the jury, (2) a discussion between the prosecutor and a witness, and (3) the absence of certain documents from the record on appeal. Memo in Support, pp. 4-5.

        B.     **Overview of the applicable law.**

Article 843 of the Code of Criminal Procedure provides: "In felony cases . . . the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel."

The purpose of this statute is to facilitate the defendant's right to judicial review. A violation of this statute, however, does not require that a defendant be granted a new trial. To be entitled to a new trial, a defendant must make "a showing of prejudice based on the missing portions of the transcript." State v. Boatner, 03-0482 (La. 12/03/03), 861 So.2d 149, 153.

To show prejudice, the defendant must demonstrate the existence of an assignment of error which the appellate court is unable to review. See, e.g., State v. Caminita, 16-0121 (La. App. 1 Cir. 9/16/16), 203 So.3d 1100, 1109 (defendant failed to show prejudice because the defendant's assignment of error "was reviewable from the sealed jury question, the minute entry of the trial court's ruling, and the applicable law").

        C.     **There is no merit to this claim because petitioner fails to show prejudiced from the alleged omissions from the record on appeal.**

*i.*

The first complained-of deficiency concerns the court's instructions to the jury. The record shows that, after the parties rested, and after the jury was discharged for the evening, the court and the parties had a "charge conference." RECORD ON APPEAL, pg. 485, lines 11-15.

The following morning, the following proceedings occurred:

| THE COURT: | Counsel, we went over instructions yesterday after court and made a few changes. |
| | Are there any objections? |
| PROSECUTOR: | No objection from the State.... |
| DEFENSE: | The only objection I had, Your Honor, is, and I asked for it and it was of the record in chambers, asked for a responsive to the agg[ravated] obstruction of a highway of commerce by reckless operation. I believe it contains some of the lesser included facts, and I believe it would be appropriate to include it as a responsive verdict to agg obstruction. |

RECORD ON APPEAL, pp. 489-490. After that, the parties made their closing arguments. Id. at 491.

From the above-quoted exchange, the petitioner argues: "Petitioner wasn't present, whatever went on during the charge conference should have been transcribed and made part of the appellate record, being such was did off the record in chambers. Petitioner can't challenge on appeal or post-conviction proceedings if his lawyer was ineffective at such conference or if any other of his constitutional rights were violated." Memo in Support, pg. 4.

The petitioner could have challenged the trial court's failure to give the requested instruction to the jury: a party may assign as error the failure to give a jury charge so long as (1) the objection is made before the jury retires and (2) the nature of the objection and the grounds therefor are stated at the time of the objection. La. C.Cr. P. art. 801(C). Here, defense counsel objected to the trial court's failure to give a jury charge before the jury retired for deliberations and, when making the objection, stated the nature of the objection (the refusal to include reckless operation as a responsive verdict) and the grounds therefor ("it contains some of the lesser included facts").

The absence of a transcript of the "charge conference" therefore did not *preclude* the defendant from seeking appellate review of the trial court's decision to exclude reckless operation as a responsive verdict. (A review of the record shows that the defendant opted not to seek appellate review of that ruling). Accordingly, the petitioner fails to show prejudice resulting from the omission of the charge conference from the record on appeal.

*ii.*

The second complaint is that "the district attorney had a discussion with one of the arresting narcotics agents, and such wasn't made part of the record." Memo in Support, pg. 5. Specifically, during the testimony of Detective Scott Thomas, Detective Thomas said "one of our

other detectives has dealt with [Mr. Brumfield] on numerous other occasions and actually knows

him personally through previous arrests." RECORD ON APPEAL, pg. 340.

The defendant's attorney objected, and the trial court sustained the objection as follows:

| | |
|---|---|
| THE COURT: | I'm going to sustain that objection. |
| | I'm going to admonish the jury not to consider the last answer at all. Don't consider that at all, okay? |
| | I want to take a short recess. Ladies and gentlemen, if you would just step out, it's not going to be more than two minutes. Okay. |
| | (JURY EXITS.) |
| | Be seated. Counsel, I'm going to give you an opportunity to speak to your client -- to your witness and advise him that prior arrests are not something that can be gone into, and I need you-all to make sure that other witnesses understand that that's totally improper. |
| PROSECUTOR: | And, Judge, just for the -- |
| THE COURT: | I don't think in this case it was done maliciously, and I have admonished. But I'm going to admonish it now and make sure that it doesn't happen again. |
| PROSECUTOR: | And, Judge, the State just wants to put on the record that this individual is not the narcotic agent that does know Mr. Brumfield from the prior arrest, and we did speak with that individual and my apologies to the Court for that. |
| THE COURT: | I want you to discuss it with him now, and I'm sure you-all don't have any objection to that. |
| DEFENSE: | No, Your Honor. |
| THE COURT: | Take about two minutes. |
| | (RECESS TAKEN). |

RECORD ON APPEAL, pp. 340-341.

The petitioner argues: "Petitioner, his lawyer, or the judge wasn't part of said discussion,

and being such wasn't transcribed and made part of the record, petitioner can't raise no claim or

issue regarding such discussion. Such should have been made part of the appellate record.

Whatever was discussed, counsel for petitioner had a right to be present." Memo in Support, pg. 5.

The defendant cites no authority for the proposition that he has a right to be present for

talks between the prosecution and a witness that are in the nature of trial preparation. That is

because no such authority exists. Just as the prosecution has no right to be present when the

defense prepares defense witnesses to testify at trial, the defense has no right to be present when

the prosecution prepares prosecution witnesses for trial.

Beyond that, the trial court directed the prosecution to inform the witness to *not make prejudicial comments* concerning the defendant. The witness did not thereafter make any prejudicial comments concerning the defendant. The petitioner fails to show prejudice from this alleged omission from the record on appeal.

<div align="center">*iii.*</div>

The petitioner's third complaint is that "the appellate record didn't consist of any of the police reports regarding this matter or the affidavit of probable cause (See Ex.-B), neither did said record contain any of petitioner's Boykin transcripts regarding prior charges used to enhance his sentences see Ex.-C." Memo in Support, pg. 5.

It is true that the police reports and the referenced affidavits were not made part of the record. The reason for this is that no one *offered them as evidence* during the course of the proceedings.

It is not true that the record did not "contain any of petitioner's Boykin transcripts regarding prior charges used to enhance his sentences." Those transcripts were sent to the court of appeal as exhibits to the record on appeal as explained in the Louisiana First Circuit Court of Appeal's *Notice of Lodging*. See Exhibit 1, pg. 3 ("IMPORTANT NOTICE" explaining that certain exhibits had been sent to the court of appeal in addition to the bound appellate record) id. at pg. 6 (reflecting that the "Entire Court Record" for docket numbers 396405, 404979, and 506272 had been submitted to the court of appeal). The petitioner again fails to show prejudice resulting from the alleged omissions from the record on appeal.

    **3.2.**    **The petitioner is not entitled to post-conviction relief based upon his claim that the prosecution knowingly presented false testimony at the trial (Claim 1B).**

        **A.**    **The details of the petitioner's claim.**

The petitioner claims that the prosecution presented false testimony on three occasions during the course of the trial.

The first instance concerns a text message from the defendant to the CI: the petitioner alleges that Detectives Bart Ownby falsely testified that the CI was at the police station at the time that Detectives Bart Ownby and Jay Quinn were scheduled to meet the petitioner at the Wendy's parking lot. Memorandum of Law in Support of PCR Application, pp. 5-6.

The second instance concerns the meaning of the term "CI"—the petitioner alleges that the prosecutor falsely referred to the CI as a "confidential informant" when the CI was really a "cooperating individual." Memo in Support, pp. 6-7.

The third instance concerns testimony that, when apprehended, the petitioner stated "I will give you anybody you want." The petitioner says that this is not true. Memo in Support, pg. 7.

### B.     Overview of the applicable law.

When a petitioner claims that the prosecution used false evidence, the claim is governed by Napue v. Illinois, 360 U.S. 264 (1959). "To prove a Napue claim, the accused must show that the prosecutor acted in collusion with the witness to facilitate false testimony." State v. Broadway, 96-2659 (La. ·10/19/99), 753 So.2d 801, 814. If that showing is made, "the defendant is entitled to a new trial unless there is no reasonable likelihood that the alleged false testimony could have affected the outcome of the trial." Id.

### C.     There is no merit to the petitioner's claims that the prosecution suborned perjury during the trial.

#### i.     The claim concerning the text message to the CI.

Additional pertinent facts.     The claim concerning the text message involves the testimony of three detectives: Bart Ownby, Jay Quinn, and Scott Thomas.

Detective Bart Ownby testified that he and Detective Jay Quinn were at the Wendy's parking lot "waiting on [the defendant] to show up" and there were "two other detectives located at the station" with the CI. RECORD ON APPEAL, pg. 402, lines 25-29. Detective Ownby explained: "the other detective with him in the room was constantly relaying messages to us. As more intel would come in from the conversation between the cooperating individual and suspect, he would relay it to us." Id. at 402-403. Detective Ownby described seeing the defendant pass through the Wendy's drive-thru lane, and at precisely at that time he received "information from the detective at the station stating that the individual is asking who is that white boy in the car." Id. at 403-404. On cross-examination he further explained:

> [S]o, the individuals at the -- the cooperating individual at the police department, the sheriff's complex, was giving the individual a description of the vehicle that my partner and I were in. So he knew the vehicle that we were in, and he, he was approaching our vehicle. And when he saw my partner, that's when we had confirmation through text messages that when the question came up who was the white boy, who was the white boy.

RECORD ON APPEAL, pp. 412-413.

Detective Jay Quinn testified: "we had received information from the confidential informant that he had received a text asking who is the white guy in the vehicle." RECORD ON APPEAL, pg. 417, lines 1-3. He was not questioned further about that topic.

Detective Scott Thomas testified: "When [the defendant] gets into the Wendy's parking lot, he's driving extremely slow as if he's looking for something. Once he gets close to the vehicle description that we gave one of our unmarked units, he slows down almost to a stop, maybe comes to complete stop. He sends a text message to the cooperating individual asking who the white guy is. And at that point we knew that this was the guy we were looking for." RECORD ON APPEAL, pg. 342, lines 3-11. On cross-examination, Detective Thomas testified:

> Q:   Earlier you said that your team received a text from --
> A:   Yes, sir.
> Q:   -- Mr. Brumfield. You didn't find that text on the phone?
> A:   No, sir.

RECORD ON APPEAL, pp. 372-373.

Following the petitioner's arrest, Detective Thomas submitted an affidavit in support of a probable cause determination (reproduced above). The first line of that affidavit reads: "On Wednesday, August 26, 2015, pursuant to a narcotics investigation it was learned Marlin Brumfield would be driving a white four door Nissan Titan and delivering Promethazine with Codeine (Schedule II) to an individual in the Wendy's parking lot located at 69340 Highway 21, Covington, LA." Exhibit 1.

The petitioner's argument.    The petitioner asserts—based upon the affidavit of Detective Thomas and Detective Thomas's testimony—that the CI was *not* at the sheriff's office but instead was at the Wendy's parking lot. Because the CI was actually at the Wendy's parking lot, he argues, Detective Ownby's testimony—that the CI was at the sheriff's office—was false.

Analysis.        The petitioner fails to demonstrate that the CI was at the Wendy's parking lot at the time of the scheduled drug transaction. It is true that Detective Thomas's affidavit states that "it was learned Marlin Brumfield would be ... delivering Promethazine with Codeine (Schedule II) to an individual in the Wendy's parking lot." Although the petitioner was *led to believe* that he would be delivering the drugs to the CI, this was a ruse. See RECORD ON APPEAL, pg. 338-339 (the "goal" of the operation was "to positively identify Mr. Brumfield and to purchase -- I'm sorry, not to purchase, to confiscate, to seize the codeine and Promethazine that he

was suspected to have on his person"). It was a ruse that the petitioner apparently saw through, resulting in a dangerous high-speed cross-town car chase.

Detective Thomas did testify that "[the defendant] sends a  text message to the cooperating individual asking who the white guy is." He clarified on cross-examination that his "team" received a text message from the petitioner. That testimony is consistent with the police report and with the testimony of other witnesses. See Exhibit 2, at 024 ("Detective Wilkinson relayed this message to the other detectives, via handheld radio"); RECORD ON APPEAL, pp. 412-413 (testimony of Detective Bart Ownby); id. at 380, lines 6-10 (testimony of Detective Jason Prieto that "we were getting information live from someone else cooperating with us and the detective that was with that person").

The defendant otherwise argues that "[t]he only wa[y] that Det. Ownby and other detectives can say what the text message said, they [] had to see said text, the only way that could have happened, if the cooperating individual was in the car with the detectives at the Wendy's parking lot." Memorandum of Law in Support of PCR Application ("Memo in Support"), pg. 6. This is not correct. The detectives could say what the text message said because they were *told* what the text message said, and the trial court found that this testimony not to be excluded by the hearsay rule because it was *res gestae*. See La. C.E. art. 801(D)(4) (statements are not hearsay if "[t]he statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.").

The defendant fails to demonstrate that the testimony presented at the trial was false.

The petitioner further fails to demonstrate that the prosecution *knew* the testimony to be false, i.e., that the prosecutor "acted in collusion with the witness to facilitate false testimony." The testimony of the witnesses was consistent with the contemporaneously written police report (Exhibit 2); for that reason, there is no basis for the prosecution to have suspected that the testimony was false.

Finally, *even if* the testimony concerning the location of the CI at the time of the ruse transaction were false, it would be immaterial. It has no bearing on the evidence showing the

defendant to be guilty of aggravated obstruction of a highway of commerce—a high-speed chase resulting in the petitioner's "crashing into a handicap walkway in the Boston Commons area" (RECORD ON APPEAL, pg. 423). And it has no bearing on the evidence showing the defendant to have possessed cocaine, namely, the fact that it was recovered from the petitioner's underpants.

### ii.     The claim concerning the meaning of "CI".

The second alleged instance of perjury concerns the meaning of the term "CI." Specifically, the petitioner alleges that the prosecutor falsely referred to the CI as a "confidential informant" when the CI was really a "cooperating individual." He argues that these terms do not have the same meaning, therefore, at least some of the trial testimony was perjured. <u>Memo in Support</u>, pp. 6-7.

The petitioner is simply wrong. The term "confidential informant" and "cooperating individual" both refer to the same phenomenon—an individual whose identity is privileged because he or she "has furnished information in order to assist in an investigation of a possible violation of a criminal law." La. C.E. art. 514(A).

### iii.     The claim concerning the defendant's statement.

Detective Scott Thomas testified that, after being apprehended and advised of his rights per *Miranda*, the defendant said: "You got me" and then "I will give you anybody you want." RECORD ON APPEAL, pg. 354.

The defendant argues that this testimony is false because:

> If said statement was true, why didn't the officers allow petitioner to do the very same as the cooperating individual was doing to the petitioner? The officers clearly stated that they were investigating narcotics in St. Tammany Parish. So if they use a small fish to catch a medium fish, why not use a mid-level dealer to catch a King Pen [sic]?

<u>Memo in Support</u>, pg. 7.[2]

The petitioner fails to demonstrate that the officer's testimony was false, or that the prosecution should have known that the officer's testimony was false.

* * *

There is no merit to the petitioner's claims of perjury or subornation of perjury.

---

2   If the defendant has any information about any "King Pen" drug dealers in St. Tammany Parish (or elsewhere) that he wishes to share, he is free to share that information.

### 3.3. The petitioner is not entitled to post-conviction relief based upon his claim that "the district attorney discriminates against the Black, African-American Race in St. Tammany Parish" (Claim 1C).

In this claim, the petitioner argues:

> Petitioner represents and shows race plays a major factor in St. Tammany Parish when a person is arrested and prosecuted African-American (black), males are discriminated when arrested a black male more then likely will be over-charged for violating the laws in said parish. However, a white male with the same record more likely won't be arrested, and he has violated too. If he is arrested, he would be arrested for a lesser crime than the black male, which is unconstitutional.

> Petitioner further represents and shows its unfair and offensive and discriminatory practices for a black defendant charged with a crime, be charged as a habitual offender when they exercise constitutional rights to a trial and get convicted However, when a white male or white person exercises their rights to trial in St. Tammany Parish, and get convicted they don't get prosecuted as a habitual offender, and their record is 10 times worse than a black defendant's record. Such has been the practice in St. Tammany parish for several years.

Memo in Support, pg. 8.

The petitioner, however, does not offer any proof in support of this claim. He instead asks for permission "to propound discovery on the district attorney for the parish of St. Tammany Parish [sic] for the last 10 years for further support his claim." *Id.*, pg. 8.

The Constitution does not require that the defendant be granted the discovery he requests. See United States v. Armstrong, 517 U.S. 456 (1996). In Armstrong, the United States Court considered "the showing necessary for a defendant to be entitled to discovery on a claim that the prosecuting attorney singled him out for prosecution on the basis of his race." 517 U.S. at 458. The Court held that, before such discovery may be ordered, the petitioner must make "a credible showing of different treatment of similarly situated persons." Id. at 470.

Here, the defendant has made no showing whatsoever. He therefore has not made even the preliminary showing required to authorize the requested discovery.

The petitioner's conclusory assertion that the district attorney's office is racist does not warrant post-conviction relief or even the discovery he requests.

**3.4.     The petitioner is not entitled to post-conviction relief based upon his claim that the prosecution knowingly presented false testimony at the trial (Claim 2).**

The petitioner argues that the statute of conviction, La. R.S. 14:96, "does not spell out what conduct is in violation of the statute" and that the "performance of 'any act' is too broad, uncertain, vague, and ambiguous" to pass constitutional muster. <u>Memo in Support</u>, pp. 9-10.

The statute of conviction in this case, aggravated obstruction of a highway of commerce, reads as follows:

> Aggravated obstruction of a highway of commerce is the intentional or criminally negligent placing of anything or performance of any act on any railway, railroad, navigable waterway, road, highway, thoroughfare, or runway of an airport, wherein it is foreseeable that human life might be endangered.

La. R.S. 14:96(A).

<u>The statute is not overbroad.</u>  "The doctrine of overbreadth, so-called, is a creature unique to the First Amendment, in particular Free Speech. It applies to statutes which, although used to punish activities which may be legitimately regulated, nevertheless include within their prospective reach speech or conduct protected by the First Amendment." <u>State v. Schirmer</u>, 93-2631 (La. 11/30/94), 646 So.2d 890, 900-901.

La. R.S. 14:96 does not regulate conduct speech or conduct that is protected by the First Amendment. It therefore, by definition, cannot be overbroad.

<u>The statute is not vague.</u>     "[U]nder the 'void-for-vagueness' doctrine, a criminal statute must meet two requirements to satisfy due process: (1) adequate notice to individuals that certain contemplated conduct is proscribed; and (2) adequate standards for those charged with determining the guilt or innocence of the accused." <u>State v. Hair</u>, 00-2694 (La. 5/15/01), 784 So.2d 1269, 1274. "Broad language is not in itself vague, particularly where it is clear that the legislature intended to make criminal all acts of a certain kind." <u>Id</u>. (citation omitted). "A statute need not set out every circumstance and variation in conduct which may be a violation thereof." <u>Id</u>. (citation omitted).

In this case, the meaning of the statute is obvious to a "person of reasonable intelligence"— the gist of the statute is: don't do *anything* on a road or highway (or railway or railroad, or navigable waterway, or airport runway) that will foreseeably endanger the life of someone else. "Any act," while certainly "broad language," is comprehensible to a person of reasonable intelligence. So is the requirement that the act foreseeably endanger human life. <u>See</u> <u>State v.</u>

Baron, 416 So.2d 537, 538 (La. 1982) (finding that the phrase "whereby it is foreseeable that human life might be endangered" is not unconstitutionally vague).

Beyond that, the fact that a wide range of conduct is made criminal is not a reason to declare the statute unconstitutional: "Cumbersome enumeration or explicit delineation of all possible situations is not required. The enumeration in a statute of every item or variation in conduct is frequently impossible." City of Baton Rouge v. Norman, 290 So.2d 865, 868 (La. 1974).

* * *

The petitioner fails to show that La. R.S. 14:96 is unconstitutional. There is no merit to this claim.

### 3.5.  The petitioner is not entitled to post-conviction relief based upon his claim that "the court exceeded its jurisdiction" (Claim 3).

The petitioner in this claim argues that the bill of information is somehow defective. He argues that "an indictment must contain every element of the charged offense to pass constitutional muster" then recites the contents of the bill of information, then argues:

> Please note, "of commerce" is not within the information but is included in the statute of said offense. Such does not charge a crime / offense, the prosecutor merely recited the statute as is written in the criminal code, which is incorrect. Petitioner has enclosed a bill of information which was filed, against him in his previous charges, see Ex- "P" which is the correct way to file a bill of information. The petitioner represents and shows he was prejudiced in preparing a defense in this matter. The statute does not include "interstate" in the wording of said statue. Petitioner represents and shows if he did violate any laws, it would be on the interstate. However, since interstate is not part of the statute itself, petitioner didn't and couldn't violate said statute. Clearly, when the state didn't include in the bill of information what unlawful act petitioner committed.

Memo in Support, pp. 11-12.

Initially, under Louisiana law, if the defendant thinks he hasn't received adequate notice of the charges against him, his remedy is to request a bill of particulars. See La. C.Cr. P. art. 484. In this case, the defendant actually did file a motion for bill of particulars. RECORD ON APPEAL, pp. 49-60. And in open court the defendant through counsel informed that court that the motion was "satisfied" by the production of discovery by the prosecution. RECORD ON APPEAL, pg. 136, lines 2-18. There is no merit to the petitioner's claim that he received inadequate notice.

Next, it is true that the phrase "of commerce" is not actually contained within the bill of information. But it is not true that it is "included in the statute." Although those words are in the

*title* of the statute, the title of a statute is not *part of* the statute. See La. R.S. 1:13(A) ("Headings to sections … are given for the purpose of convenient reference and do not constitute part of the law"); State v. Williams, 10-1514 (La. 3/15/11), 60 So.3d 1189 (holding that "swearing" is not an element of the crime of "false swearing for purposes of violating public health or safety" because "the title of an act is not part of a statute").

Finally, the fact that the word "interstate" is not specifically used in the statute is of no moment. The crime of aggravated obstruction of a highway of commerce is defined in pertinent part as "the intentional … performance of any act on any … highway … wherein it is foreseeable that human life might be endangered." La. R.S. 14:96(A). The term "highway" is defined as "the entire width between the boundary lines of every way or place of whatever nature publicly maintained and open to the use of the public for the purpose of vehicular travel, including bridges, causeways, tunnels and ferries; synonymous with the word street." La. R.S. 32:1(25). The interstate is a type of highway. Therefore, the failure to use the word "interstate" in the statute has no bearing upon the validity of the petitioner's conviction.

The petitioner fails to show that the trial court lacked jurisdiction. For that reason, there is no merit to this claim.

### 3.6. The petitioner is not entitled to post-conviction relief based upon his claims of ineffective assistance of counsel (Claim 4).

#### A.   The details of the petitioner's claim.

The petitioner alleges ineffective assistance of counsel during pre-trial motion practice, jury selection, opening statements, and trial. Memo in Support, pp. 12-17.

#### B.   Overview of the applicable law.

To establish a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was "outside the wide range of professionally competent assistance" (the "performance" prong) and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (the "prejudice" prong). Strickland v. Washington, 466 U.S. 668, 690, 694 (1984).

**C.     The petitioner fails to demonstrate deficient performance or prejudice.**

*i.*     **Claims arising from pre-trial proceedings.**

The petitioner claims that counsel was ineffective "for the reasons stated in claims two and three of this application for post-conviction, and claim 1(b)." Memo in Support, pg. 17. Those claims concern perjury (Claim 1B), the unconstitutionality of La. R.S. 14:96 (Claim 2), and the trial court's lack of jurisdiction (Claim 3).

For the reasons discussed above (pp. 11-14, 16-18), the prosecution did not present perjured testimony, the aggravated obstruction of a highway of commerce statute is constitutional, and the bill of information was not defective. Because those claims lack merit, counsel did not perform deficiently by failing to raise those claims.

*ii.*     **Claims arising from voir dire.**

While selecting the jury, defense counsel asked the following question:

> Now, I know a lot of you, and I am too concerned about our budget situation. And I know a lot of you have probably been reading a lot about what -- where we can cut, about how Louisiana has the highest have per capita prison rate in the country. ... Is that going to come into anybody's consideration when they deliberate as to the guilt or innocence of Mr. Brumfield? Because it shouldn't, right?

RECORD ON APPEAL, pg. 289.

The petitioner argues: "The above statement prejudiced the petitioner before the jury at trial. First of all, the above mentioned is not related to this case in any way whatsoever. Further, by counsel talking about high incarceration rate in Louisiana, he is basically saying that my client is guilty as charged, no need for a trial in this matter, but don't convict him to make the incarceration rate   one more person on the already high rate. Once the jury had heard such, it had already determined petitioner was guilty as charged." Memo in Support, pg. 16. This is nonsense.

Trial counsel tried to make sure that improper considerations would not influence the jury's verdict. This is not "outside the wide range of professionally competent assistance."

*iii.*     **Claims arising from opening statements.**

1.     During opening statements, counsel offered a justification for the defendant's actions. Counsel offered a theory that the petitioner drove like a madman because he was scared: "Mr. Brumfield was getting a hamburger at Wendy's when four, at least four, burly white guys, late at night, in some ragged out cars with lights decide to chase him. He didn't know them. All he

knew was that some people were after him and chased him. And he was trying to get away. That's not unreasonable." RECORD ON APPEAL, pp. 331-332.

The petitioner argues that this served to "inflame the jury and prejudice the petitioner in the eyes of the jury. If the jury had considered finding the petitioner not guilty, once petitioner's counsel brought race in the trial, all defendant's chances of being found not guilty vanished. It wasn't no longer about the trial, the evidence, the testimony, it then became a race issue, being counsel had insulted the white jury, by alleging that their race of people jumped out on a black man." Memo in Support, pg. 16.

The petitioner's argument is patently absurd. Defense counsel suggested that a black man would have reason to flee if set upon by four burly white men. That suggestion is valid. The petitioner therefore fails to demonstrate deficient performance.

The petitioner also fails to demonstrate prejudice: accurately describing the facts is not an "insult," nor is there any basis for concluding that white people are a cohesive group who care about what other white people do. In any event, the court instructed the jury both before and after the trial about the presumption of innocence, the need to consider only the evidence presented during the trial, and state's burden of proof beyond a reasonable doubt. See RECORD ON APPEAL, pp. 316-317, 519-523.

2.      During opening statements, trial counsel also advanced a theory of the case regarding the possession of cocaine: "… let me throw this out there: Drug addicts are not known for their delayed gratification, are they? Drug addicts, when they get a drug, they use it immediately. And knowledge that he had the cocaine on him is an element of the crime. If you find that he had the cocaine on him and that it was cocaine, then I put it to you, he had no idea it was there. And, therefore, if he didn't know it was there, just like the paperclip,[3] he can't be found guilty of it." RECORD ON APPEAL, pg. 333.

The petitioner argues that this theory—in light of later testimony that the cocaine was in a cigarette pack on the petitioner's person—amounted to "a fraud upon the court and the jury, which made the jury look at counsel and defendant in a totally different light. The jury concluded if counsel went to the point to lie for defendant, the defendant had to be guilty of both charges being counsel was trying to fool and trick the jury." Memo in Support, pg. 17.

---

3   The mention of "the paperclip" was a reference to voir dire. RECORD ON APPEAL, pg. 281, lines 7-32

In reality, this was a theme that the trial counsel returned to during closing arguments:

> The cocaine, let's talk about that. I don't know if any of you have had dealings with people who are addicted to drugs. I think I know one person has. Drug addicts aren't known for their delayed gratification abilities; they are not going to put that crack cocaine on a shelf and say, "I'll have that in two days." They are going to use it, right then and there.

> Knowledge of the presence of that cocaine is required to convict him of it. If Mr. Brumfield knew it was there, he would have smoked it a long time ago. I'm not saying that Mr. Brumfield doesn't have a problem, I'm saying he didn't know it was there.

RECORD ON APPEAL, pg. 505.

Trial counsel made his best effort to persuade the jury that the cocaine, even if possessed by the defendant, was not *knowingly* possessed by the defendant. This was not deficient performance.

### iv. Claims arising during the trial.

The petitioner's final (and primary) claim of ineffective counsel concerns counsel's failure to move for a mistrial during the direct examination testimony of Detective Scott Davis. The pertinent portion of the trial transcript reads as follows:

| | |
|---|---|
| THE WITNESS: | Once he sent that text message, we had a good idea that that's who was going to be in the vehicle. And one of our other detectives has dealt with him on numerous other occasions and actually knows him personally through previous arrests. And once that detective saw him said that's who it is and that's when the knew -- |
| DEFENSE: | I'm going to object. That's hearsay. |
| THE COURT: | I'm going to sustain that objection. |
| | I'm going to admonish the jury not to consider the last answer at all. Don't consider that at all, okay? |
| | I want to take a short recess. Ladies and gentlemen, if you would just step out, it's not going to be more than two minutes. Okay. |
| | (JURY EXITS.) |
| | Be seated. Counsel, I'm going to give you an opportunity to speak to your client -- to your witness and advise him that prior arrests are not something that can be gone into, and I need you-all to make sure that other witnesses understand that that's totally improper. |
| PROSECUTOR: | And, Judge, just for the -- |
| THE COURT: | I don't think in this case it was done maliciously, and I have admonished. But I'm going to admonish it now and make sure that it doesn't happen again. |
| PROSECUTOR: | And, Judge, the State just wants to put on the record that this individual is not the narcotic agent that does know Mr. Brumfield from the prior arrest, and we did speak with that individual and my apologies to the Court for that. |

| | |
|---|---|
| THE COURT: | I want you to discuss it with him now, and I'm sure you-all don't have any objection to that. |
| DEFENSE: | No, Your Honor. |
| THE COURT: | Take about two minutes. |
| | (RECESS TAKEN). |
| THE COURT: | Let's return the jury. |
| | (JURY ENTERS) |
| THE COURT: | Be seated, please. I just want to reemphasize and admonish again not to consider anything in that prior answer. |

RECORD ON APPEAL, pp. 340-341.

The defendant complains that "at no time whatsoever did [defense counsel] or the state make a request for the judge to even admonish the jury" and that "the trial court himself went beyond the statute and law to admonish the jury without being asked by either party" Memo in Support, pg. 15. At this juncture, the State notes that "a trial judge may admonish the jury without being requested to do so." State v. Burge, 515 So.2d 494, 505 (La. App. 1 Cir. 1987).

The petitioner argues that "the trial court obviously felt like [he] was prejudiced" because the court admonished the jury twice. For that reason, the petitioner suggests, counsel ought to have moved for a mistrial. Memo in Support, pp. 15-16.

Whether or not to move for mistrial is a matter of trial strategy: "there may be a variety of valid practical reasons why counsel does not want to abort the trial and start all over from the beginning." State v. Grant, 614 So.2d 344, 346 (La. App. 4 Cir. 1993).

Here, the fact that the trial court admonished the jury also makes it reasonable for counsel to have *not* moved for a mistrial. *Because* the court admonished the jury, counsel could reasonably conclude that the court considered admonition to be sufficient to cure any unfair prejudice accruing to the defendant. The petitioner fails to demonstrate deficient performance on the part of trial counsel.

* * *

In addition to failing to show deficient performance, the petitioner fails to demonstrate prejudice. This case involved overwhelming evidence, including an audio recording of the radio traffic from the high speed chase itself (RECORD ON APPEAL, pg. 396). The chase ended when the petitioner crashed his car into a medical clinic, and at that time the petitioner fled from the crashed vehicle on foot. When ultimately apprehended, cocaine was recovered from a cigarette

pack concealed in the defendant's underpants. There is no reasonable probability that the jury would have returned a different verdict even if the petitioner demonstrated that his counsel had performed deficiently.

### 4.   CONCLUSION AND PRAYER.

The petitioner has failed to demonstrate that he is entitled to post-conviction relief. Accordingly, the State respectfully prays that his application for post-conviction relief be DENIED.

Respectfully submitted,

Matthew Caplan, LSBA #31650
Assistant District Attorney

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing pleading and all attachments thereto to the petitioner this ⎯10⎯ day of September, 2019, by sending it by United States Postal Service first-class mail, addressed as follows:

Marlone Brumfield, DOC # 496966
Louisiana State Penitentiary
17544 Tunica Trace
Angola, LA 70712

Matthew Caplan, LSBA #31650
Assistant District Attorney

- 23 of 23 -

# PROBABLE CAUSE DETERMINATION

## STATE OF LOUISIANA

## 22ND JUDICIAL DISTRICT COURT   PARISH OF ST. TAMMANY

Before me, the undersigned notary public, personally came and appeared: Det. Scott Thomas #9635

who, after being by me first duly sworn, did depose and state: That he/she prepared and signed the

attached arrest report, item number   2015-012648

and that it is a true and correct statement to be submitted to a Magistrate per La.C.Cr.Pr. Art 230.2 consists of the following summarized facts:

On Wednesday, August 26, 2015, Pursuant to a narcotics investigation it was learned Marlin Brumfield would be driving a white four door Nissan Titan and delivering Promethazine with Codeine (Schedule II) to an individual in the Wendy's parking lot located at 69340 Highway 21, Covington, LA.  Detective's set up surveillance in the parking lot, and at approximately 2139 hours, Detective's observed Brumfield's vehicle enter the Wendy's parking in the above Nissan Titan. Detective Jason Prieto initiated a traffic stop on Brumfield's vehicle using his audible siren and red and blue emergency lights as the vehicle was leaving Wendy's headed Northbound on highway 21.  The Nissan Titan ignored the lights and sirens and made a U turn and headed Southbound on Highway 21 in excess of speeds of 100 miles per hour.  The Nissan Titan entered onto I12 Eastbound and turned off the headlights going in excess of 100 miles per hour running vehicles off the roadway.  The vehicle then exited on highway 190 going towards Covington.  Once on highway 190 the Nissan Titan ran several red lights and ran civilian vehicles off the roadway ignoring several fully marked St. Tammany Parish patrol units as they joined in the pursuit.  The Nissan Titan also hit another vehicle while fleeing, which resulted in taking off the side mirror of that vehicle.  After a lengthy vehicle pursuit the Nissan Titan crashed into a building located at 832 Boston St, Covington, LA.  Brumfield then fled on foot and was apprehended by St. Tammany Parish Criminal Patrol deputies. Search incidental to arrest, Detective's located suspected Marijuana in his pockets and "Crack" Cocaine inside a cigarette pack tucked in his underwear.  Upon searching the vehicle, Detective's discovered two large bottles of suspected Promethazine with Codeine.  Upon conducting a criminal history inquiry, it was discovered Brumfield had been convicted of two prior Possession of Marijuana charges and that his driver's license was suspended.

Detective Scott Thomas #9635 /
Arresting Officer

Sworn to and subscribed before me this _27th_ day of _August_ , _2015_ /_0107h_

NOTARY PUBLIC   Sgt. Darron Blackmon #9605

WHEREAS, the above and foregoing affidavit having been submitted to me, upon oath, of arresting

officer detailing the warrantless arrest of___ Marlon Brumfield   (D.O.B. 11/13/1987)

for the charge(s) of  _LRS14:96 (Aggravated obstruction of highway of commerce), 14:56.B.2 (Criminal Damage Felony), 40:967A/C (Possession with Intent to distribute Schedule II, to wit Cocaine), 40:967A/C (Possession with Intent to distribute Schedule II, to wit Codeine), 40:966E.3 (Possession of Marijuana third Offense), 32:415 (Driving under Suspension)_

and after having reviewed the above affidavit for the purpose of determining whether probable cause existed for the arrest, as per La.C.Cr.Pr. Art 230.2: I, the undersigned Judge, have determined that probable cause (did) (did not) exist for the warrantless arrest of the aforementioned individual.

Given under my official signature this ___ day of _____ , _2015_ @ 8:23 a

JUDGE

08-26-2015
Date of Offense

Exhibit
1

| Agency ORI # LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | AGENCY REPORT NUMBER 2015-012648 |
|---|---|---|
| | 1200 CHAMPAGNE ST , COVINGTON, LA, 70433 | COURT DOCKET NUMBER |
| Phone   (985) 8982320 | COMPLAINT ARREST AFFIDAVIT | Juvenile ☐ |

### DEFENDANT

| Agency ORI Number: LA0520000 | Agency Name: ST TAMMANY PARISH SHERIFF'S OFFICE | | | Agency Report Number: 2015-012648 |
|---|---|---|---|---|
| Reported:  Day WEDNESDAY | Date 08/26/2015 | Time(mil) 21:39 | Time Dispatched (mil) 21:39 | Time Arrived (mil) 21:49 | Time Completed (mil) 21:39 |
| Arrest:  Day WEDNESDAY | Date 08/26/2015 | Time(mil) 21:39 | Arrested? YES | NCIC Check? NO | OBTS#: 0 |
| Booked?  Day | Date | Time(mil) | Court Case Number: | Bond Amount: 0.00 | |

| Offense Indicator: 1, 2, 3, 4. | Defendant Code: D | Juvenile: NO | Name (First Middle Last / Family): MARLONE RASHEN BRUMFIELD | |
|---|---|---|---|---|
| Family / Maiden Name | | Place of Birth | Citizenship Naturalized Citizen | Occupation |
| Address 15323 ELAINE LN. | City COVINGTON | State La | Zip 70435- | Phone () |
| Employer / School | Address | City | State | Zip | Business Phone () |
| Social Security Number | Res. Type Louisiana | Res. Status Full Year | Driver License Number 8958972 - La | Arrest# | OBTS# |
| Race Black | Ethnicity | Sex Male | Date of Birth 11/13/1987 | Age 27 | Height 5-08 | Weight 175 | Build Medium |
| Hair Color Brown | Hair Length Short | Hair Style Curly | Facial Hair | Eye Color Brown | Complexion Dark |

### OFFENSE(S) / CHARGE(S)

| Offense 1 | Offense Type Felony | Description: AGGRAVATED OBSTRUCTION OF HIGHWAY OF COMMERCE | | |
|---|---|---|---|---|
| Offense Status Committed | Statute Violation Number 14:96 | Forced Entry? | Occupancy N/a | Type Weapon Vehicle |
| Situation Type Single Victim/single Offender | | Crime Category Drug Related | | |

### OFFENSE(S) / CHARGE(S)

| Offense 2 | Offense Type Felony | Description: SIMPLE CRIMINAL DAMAGE TO PROPERTY | | |
|---|---|---|---|---|
| Offense Status Committed | Statute Violation Number 14:56 | Forced Entry? | Occupancy N/a | Type Weapon Vehicle |
| Situation Type Single Victim/single Offender | | Crime Category Drug Related | | |

### OFFENSE(S) / CHARGE(S)

| Offense 3 | Offense Type Felony | Description: POS, W/TD SCH II CDS: COCAINE | | |
|---|---|---|---|---|
| Offense Status Committed | Statute Violation Number 40:967AC | Forced Entry? | Occupancy N/a | Type Weapon Drugs |
| Situation Type Single Victim/single Offender | | Crime Category Drug Related | | |

### ADMINISTRATIVE

| Report Contains | | | Related Report Number(s) | | | | |
|---|---|---|---|---|---|---|---|
| Officer(s) Reporting THOMAS, WILLIAM S | ID. Number 100065 | Name | | ID. Number | Unit 9635 | Date 09/22/2015 |
| Officer Reviewing (if Applicable) BLACKMON, DARREN | ID. Number 349 | Approved Date 09/23/2015 | # Offenses 6 | # Victims 0 | # Offenders 1 | # Premises Ent. 0 | # Vehicles Stolen 0 | # Arrested 1 |
| Routed To: Narcotics | | Referred To | | | | |
| Assigned To | | Assigned By | | | Assigned Date | |
| Case Status CLEARED BY ARREST | | Exception Type | | | Date Cleared | |

017



Exhibit
Z

| Agency ORI # LA0520000 | **ST TAMMANY PARISH SHERIFF'S OFFICE**<br>1200 CHAMPAGNE ST., COVINGTON, LA, 70433 | AGENCY REPORT NUMBER 2015-012648 |
|---|---|---|
| | | COURT DOCKET NUMBER |
| Phone     (985) 8982320 | **COMPLAINT ARREST AFFIDAVIT** | Juvenile ☐ |

| Agency ORI Number:<br>LA0520000 | Agency Name:<br>ST TAMMANY PARISH SHERIFF'S OFFICE | | | | Agency Report Number<br>2015-012648 |
|---|---|---|---|---|---|
| Reported: Day<br>WEDNESDAY | Date<br>08/26/2015 | Time(mil)<br>21:39 | Time Dispatched (mil)<br>21:39 | Time Arrived (mil)<br>21:49 | Time Completed (mil)<br>21:39 |
| Arrest: Day<br>WEDNESDAY | Date<br>08/26/2015 | Time(mil)<br>21:39 | Arrested:<br>YES | NCIC Check?<br>NO | OBTS#<br>0 |
| Booked: Day | Date | Time(mil) | Court Case Number | Bond Amount:<br>0.00 | |

| | **OFFENSE(S) / CHARGE(S)** | | | |
|---|---|---|---|---|
| Offense Offense Type<br>4          Felony | Description:<br>POSS WITD SCH II CDS | | | |
| Offense Status<br>Committed | Statute Violation Number<br>40:967AC | Forced Entry?: | Occupancy:<br>N/a | Type Weapon<br>Drugs |
| Situation Type<br>Single Victim/single Offender | | Crime Category:<br>Drug Related | | |

| | **OFFENSE(S) / CHARGE(S)** | | | |
|---|---|---|---|---|
| Offense Offense Type<br>5          Felony | Description:<br>POSSESSION OF MARIJUANA 3RD OFFENSE | | | |
| Offense Status<br>Committed | Statute Violation Number<br>40:966E3 | Forced Entry?: | Occupancy:<br>N/a | Type Weapon<br>Drugs |
| Situation Type<br>Single Victim/single Offender | | Crime Category:<br>Drug Related | | |

| | **OFFENSE(S) / CHARGE(S)** | | | |
|---|---|---|---|---|
| Offense Offense Type<br>6          Traffic | Description:<br>DRIVING UNDER SUSPENSION | | | |
| Offense Status<br>Committed | Statute Violation Number<br>32:415 | Forced Entry?: | Occupancy:<br>N/a | Type Weapon<br>Vehicle |
| Situation Type<br>Single Victim/single Offender | | Crime Category:<br>Drug Related | | |

| | **ADMINISTRATIVE** | | | | | |
|---|---|---|---|---|---|---|
| Report Contains | | | | Related Report Number(s) | | |
| Officer(s) Reporting<br>THOMAS, WILLIAM S | ID. Number<br>100065 | Name | | ID. Number | Unit<br>9635 | Date<br>09/22/2015 |
| Officer Reviewing (If Applicable)<br>BLACKMON, DARREN | ID. Number<br>349 | Approved Date<br>09/23/2015 | # Offense<br>6 | # Victims<br>0 | # Offenders<br>1 | # Premises Ent.<br>0 | # Vehicles Stolen<br>0 | # Arrested<br>1 |
| Routed To:<br>Narcotics | | Referred To: | | | | |
| Assigned To | | Assigned By | | | Assigned Date | |
| Case Status<br>CLEARED BY ARREST | | Exception Type: | | | Date Cleared | |

## COMPLAINT ARREST AFFIDAVIT - VEHICLE

| | | | Juvenile | | 1. Original |
|---|---|---|---|---|---|
| | | | | | 2. Supplement |

| Agency ORI Number | Agency Name | | Agency Report Number |
|---|---|---|---|
| LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | | 2015-012648 |

| Original Date Reported | Incident Type |
|---|---|
| | Drug Violation |

### VEHICLE / VESSEL

| Person Code # | Veh. # | Vehicle Classification | | Type |
|---|---|---|---|---|
| DF1 | 1 | USED IN CRIME | | TRUCK |

| Vehicle Use | | Vehicle Style | | Tag Reg. / Doc.# |
|---|---|---|---|---|
| PRIVATE TRANSPORTATION | | Pick Up Truck | | G253483 |

| Year | Make | Model | Tag Expire | Tag State | Decal Number | Tag Type |
|---|---|---|---|---|---|---|
| 2011 | NISS | TIT | 2018 | LA | | Passenger Car |

| VIN / Hull / FAA | Estimated Value | Damage | | Trailer Type |
|---|---|---|---|---|
| 1N6BA0EK0BN313035 | | Functional | | |

| Hazardous Materials | Hazard Placarded | Condition: | Windows Closed? | Locked? | Keys In Ignition? | Insurance Company |
|---|---|---|---|---|---|---|
| ☐ | ☐ | | YES | NO | YES | |

| Insurance Policy # | Lien Holder | Insurance summary |
|---|---|---|

| Color: | Top | Bottom | | Description (Identifying Characteristics, Nolice, etc.) |
|---|---|---|---|---|
| | White | White | | |

| Vessel Name | | Length | Hull Material | Propulsion | Boat Type |
|---|---|---|---|---|---|

| Recovery Address / Geographic Indicator | | Date Recovered | Value Recovered |
|---|---|---|---|
| | | NO | |

| Recovery Loc. | Recovery Code | Original Reporting Agency | Report Number | Hold(Yes/No) | Reason / Authority |
|---|---|---|---|---|---|

| Method of Theft | Components Stripped: | Tires/Wheels | Battery | Transmission | Major Body Parts | Other/ Specify: |
|---|---|---|---|---|---|---|
| N/a | N/A | VIN Plate | Radio/CB | Interior | Engine Parts | Tag/Decal/Stolen |

| Towed By | Storage Location | NCIC | Entered By |
|---|---|---|---|

Description

### ADMINISTRATIVE

| Report Contains | | Related Report Number(s) | |
|---|---|---|---|

| Officer(s) Reporting | ID. Number | Name | | ID. Number | Unit | Date |
|---|---|---|---|---|---|---|
| THOMAS, WILLIAM S | 100065 | | | | 9635 | 09/22/2015 |

| Officer Reviewing (If Applicable) | ID. Number | Approved Date | # Offenses | # Victims | # Offenders | # Premises Ent. | # Vehicles Stolen | # Arrested |
|---|---|---|---|---|---|---|---|---|
| BLACKMON, DARREN | 349 | 09/23/2015 | 6 | 0 | 1 | 0 | 0 | 1 |

019

## COMPLAINT ARREST AFFIDAVIT - PROPERTY

1. Original
2. Supplement

| Agency ORI Number | Agency Name | Agency Report Number |
|---|---|---|
| LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | 2015-012648 |

| Original Date Reported | Incident Type |
|---|---|
| 08/26/2015 | Drug Violation |

Type of Theft

### PROPERTY

| Person Code # | Item # 1 | Property Type Drug | Status Evidence/seized | |
|---|---|---|---|---|
| Offense Ind. | Item Name N-1 | Drug Activity Dispense/distribute | | Drug Type Cocaine |
| Quantity 1 | Unit Grams | Estimated Street Value | Date Recovered 08/26/2015 | |
| NCIC | Entered By | | | |

Description
N-1 one cigarette pack containing clear plastic bag containing approx 1 g suspected crack cocaine

### PROPERTY

| Person Code # | Item # 2 | Property Type Drug | Status Evidence/seized | |
|---|---|---|---|---|
| Offense Ind. | Item Name N-2 | Drug Activity Dispense/distribute | | Drug Type Marijuana |
| Quantity 2 | Unit Grams | Estimated Street Value | Date Recovered 08/26/2015 | |
| NCIC | Entered By | | | |

Description
N-2 Plastic bag containing approx 2g suspected marijuana

### PROPERTY

| Person Code # | Item # 3 | Property Type Drug | Status Evidence/seized | |
|---|---|---|---|---|
| Offense Ind. | Item Name N-3 | Drug Activity Possess | | Drug Type Marijuana |
| Quantity 1 | Unit Grams | Estimated Street Value | Date Recovered 08/26/2015 | |
| NCIC | Entered By | | | |

Description
N-3 receipt containing approx 1g suspected marijuana

### PROPERTY

| Person Code # | Item # 4 | Property Type Drug Paraphernalia | Status Evidence/seized | |
|---|---|---|---|---|
| Offense Ind. | Item Name N-4 | Drug Activity Possess | | Drug Type Paraphernalia/e. |
| Quantity 1 | Unit | Estimated Street Value | Date Recovered 08/26/2015 | |
| NCIC | Entered By | | | |

Description
N-4 One smoking device containing liquid suspected of containing THC

### ADMINISTRATIVE

Related Report Number(s)

Report Contains

| Officer(s) Reporting THOMAS, WILLIAM S | ID Number 100065 | Name | | | ID Number 9635 | | Date 09/22/2015 | |
|---|---|---|---|---|---|---|---|---|
| Officer Reviewing (If Applicable) BLACKMON, DARREN | ID Number 349 | Approval Date 09/23/2015 | # Offenses 6 | # Victims 0 | # Offenders 1 | # Premises Ent. 0 | # Vehicle Stolen 0 | # Arrested 1 |

# COMPLAINT ARREST AFFIDAVIT -- PROPERTY

|  | | Juvenile | 1. Original |
|--|--|--|--|
|  | | | 2. Supplement |

| Agency ORI Number | Agency Name | Agency Report Number |
|--|--|--|
| LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | 2015-012648 |

| Original Date Reported | Incident Type |
|--|--|
| 08/26/2015 | Drug Violation |

| Type of Theft |
|--|

## PROPERTY

| Person Code # | Item # 5 | Property Type Drug | Status Evidence/seized |
|--|--|--|--|
| Offense Ind. | Item Name N-5 | Drug Activity Dispense/distribute | Drug Type Other |
| Quantity 7 | Unit | Estimated Street Value | Date Recovered 08/26/2015 |
| NCIC | Entered By | | |

Description
N-5 One baby bottle containing approx 6.5 ounces suspected promethazine

## PROPERTY

| Person Code # | Item # 6 | Property Type Drugs | Status Evidence/seized |
|--|--|--|--|
| Offense Ind. | Item Name N-6 | Drug Activity Dispense/distribute | Drug Type Other |
| Quantity 12 | Unit | Estimated Street Value | Date Recovered 08/26/2015 |
| NCIC | Entered By | | |

Description
N-6 One plastic bottle containing less than 16 ounces suspected promethazine

## PROPERTY

| Person Code # | Item # 7 | Property Type Dvd | Status Evidence/seized | Type of Loss (Theft) |
|--|--|--|--|--|
| Quantity 1 | Item Name NN-1 | Brand | Model Name/Number | Serial Number |
| Offense Ind. | Owner Applied Number | Value | Value Recovered | Date Recovered 09/22/2015 |
| NCIC | Cancelled B | Damage N/a | | Extended Damage |

Description
NN-1 DVD of photographs taken of vehicle crash

## ADMINISTRATIVE

| Report Contains | | | | | Related Report Number(s) | | | | |
|--|--|--|--|--|--|--|--|--|--|
| Officer(s) Reporting THOMAS, WILLIAM S | ID. Number 100065 | Name | | | ID. Number | | Vol 9635 | | Date 09/22/2015 |
| Officer Reviewing (If Applicable) BLACKMON, DARREN | ID. Number 349 | Approved Date 09/23/2015 | # Offense 6 | # Victims 0 | | # Offenders 1 | # Premises Ent. 0 | # Vehicles Stolen | # Arrested 1 |

**COMPLAINT ARREST AFFIDAVIT - NARRATIVE CONTINUATION**

Juvenile ☐

| Agency ORI Number | Agency Name | Agency Report Number |
|---|---|---|
| LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | 2015-012648 |
| Original Date Reported | Incident Type | |
| 08/26/2015 | Drug Violation | |

**NARRATIVE CONTINUATION**

On Wednesday, August 26, 2015, pursuant to a narcotics investigation it was learned, Marlon Brumfield would be driving a white four door Nissan Titan and delivering Promethazine with Codeine (schedule II) to an individual in the Wendy's parking lot located at 69430 Highway 21, Covington, LA. Detectives set up surveillance in the parking lot, and at approximately 2139 hours, detectives observed Brumfield's vehicle enter the Wendy's parking lot in the Nissan Titan. Detective Jason Prieto initiated a traffic stop on Brumfield's vehicle using his audible siren and red and blue emergency lights as the vehicle was leaving Wendy's headed northbound on Hwy 21 in speeds in excess of 110 miles per hour. The Nissan Titan entered onto I 12 eastbound and turned off the headlights going in excess of 100 miles per hour running vehicle off the roadway. The vehicle then exited on Hwy 190 going towards Covington. Once on Hwy 190 the Nissan Titan ran several red lights and ran civilian vehicle off the roadway, ignoring several fully marked St. Tammany Parish patrol units as they joined in the pursuit. The Nissan Titan also hit another vehicle while fleeing, which resulted in taking off the side mirror of that vehicle. After a lengthy vehicle pursuit, the Nissan Titan crashed into a building located at 832 Boston St, Covington LA. Brumfield then fled on foot and was apprehended by St. Tammany Parish Criminal Patrol deputies. Search incidental to arrest, Detectives located suspected marijuana in his pockets and "crack" cocaine inside a cigarette pack tucked in his underwear. Upon searching the vehicle, detectives discovered two large bottles of suspected Promethazine with codeine. Upon conducting a criminal history inquiry, it was discovered Brumfield had been convicted of two prior possession of marijuana charges and that his driver's license was suspended.

**ADMINISTRATIVE**

| Report Contains | | | Related Report Number(s) | | |
|---|---|---|---|---|---|
| Officer(s) Reporting | ID. Number | Name | ID Number | Unit | Date |
| THOMAS, WILLIAM S | 100065 | | | 9635 | 09/22/2015 |
| Officer Reviewing (if Applicable) | ID. Number | Approved Date | # Offenses | # Victims | # Offenders | # Premises Ent. | # Vehicles Stolen | # Arrested |
| BLACKMON, DARRE | 349 | 09/23/2015 | 6 | 0 | 1 | 0 | 0 | 1 |
| Routed To | | | Related To | | |
| NARCOTICS | | | | | |
| Assigned To | | | Assigned By | | Date |
| | | | | | |
| Case Status | | | Exception Type | | Date Cleared |
| CLEARED BY ARREST | | | | | |

## COMPLAINT ARREST AFFIDAVIT - NARRATIVE CONTINUATION

Juvenile

| Agency ORI Number | Agency Name | Agency Report Number |
|---|---|---|
| LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | 2015-012648 |

| Original Date Reported | Incident Type |
|---|---|
| 08/26/2015 | Drug Violation |

### NARRATIVE CONTINUATION

On Wednesday August 26, 2015, at 9:46 pm detectives from the St. Tammany Parish Sheriff's Office Narcotics Task Force West conducted an investigation which resulted in the arrest of Marlone Brumfield (b/m, 27) for aggravated obstruction of highway of commerce, criminal damage, two counts of possession of schedule II controlled dangerous substance, possession of marijuana and driving under suspension. The facts and circumstances surrounding the matter are as follows.

On the aforementioned date, in the evening hours, Detective Scott Thomas of the St. Tammany Parish Sheriff's Office Narcotics Task Force, received information from a cooperating individual concerning the illegal distribution of controlled dangerous substances within the Covington, Louisiana area.

In the presence of detectives, the CI used his personal telephone to initiate a text message conversation with a subject known to him as "Wacko". The CI was unable to provide Wacko's real name. The CI coordinated a meeting with Wacko to buy a pint of codeine/promethazine cough syrup. Codeine/promethazine is commonly abused by mixing it in various sweetened beverages and drinking it, resulting in effects ranging from mild stimulation to dissociation by the user. Codeine/promethazine is classed as a schedule II controlled dangerous substance.

Wacko agreed to meet with the CI in the parking lot of Wendy's restaurant (located at 69368 Highway 21, Covington). The detectives involved in the operation were as follows: Detectives Scott Thomas, Roger Gottardi, Jay Quinn, Jason Prieto, Bart Ownby, Shane Wilkinson, and Sergeant Darren Blackmon. Detective Ownby was familiar with "Wacko", as he had previously arrested "Wacko" during a separate incident while working with Covington Police Department Criminal Investigations Division, and identified him as Marlon R. Brumfield (b/m, 27). He also stated Mr. Brumfield would probably attempt to evade the detectives.

A criminal history inquiry revealed Mr. Brumfield has been arrested on eight (8) separate occasions, with offenses including but not limited to: two (2) counts of possession of a controlled dangerous substance, two (2) batteries, two (2) assaults, two (2) counts of illegal use of weapons, one (1) count of resisting an officer. A copy of Mr. Brumfield's criminal history was printed and later turned in as an attachment to his report.

The CI remained at the St. Tammany Parish Sheriff's Office Law Enforcement Center (referred to in this report as LEC) with Detective Wilkinson. While at the LEC, the CI

### ADMINISTRATIVE

| Report Contains | | Related Report Number(s) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Officer(s) Reporting | ID. Number | Name | | ID. Number | | Unit | | Date |
| THOMAS, WILLIAM S | 100065 | | | | | 9635 | | 09/22/2015 |
| Officer Reviewing (If Applicable) | ID. Number | Approved Date | # Offenses | # Victims | # Offenders | # Premises Ent. | # Vehicles Stolen | # Arrested |
| BLACKMON, DARRE | 349 | 09/23/2015 | 6 | 0 | 1 | 0 | 0 | 1 |
| Routed To | | Referred To | | | | | | |
| NARCOTICS | | | | | | | | |
| Assigned To | | Assigned By | | | | | | Date |
| Case Status | | Exception Type | | | | | | Date Cleared |
| CLEARED BY ARREST | | | | | | | | |

COMPLAINT ARREST AFFIDAVIT - NARRATIVE CONTINUATION

Juvenile

| Agency ORI Number | Agency Name | Agency Report Number |
|---|---|---|
| LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | 2015-012648 |
| Original Date Reported | Incident Type | |
| 08/26/2015 | Drug Violation | |

### NARRATIVE CONTINUATION

was in constant contact with Mr. Brumfield, via text messages. The information the CI obtained from Mr. Brumfield was relayed to the detectives positioned at Wendy's by Detective Wilkinson, via department issued cellular phones and handheld radios. The CI described Mr. Brumfield's vehicle as a white or silver four door, either a Nissan or Chevrolet, truck.

At approximately 9:30 pm detectives strategically staged in the vicinity of Wendy's to ensure the entire parking lot was in view of at least one detective. After a few minutes, the detectives observed a white Nissan Titan pickup truck enter the parking lot.

As the vehicle entered the north side of the parking lot, the driver, a b/m wearing a white t-shirt, slowly drove around the restaurant. The vehicle moved slower than other traffic entering and leaving the parking lot. As he slowly drove past Detective Thomas and Gottardi's vehicle, the driver was staring at the detectives inside the vehicle. It seemed unusual that the driver stared at the detectives so intensely. He then slowly drove toward the back (west) side of the restaurant and noticed Detective Quinn's vehicle. Detective Ownby was also inside the vehicle.

Detective Quinn informed the other detectives he may have been identified as a law enforcement officer by the driver; however the detectives were unsure if the vehicle was the one Mr. Brumfield was in. As the driver passed Detective Quinn, the CI received a text message asking who the white guy was. Detective Wilkinson relayed this message to the other detectives, via handheld radio. Based off the text message, it was determined the vehicle the detectives were observing was the suspect vehicle. The vehicle exited the Wendy's parking lot before detectives could make contact with it and conduct a traffic stop.

The vehicle traveled from the parking lot onto Stirling Blvd, then south to E Brewster Rd, then north onto Highway 21, in the right lane. Detective Prieto placed his unmarked unit behind the suspect vehicle. He was followed by Sergeant Blackmon, Detective Gottardi and Thomas, and Detective Quinn and Ownby.

Detective Gottardi moved his unmarked vehicle into the left lane and passed the suspect vehicle in an attempt to position in the event the suspect attempted to flee. Once Detective Gottardi got into position, Detective Prieto activated the unmarked patrol unit's interior emergency lights in attempt to initiate a traffic stop.

The driver of the vehicle slammed the brakes and made an aggressive U-turn,

### ADMINISTRATIVE

| Report Contains | | | | Related Report Number(s) | | | |
|---|---|---|---|---|---|---|---|
| Officer(s) Reporting | ID. Number | Name | | ID. Number | | Unit | Date |
| THOMAS, WILLIAM S | 100066 | | | | | 9935 | 09/22/2015 |
| Officer Reviewing (If Applicable) | ID. Number | Approved Date | # Offenses | # Victims | # Offenders | # Premises Ent. | # Vehicles Stolen | # Arrested |
| BLACKMON, DARRE | 349 | 09/23/2015 | 6 | 0 | 1 | 0 | 0 | 1 |
| Routed To | | Related To | | | | | |
| NARCOTICS | | | | | | | |
| Assigned To | | Assigned By | | | | | Date |
| | | | | | | | |
| Case Status | | Exception Type | | | | | Date Cleared |
| CLEARED BY ARREST | | | | | | | |

COMPLAINT AR___ST AFFIDAVIT - NARRATIVE C_____INUATION

Juvenile

| Agency ORI Number | Agency Name | Agency Report Number |
|---|---|---|
| LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | 2015-012648 |
| Original Date Reported | Incident Type | |
| 08/28/2015 | Drug Violation | |

## NARRATIVE CONTINUATION

crossing the left lane then driving over the median, through oncoming traffic. The driver then rapidly accelerated, causing the tires to squeal, and attempted to flee south on Highway 21. The moderate density of traffic and the actions taken by the driver placed other motorist into immediate danger of being involved in a motor vehicle collision.

At 9:40 pm, Detective Prieto notified central dispatch units were in pursuit of the suspect vehicle due to traffic violations and suspected narcotics possession violations. All detectives activated the emergency lights and sirens in their unmarked vehicles and pursued the suspect vehicle as it traveled south on Highway 21 at a high rate of speed, in excess of sixty miles per hour (60 mph), the posted speed on this stretch of road is posted at forty five miles per hour (45 mph). The vehicle ran the red light at the intersection of Highway 21 and the eastbound I-12 on ramp. The driver turned onto eastbound I-12 and sped up, still attempting to evade detectives. As the vehicle entered the interstate a Louisiana State Trooper joined the pursuit. The vehicle was traveling in excess of one hundred fifteen miles per hour (115 mph) and turned off the vehicle's lights in an attempt to evade detectives. The posted speed along I-12 is seventy miles per hour (70 mph). The traffic along I-12 was heavy with commercial trucks. The vehicle was aggressively weaving and changing lanes, close to the front commercial trucks' lanes of travel, causing several to rapidly apply the brakes and, at least, one commercial truck to quickly change lanes to avoid a collision.

Detective Prieto maintained radio contact with the St. Tammany Parish Central Dispatch. The dispatcher informed the units in pursuit there were additional marked units in route to assist and to stage along the suspected route the suspect may use to attempt to evade the detectives, as well as the confirmed route the suspect used that Detective Prieto broadcasted on the radio.

The vehicle exited I-12 onto westbound Highway 190 with the vehicle headlights still off. While traveling on Highway 190 the driver turned the lights back on. Due to the amount of traffic on the roadway, the driver was passing vehicles on the left by traveling over the median in and attempt to evade detectives. The vehicle was traveling in excess of sixty miles per hour (60 mph), the posted speed limit on Highway 190 is forty five miles per hour (45 mph).

The vehicle exited Highway 190 onto westbound Boston St. It then turned north onto Lee Ln and then east onto Abadie Ln. While on Abadie Ln, the vehicle attempted to stop, to no avail. The driver exited the vehicle prior to it stopping, which led to the

## ADMINISTRATIVE

| Report Contains | | | Related Report Number(s) | | | |
|---|---|---|---|---|---|---|
| Officer(s) Reporting | ID. Number | Name | | ID. Number | Unit | Date |
| THOMAS, WILLIAM S | 100065 | | | | 9635 | 09/22/2015 |
| Officer Reviewing (if Applicable) | ID. Number | Approved Date | # Offenses | # Victims | # Offenders | # Premises Ent. | # Vehicles Stolen | # Arrested |
| BLACKMON, DARRE | 349 | 09/23/2015 | 6 | 0 | 1 | 0 | 0 | 1 |
| Routed To | | Referred To | | | | |
| NARCOTICS | | | | | | |
| Assigned To | | Assigned By | | | | Date |
| Case Status | | Exception Type | | | | Date Cleared |
| CLEARED BY ARREST | | | | | | |

## COMPLAINT ARREST AFFIDAVIT - NARRATIVE CONTINUATION

Juvenile

| Agency ORI Number | Agency Name | Agency Report Number |
|---|---|---|
| LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | 2015-012648 |
| Original Date Reported | Incident Type: | |
| 08/26/2015 | Drug Violation | |

### NARRATIVE CONTINUATION

vehicle striking the handicap ramp on the west side of 882 E Boston St Suite 8, Covington. The collision broke the metal handrails on both sides of the ramp and destroyed the wooden handrail and decorations of the handicap ramp.

When the driver jumped from the vehicle and fled northbound on foot, he kicked off his "flip flop" shoes, as if to be able to run without restriction. The driver ran north through the parking lot of 1805 Village Walk, Covington. There was one light on the south side of the parking lot and the northern edge of the parking lot was dark. When the driver got to the dark area of the parking lot, he took off his white t-shirt and threw it with his left hand. It appeared as if he removed his shirt to aid in evading the responding units.

Deputies with the St Tammany Parish Sheriff's Office moved to the north side of the Boston Commons. As they positioned their fully marked patrol units, with emergency overhead lights on, Corporal Stipe, of the St. Tammany Parish Sheriff's Office, observed a b/m, matching the description of the subject, running through the grass field north of 1805 Village Walk. Cpl. Stipe gave chase, drew his department issued electronic control device and issued a loud verbal identification and command of, "Sheriff's Office, Stop". When the driver looked over his right shoulder and noticed Cpl. Stipe he dropped to the ground and said, "I give up." Cpl. Stipe provided cover using his electronic control device and instructed him to keep his hands away from his body. Sgt. Mineo, of the St. Tammany Parish Sheriff's Office, arrived and placed the driver in handcuffs (finger spaced and double locked). Mr. Brumfield was verbally advised of his constitutional rights by Detective Gottardi. Mr. Brumfield said he would give the detectives anyone they wanted, leading the detectives to believe Mr. Brumfield wished to waive his constitutional rights.

After the driver was apprehended his identity was confirmed as Marlon Brumfield, by way of Louisiana issued class "I" identification card. Mr. Brumfield was detained for investigation and was patted down for weapons by Deputy T.J. Schlesinger. Deputy Schlesinger asked Mr. Brumfield if he had any weapons or illegal narcotics, to which he replied "no". Deputy Schlesinger felt a hard object in the front of Mr. Brumfield's pants and asked if he could remove the item, to which Mr. Brumfield stated "yeah". The deputy discovered a Newport cigarette box in Mr. Brumfield's underwear. The deputy asked if there were any illegal narcotics in the cigarette box, to which Mr. Brumfield replied "no". The deputy asked if he could look in the cigarette box, to which Mr. Brumfield replied "yeah". The cigarette box contained a small plastic bag containing suspected crack cocaine (N-1). This was collected as evidence.

### ADMINISTRATIVE

| Report Contains | | | | Retired Report Number(s) | | | | |
|---|---|---|---|---|---|---|---|---|
| Officer(s) Reporting | ID. Number | Notes | | | IQ. Number | Unit | Date | |
| THOMAS, WILLIAM S | 100065 | | | | | 9635 | 09/22/2015 | |
| Officer Reviewing (If Applicable) | ID. Number | Approved Date | # Offenses | # Victims | # Offenders | # Premises Ent. | # Vehicles Stolen | # Arrested |
| BLACKMON, DARRE | 349 | 09/23/2015 | 6 | 0 | 1 | 0 | 0 | 1 |
| Routed To | | Referred To | | | | | | |
| NARCOTICS | | | | | | | | |
| Assigned To | | Assigned By | | | | | | Date |
| Case Status | | Exception Type | | | | | | Date Cleared |
| CLEARED BY ARREST | | | | | | | | |

COMPLAINT ARREST AFFIDAVIT - NARRATIVE CONTINUATION

Juvenile

| Agency ORI Number | Agency Name | Agency Report Number |
|---|---|---|
| LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | 2015-012648 |
| Original Date Reported | Incident Type | |
| 08/26/2015 | Drug Violation | |

### NARRATIVE CONTINUATION

Mr. Brumfield was placed under arrest for possession of a schedule II controlled dangerous substance.

During a search incidental to arrest, the deputy discovered a small plastic bag containing suspected marijuana (N-2) and a crumpled receipt containing suspected marijuana (N-3) in Mr. Brumfield's right rear pocket. These were collected as evidence.

Detective Prieto requested an N.C.I.C. check of Mr. Brumfield and learned he did not have any outstanding warrants. Mr. Brumfield had a valid Louisiana class I identification on his person, however the check revealed Mr. Brumfield had a suspended Louisiana class P (90518094) license.

Detective Thomas and Ownby searched the vehicle and discovered an electronic cigarette smoking device containing a liquid suspected of containing THC (N-4). There was a baby bottle containing approximately six and a half ounces (6.5 oz) red liquid (N-5), suspected of being codeine/promethazine cough syrup in the center console cup holder. There was a plastic sixteen point nine ounce (16.9 oz) water bottle which contained approximately twelve ounces (12 oz) of a red liquid (N-6), suspected of being codeine/promethazine cough syrup on the front passenger floor board. These were collected as evidence.

There was a cellular phone in the vehicle, located in the driver side door console, which was seized. The cellular phone is believed to be the phone Mr. Brumfield used to communicate with the CI. A search warrant was later requested in attempt to identify any records which may indicate the communication of potential drug transactions and to retrieve the communications between Mr. Brumfield and the CI.

The suspected crack cocaine was field tested using a "NIK E" field test kit, which was positive for cocaine. The suspected marijuana was tested using a "NIK G" field test kit, which was positive for THC. The suspected codeine/promethazine could not be tested by the detectives. The seized evidence was placed into the Narcotics evidence vault located at the LEC. A request was submitted for the seized items to be tested by the St. Tammany Parish Sheriff's Office Crime Lab.

Mr. Brumfield was transported to the LEC by St. Tammany Parish Sheriff's Deputy T.J. Schlesinger. Upon arrival, Mr. Brumfield was again advised of his constitutional rights, using the statement of Miranda Rights form, by Detective Quinn, which he

### ADMINISTRATIVE

| Report Contains | | | | Related Report Number(s) | | | |
|---|---|---|---|---|---|---|---|
| Officer(s) Reporting | ID. Number | Name | | | ID. Number | Unit | Date |
| THOMAS, WILLIAM S | 100065 | | | | | 9635 | 09/22/2015 |
| Officer Reviewing (If Applicable) | ID. Number | Approved Date | # Offenses | # Victims | # Offenders | # Premises Ent. | # Vehicles Stolen | # Arrested |
| BLACKMON, DARRE | 349 | 09/23/2015 | 6 | 0 | 1 | 0 | 0 | 1 |
| Routed To | | Referred To | | | | | |
| NARCOTICS | | | | | | | |
| Assigned To | | Assigned By | | | | | Date |
| Case Status | | Exception Type | | | | Date Cleared | |
| CLEARED BY ARREST | | | | | | | |

027

## COMPLAINT ARREST AFFIDAVIT - NARRATIVE CONTINUATION

| Agency ORI Number | Agency Name | Agency Report Number |
|---|---|---|
| LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | 2015-012648 |
| Original Date Reported 08/26/2015 | Incident Type Drug Violation | |

### NARRATIVE CONTINUATION

voluntarily acknowledged and signed. The signed form was later turned in as an attachment to this report.

Detective Prieto requested the next wrecker off the St. Tammany Parish Sheriff's Office wrecker log to remove the vehicle, a white 2011 Nissan Titan (VIN: 1N6BA0EK0BN313035) bearing Louisiana license plate C253483, from the scene. A wrecker request was completed and later turned in as an attachment to this report.

It was learned the vehicle belonged to Nancy J. Keen, residing at 58 Maison Dr Covington. Detective Prieto requested the St. Tammany Parish Sheriff's Office Dispatch send a deputy assigned to the patrol division to Ms. Keen's address in an attempt to determine if the vehicle was stolen. The patrol division met with negative results. A telephone number could not be found for Ms. Keen.

Detective Thomas photographically documented the crash scene, the vehicle and the location of the evidence found in the vehicle. The vehicle was removed from the scene by Jenkin's Towing Service. The photographs were later placed on a compact disk and submitted as evidence (NN-1).

At 10:10 pm, Detective Prieto and Sergeant Blackmon traveled to 58 Maison Dr for a second attempt at making contact with Ms. Keen. They were able to make contact with Ms. Keen and she informed Detective Prieto she gave Mr. Brumfield permission to use the vehicle. She was informed what towing company had the vehicle and the detectives departed the residence.

At approximately 10:30 pm, Detective Ownby attempted to contact the owner of 832 E Boston St Suite 8 Covington, to no avail. He then contacted the Covington Police Department to inform them of the crash in the event the owner contacted them later to report the damage to the building.

Mr. Brumfield refused to provide any further information on the incident. He was arrested for violation of Louisiana Revised Statutes 14:96 (aggravated obstruction of highway of commerce), 14:56.B.2 (criminal damage, felony), 32:415 (driving under suspension), 40:967A/C (possession with intent to distribute schedule II, to wit cocaine), 40:967A/C (possession with intent to distribute schedule II, to wit codeine), and 40:966E.3 (possession of marijuana, third offense) He was transported to the St. Tammany Parish Jail without incident.

### ADMINISTRATIVE

| Officer(s) Reporting THOMAS, WILLIAM S. | ID Number 100065 | Name | ID Number | Unit 9635 | Date 09/22/2015 |
|---|---|---|---|---|---|
| Officer Reviewing (If Applicable) BLACKMON, DARRE | ID Number 349 | Approved Date 09/23/2015 | | | |

Routed To NARCOTICS

Case Status CLEARED BY ARREST

028

COMPLAINT ARREST AFFIDAVIT - NARRATIVE CONTINUATION                     Juvenile ☐

| Agency ORI Number | Agency Name | | Agency/Report Number |
|---|---|---|---|
| LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | | 2015-012648 |
| Original Date Reported | Incident Type | | |
| 08/26/2015 | Drug Violation | | |

NARRATIVE CONTINUATION

Attachments are as follows:

1 - criminal history for Marlon Brumfield

1 - signed Miranda form

1 - wrecker request


Assisted by:

Det. Roger Gottardi    / 9619

Det. Jason Prieto    / 9620

Sgt. Darren Blackmon / 9605

Det. Shane Wilkinson / 9623

Det. Jay Quinn    / 9616

Det. Bart Ownby    / 9636


Nothing further.

ADMINISTRATIVE

| Report Contains | | | Related Report Number(s) | | | | |
|---|---|---|---|---|---|---|---|
| Officer(s) Reporting | ID. Number | Names | | ID. Number | Link | Date | |
| THOMAS, WILLIAM S | 100065 | | | | 9636 | 09/22/2015 | |
| Officer Reviewing (If Applicable) | ID. Number | Approved Date | # Offenses | # Victims | # Offenders | # Premises Ent. | # Vehicles Stolen | # Arrested |
| BLACKMON, DARRE | 349 | 09/23/2015 | 6 | 0 | 1 | 0 | 0 | 1 |
| Routed To | | Referred To | | | | | |
| NARCOTICS | | | | | | | |
| Assigned To | | Assigned By | | | | | Date |
| | | | | | | | |
| Case Status | | Exception Type | | | | | Date Cleared |
| CLEARED BY ARREST | | | | | | | |



Office of the Clerk
# Court of Appeal, First Circuit
State of Louisiana
www.la-fcca.org

Rodd Naquin
Clerk of Court

Post Office Box 4408
Baton Rouge, LA
70821-4408
(225) 382-3000

**Notice of Lodging**
January 23, 2017

2017-KA-0080

State Of Louisiana
   Versus
Marione Rashen Brumfield

TO:   Matthew Caplan
      701 N. Columbia Street
      Covington, LA 70433
      mcaplan@22da.com

      Frederick Kroenke Esq.
      Louisiana Appellate Project
      707 Rapides Street
      Baton Rouge, LA 70806

      Warren LeDoux Montgomery
      701 N. Columbia Street
      Covington, LA 70433
      wmontgomery@22da.com

Re: 22nd Judicial District Court, No. 567470, "E"

   Judgment(s) dated: 02/18/2016      Conviction
                       07/11/2016      Habitual Offender Adjudication & Sentencing

You are advised that the record in the above-captioned case has this date been lodged.  The case bears appellate court docket number 2017-KA-0080 on the docket of this Court.  Please show this docket number on all correspondence and filings.

The Uniform and Local Rules of Louisiana Courts of Appeal govern appellate practice and procedure.  Complete copies of the Rules are on the Court's website, www.la-fcca.org.  Your attention is specifically directed to the following rules:

|                    |                                                        |
|--------------------|--------------------------------------------------------|
| Uniform Rule 2-7.2 | REQUIREMENTS OF OTHER MOTIONS (not made in open court)  |
| Uniform Rule 2-7.3 | FILING (of motion or pleading)                         |
| Uniform Rule 2-8.6 | ABANDONMENT OF CIVIL APPEAL                            |
| Uniform Rule 2-11.4| REQUEST FOR ORAL ARGUMENT                              |
| Uniform Rule 2-12  | BRIEFS (in general)                                    |
| Uniform Rule 2-12.13| NON-CONFORMING BRIEFS; SANCTIONS                      |
| Uniform Rule 2-13  | TIMELY FILING OF PAPERS                                |

All requests for the return of conformed copies of filings must be accompanied by a self-addressed, stamped envelope.

The briefing schedule in conformity with Uniform Rule 2-12.7 is as follows, unless an extension is granted pursuant to Uniform Rule 2-12.8:

| Frederick Kroenke Esq. | Appellant Brief | 02/17/2017 |
|------------------------|-----------------|------------|
| Warren LeDoux Montgomery | Appellee Brief | 03/09/2017 |
| Matthew Caplan | Appellee Brief | 03/09/2017 |


Exhibit
3

PLEASE FILE AN ORIGINAL AND SEVEN COPIES OF THE BRIEF.

BY ORDER OF THE COURT

ROBD NAQUIN
CLERK OF COURT

# STATE OF LOUISIANA

# COURT OF APPEAL, FIRST CIRCUIT

## IMPORTANT NOTICE

### 2017 K A 0 0 8 0

*PLEASE FIND ATTACHED THE EXHIBIT LIST SENT TO THE COURT OF APPEAL WITH THE APPELLATE RECORD IN THIS MATTER.*

As a courtesy, the Clerk's Office is hereby notifying you that the attached document lists the exhibits that have been sent to the First Circuit **in addition to the appellate record**. This list is not indicative of what exhibits have been included **within** the bound appellate record.

It is incumbent upon each counsel/party to review the appellate record to ensure the necessary exhibits are before the Court of Appeal and, if necessary, to *immediately* file a Motion and Order to Supplement the Appellate Record with the appropriate court.

Please call the Clerk's Office at (225) 382-3000 if you have any questions.

COURT OF APPEAL, FIRST CIRCUIT

*Rodd Nejin*

CLERK OF COURT
FOR THE COURT



STATE OF LOUISIANA

**2 0 1 7 K A 0 0 8 0**

VERSUS

MARLONE RASHEN BRUMFIELD

NUMBER: 567470 E

22ᴺᴰ JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

FILED IN EVIDENCE ON: FEBRUARY 17, 2016
PRESIDING JUDGE: WILLIAM J. BURRIS
MINUTE CLERK: TARA D. COOPER

EXHIBITS FILED BY: STATE

✓ 1A-PHOTO-FRONT OF WHITE NISSAN TRUCK DRIVEN
✓ 1B-PHOTO-PASSENGER SIDE OF TRUCK
✓ 1C-PHOTO-CLOSE-UP OF FRONT PASSENGER SIDE
✓ 1D-PHOTO-OVERSHOT OF THE VEHICLE CRASH
✓ 1E-PHOTO-CLOSE UP OF QUARTER PANEL
✓ 1F-PHOTO-CLOSE UP OF DRIVER SIDE QUARTER PANEL
✓ 1G-PHOTO-FURTHER BACK PHOTO OF DRIVER SIDE
✓ 1H-PHOTO-LICENSE PLATE ON VEHICLE
✓ 1I-PHOTO-DAMAGE TO BUILDING ONCE TRUCK WAS REMOVED
✓ 1J-PHOTO-DAMAGE TO BUILDING ONCE TRUCK WAS REMOVED
✓ 1K-PHOTO-DAMAGE TO BUILDING ONCE TRUCK WAS REMOVED
✓ 1L-PHOTO-DAMAGE TO BUILDING ONCE TRUCK WAS REMOVED
✓ 1M-PHOTO-DAMAGE TO BUILDING ONCE TRUCK WAS REMOVED
✓ 1N-PHOTO-INSIDE THE FRONT OF THE VEHICLE
✓ 1O-PHOTO-CLOSE UP OF THE WATER BOTTLE CONTAINING RED LIQUID
✓ 1P-PHOTO- CLOSE UP OF THE BABY BOTTLE CONTAINING RED LIQUID
✓ 1Q-PHOTO- CONSOLE WITH BABY BOTTLE
✓ 1R-PHOTO-ID FOUND IN VEHICLE
✓ 1S-PHOTO-VEHICLE REGISTRATION
  S2-BABY BOTTLE CONTAINING RED LIQUID ⌉
  S3-WATER BOTTLE CONTAINING RED LIQUID │ *not sent*
  S4-CELL PHONE │
  S5-E-CIG DEVICE ⌋
✓ S6- CAD NOTES-FOR RECORD PURPOSES ONLY
✓ S7-AUDIO OF CAD
  S8-NEWPORT CIGARETTE BOX CONTAINING COCAINE ⌉
  S9-MARIJUANA │ *not sent*
  S10-MARIJUANA IN RECEIPT ⌋
✓ S11- SCIENTIFIC ANALYSIS REPORT
✓ S12-JAIL CALL LOG INDEX
✓ S13-CD OF JAIL CALLS

COURT OF APPEAL FIRST CIRCUIT
Filed

JAN 2 3 2017

*[signature]*
CLERK

**2 0 1 7 K A 0 0 8 0**

Item # 1

of 3

CE4459

567470          DIV:  E

1A - 1S, S6, S7, S11, S12, S13

23



2 0 1 7 K A 0 080

STATE OF LOUISIANA

VERSUS

MARLONE RASHEN BRUMFIELD

NUMBER: 567470 E

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

JURORS POLLED ON : FEBRUARY 18, 2016
PRESIDING JUDGE: WILLIAM J. BURRIS
MINUTE CLERK: TARA D. COOPER

√ WRITTEN POLLING SHEETS FOR THE FELONY JURY TRIAL
IN THE ABOVE CAPTIONED MATTER
CAN BE FOUND IN THE CLERK OF COURT EVIDENCE VAULT

COURT OF APPEAL FIRST CIRCUIT
Filed

JAN 23 2017

_Rodd Aguin_
CLERK

Item # _2_ of _3_

2 0 1 7 K A 0 080

CE0497

567470                    DIV: E

WRITTEN POLLING SHEETS

2017 K A 0 080

STATE OF LOUISIANA

VERSUS

MARLONE RASHEN BRUMFIELD

NUMBER: 567470 E

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

FILED IN EVIDENCE ON: JULY 11, 2016
PRESIDING JUDGE: WILLIAM J. BURRIS
MINUTE CLERK: TARA D. COOPER

EXHIBITS FILED BY: STATE

✓ S1- Curriculum Vitae of Lauren Engel
✓ S2-Ten Print Fingerprint Card
✓ S3-Entire Court Record-Docket Number 396405
✓ S4-Entire Court Record-Docket Number 404979 (31)
✓ S5-Entire Court Record-Docket Number 506272

COURT OF APPEAL FIRST CIRCUIT
Filed

JAN 23 2017

CLERK

Item # 3 of 3

2017 K A 0 080

CE4545

567470            DIV: E

S1 - S5

22ND JUDICIAL DISTRICT COURT FOR THE
PARISH OF ST. TAMMANY

NO. 567,470                                         DOCKET "E"

STATE OF LOUISIANA

VERSUS

MARLONE BRUMFIELD

FILED: September 17, 2019          _____
                                            DEPUTY CLERK

## ORDER DENYING APPLICATION FOR POST CONVICTION RELIEF

Defendant filed an Application for Post Conviction Relief on July 29, 2019.
This Court requested a response from the Office of the District Attorney on
August 16, 2019 which was received by this Court on September 10, 2019.
Following review of the file and the State's response, this Court concludes the
defendant failed to provide any evidence or argument that would entitle him to
post-conviction relief.

Accordingly IT IS ORDERED THAT: The Application for Post Conviction
Relief is denied.

Signed this 17th day of September 2019 in Covington, Louisiana.

_____
WILLIAM H. BURRIS
DISTRICT JUDGE, DIVISION "E"

A TRUE COPY

BY: CLERK 22nd JUD. DIST. COURT
ST. TAMMANY PARISH, LA

# The Supreme Court of the State of Louisiana

**STATE OF LOUISIANA**

No.2020-KH-00632

**VS.**

**MARLONE R. BRUMFIELD**

— — — — —

IN RE: Marlone R. Brumfield - Applicant Defendant; Applying For Supervisory Writ, Parish of St. Tammany, 22nd Judicial District Court Number(s) 567470, First Circuit Court of Appeal, Number(s) 2019 KW 1414;

— — — — —

**November 04, 2020**

Writ application denied. See per curiam.

JTG

JLW

SJC

WJC

JHB

Hughes, J., would grant as to sentence imposed.

Supreme Court of Louisiana
November 04, 2020

_____
**Second Deputy** Clerk of Court
For the Court

SUPREME COURT OF LOUISIANA

No. 20-KH-0632

STATE OF LOUISIANA

v.

MARLONE R. BRUMFIELD

ON SUPERVISORY WRITS TO THE TWENTY-SECOND
JUDICIAL DISTRICT COURT, PARISH OF ST. TAMMANY

PER CURIAM:

Denied. Applicant fails to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As to his remaining claims, applicant fails to satisfy his post-conviction burden of proof. La.C.Cr.P. art. 930.2.

Applicant has now fully litigated his application for post-conviction relief in state court. Similar to federal habeas relief, *see* 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4 and within the limitations period as set out in La.C.Cr.P. art. 930.8. Notably, the legislature in 2013 La. Acts 251 amended that article to make the procedural bars against successive filings mandatory. Applicant's claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, applicant has exhausted his right to state collateral review. The district court is ordered to record a minute entry consistent with this per curiam.

# SUPREME COURT OF LOUISIANA

## No. 2020-KH-00632

## STATE OF LOUISIANA

### VS.

### MARLONE R. BRUMFIELD

On Supervisory Writ to the 22nd Judicial District Court, Parish of St. Tammany

**Hughes, J., would grant the writ as to the sentence imposed.**

# STATE OF LOUISIANA
# COURT OF APPEAL, FIRST CIRCUIT

STATE OF LOUISIANA

VERSUS

MARLONE R. BRUMFIELD

NO. 2019 KW 1414

MAR 1 3 2020

---

In Re:   Marlone R. Brumfield, applying for supervisory writs, 22nd Judicial District Court, Parish of St. Tammany, No. 567470.

---

BEFORE:   McDONALD, THERIOT, AND CHUTZ, JJ.

WRIT DENIED.

JMM
MRT
WRC

COURT OF APPEAL, FIRST CIRCUIT

DEPUTY CLERK OF COURT
FOR THE COURT



Office Of The Clerk

# Court of Appeal, First Circuit
State of Louisiana
www.la-fcca.org

**Rodd Naquin
Clerk of Court**

Post Office Box 4408
Baton Rouge, LA
70821-4408
(225) 382-3000

### Notice of Judgment and Disposition

March 13, 2020

Docket Number:  2019 - KW - 1414

State Of Louisiana
    versus
Marlone R. Brumfield

TO:   Marlone R. Brumfield        Warren LeDoux Montgomery
       Louisiana State Penitentiary   701 N. Columbia Street
       Angola, LA 70712            Covington, LA 70433
                                 wmontgomery@22da.com

       William H. Burris
       701 N. Columbia Street
       Covington, LA 70433

In accordance with Local Rule 6 of the Court of Appeal, First Circuit, I hereby certify that this notice of judgment and disposition and the attached disposition were transmitted this date to the trial judge or equivalent, all counsel of record, and all parties not represented by counsel.

RODD NAQUIN
CLERK OF COURT

STATE OF LOUISIANA

Vs.    No.: 567470; Div. "E"

MARLONE R. BRUMFIELD

22ND JUDICIAL DISTRICT COURT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

_____
Date Filed By Clerk of Court

_____
Dpty. Clerk of Court

## MEMORANDUM OF LAW IN SUPPORT

**MAY IT PLEASE THE COURT:**

NOW INTO COURT COMES, Marlone R. Brumfield, *Pro Se* Petitioner, who respectfully presents this "Memorandum of Law in Support," of which he respectfully incorporates into and makes a part of his Uniform Application for Post-Conviction Relief. Furthermore, after due and proper consideration of the merits herein and the argument presented, Petitioner respectfully moves this Honorable Court to grant him post-conviction relief, and set aside his current conviction and sentence for the reasons established herein.

### JURISDICTION AND VENUE

Jurisdiction and venue are proper before this Honorable Court pursuant to *La. Const. 1974, Art. V, § 16*, and *La. C.Cr.P. art. 924, et seq.*

### NOTICE OF PRO-SE FILING

Mr. Brumfield requests that this Honorable Court view these Claims in accordance with the rulings of *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *State v. Moak*, 387 So.2d 1108 (La. 1980)(Pro-se petitioner not held to same stringent standards as a trained lawyer); *State v. Egana*, 771 So.2d 638 (La. 2000)(less stringent standards than formal pleadings filed by lawyers). Mr. Brumfield is a layman of the law and untrained in the ways of filings and proceedings of formal pleadings in this Court.

### STATEMENT OF THE CASE

Petitioner, Marlone Rashen Brumfield was convicted of Aggravated Obstruction of a Highway of Commerce, and possession of cocaine on February 18, 2017, after a jury trial in the 22rd Judicial District Court in for the Parish of St. Tammany, State of Louisiana in Case No. 567470, Div."E," the

1.

Honorable William J. Burris, Judge Presiding.

On November 15, 2016, a habitual offender hearing was held, in which petitioner was found to be a fourth-time felony offender, Judge Burris then sentenced petitioner in accordance with LSA-R.S. 15:529.1 to a mandatory life sentence as to count one and twenty years at hard labor as to count two, to run concurrently with each other. A copy of the minutes showing the conviction, and the sentence are attached.

Petitioner's conviction and sentence were based on a four count bill of information charging aggravated obstruction of a highway, simple criminal damage to property, and possession with the intent to distribute Schedule II Controlled dangerous substance and possession of marijuana (3 rd offense, all in violation of R.S. 14:96, 56: 40:967 (A)(1), 966 (C)(E)(3). The bill of information was amended later by the state, count 2 to read possession of schedule II to wit: Cocaine, dismissing the simple criminal damage to property and the possession of marijuana third offense on August 22, 2016. Petitioner entered a not guilty plea said charges in the amended bill of information. On the date of the scheduled trial, petitioner's motion to suppress statements and evidence was heard along with the preliminary examination, in which both were denied. Trial began February 16, 2016, Petitioner was convicted as charged on the obstruction of a highway of commerce and possession of cocaine.

Attorney Ernest E. Barrow III 113 E. 23rd Ave., Convington, La. 70433, represented Petitioner at trial and during the motion to suppress and preliminary hearing, said attorney was a conflict attorney appointed by he trial court.

The court of appeals First Circuit No. 2017-KA-0080, denied petitioner direct appeal on September 21, 2017. The case is reported as unpublished. The Supreme Court denied writs on June 15, 2018, No. 2017-KO-1790.

Petitioner argued three claims for relief on appeal. Arguing that: 1) the district court erred when it denied defendant's motion to suppress evidence and statements because it was acquired via illegal search and seizure; 2) The states failed to prove sufficient evidence to convict Brumfield of possession of cocaine, and 3) The habitual offender law is excessive and cruel and unusual punishment. The Louisiana Appellate Project was appointed to represent Petitioner on appeal. However, Petitioner hired attorney Rachel Yazbeck to do his appeal in this matter (701 Loyola Ave. Suite 404, New Orleans, La. 70113).

Petitioner represents and shows said application for post-conviction relief it timely, being that Supreme Court of Louisiana denied his direct appeal on June 15, 2017. Petitioner had 90 day in which

2.

to seek writs in the United States Supreme Court. However, his conviction became final once the time period for him to seek writs expired, or on September 15, 2018. Petitioner has two (2) year to seek post conviction relief in the district court. Therefore, this application is timely filed.

## CLAIMS FOR RELIEF

**The conviction was obtained in violation of the constitution of the united States and Louisiana Constitution.**

**A. Denied a right to judicial review on direct appeal.**

**LSA-Const. Art. 1 § 19 provides:**

No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. This right may be intelligently waived....

La. Cr.C.P. Art. 843 pertinently states:

In felony cases . . .the clerk of court stenographer shall record all of the proceedings, including the examination of witnesses, statements, rulings, orders and charges by the court and objections, questioning, statements and arguments of counsel.

Moreover, in criminal proceedings the court reporter shall record all portions of the proceedings required by law and shall transcribe those portions of the trial proceedings required by R.S. 13: 961 (C).

The Louisiana Supreme Court and the Untied States Supreme Court have made it clear that a criminal defendant has a right to a complete transcript of the trial proceedings particular where, as in this case appellant counsel was not counsel at trial. *State v. Boatner*, 03-485 (La. 12/3/03, 861 So.2s 149, 152).

Material omissions from trial court proceedings bearing on the merits on an appeal require reversal. *State v. Boatner*, 03-485 (La. 12/3/03, 861 So.2s 149, 153. However, "slight inaccuracy in a record or an inconsequential omission from it which is immaterial to the proper determination of the appeals" does not require reversal of a conviction. Id., quoting *State v. Brumfield*, 96-2667 (La. 10/28/98), 737 So.2s 660, 669, cert denied, 526 U.S. 1025 (1999); *State v. Parker*, 361 So.2d 226, 227 (La. 1978). A defendant is not entitled to relief of an incomplete record absent a showing of prejudice based on the missing portions of the transcripts. Id.

In this case, there are portions of the transcripts that weren't transcribed because it was an off the record bench discussion, see Exhibit-"A", pages 135,137,143, 157,159, 166,168,267,457,& 485-89.

On pages 172,m 73,273, 290, off the record discussion were held but such was transcribed and did correctly and accordingly to the law and statute. Petitioner would like to point out on page 485, the court stated:

THE COURT

Yes, Lets do the charge conference (court adjourned).

Petitioner represents and shows he wasn't present during said proceedings and such wasn't transcribed and made part of the appellant record. On the following day of trial (page 489 attached under Ex.- A) which states:

THE COURT

Counsel, we went over instructions yesterday after court and made a few changes.

MR. MACKE

No objection from the state, pursuant to the changes that were made at that pretrial conference or the charge conference.

MR. BARROW

The only objection I had your honor is, and I asked for it was the off the record in chambers asked for a responsive to the Agg. Obstruction of a highway to be reckless operation. I believe it contains some of the lesser included facts, and I believe it would be appropriate to include it as a responsive verdict to Agg. Obstruction. I know your Honor is not inclined to do that, but just note my objection.

Petitioner wasn't present, whatever went on during the charge conference should have been transcribed and made part of the appellate record, being such was did off the record in chambers. Petitioner can't challenge on appeal or post-conviction proceedings if his lawyer was ineffective at such conference or if any of his other constitutional rights were violated.

La.Cr.C.P. Art. 843 requires either the clerk of the court reporter to record all proceedings, including the examination of prospective jurors, rulings, objections, and arguments of counsel. In State Pinion, 06-2436 (La. 10/26/07), 968 So.2d 131, 134-35 (per curiam)(citations omitted), the Louisiana Supreme Court explained that "the failure to record bench conferences will ordinarily not affect the direct review process when the record suggest that the unrecorded had no discernible impact on the proceedings and did not result in any specific prejudice to the defendant.

As in *State v. Landry*, 97-499 (La. 6/29/990, 751 So.2d 214, 216, the record is grossly incomplete in several respects and the deficient record deprived the defendant of his constitutional

4.

rights of appeal and judicial review, Landry reaffirmed that "it is not the defendants obligation to ensure an adequate record....it is the duty of the court...to see that the court reporter makes a true, complete, and accurate record of the trial." 751 So.2d @ 216, citing in part La. Cr.C.P. Art. 17.

Petitioner represents and shows at one point the District Attorney had a discussion with one of the arresting narcotic agents, and such wasn't made part of the record. See Exhibit -A, last page which is transcript page 341, line 14-17, which provides:

THE COURT

I want you to discuss it with him now, and I'm sure you-all don't have any objection to that.

The trial was recessed, and I assumed at that time, the DA went discuss such with the officer. However, Petitioner, his lawyer, or the judge wasn't part of said discussion, and being such wasn't transcribed and made part of the record, petitioner can't raise no claim or issue regarding such discussion. Such should have been made part of the appellate record. Whatever was discussed, counsel for petitioner had a right to be present.

Further, Petitioner represents and shows the appellate record didn't consist of any of the police reports regarding this matter or the affidavit of probable cause (See Ex.-B"), neither did said record contain any of petitioners Boykin transcripts regarding prior charges used to enhance his sentences see Ex.-"C". Petitioner represents he was prejudiced by such not being made part of the record, because he was denied error patent review, pursuant to La.Cr.C.P. Art 920(2), therefore, relief should be granted on this claim in its entirety.

    B.    WHETHER THE PROSECUTOR KNOWINGLY USED FALSE TESTIMONY / INFORMATION TO OBTAIN A CONVICTION ?

Petitioner avers that his constitutional rights by the United States Constitution 5th, 6th and 14th Amendment as well as the Louisiana Constitution Art. 1 § 13 and 16 were violated when the prosecution knowingly used false testimony or information to secure a conviction for the Aggravated Obstruction of a Highway of Commerce and Possession of Cocaine.

Petitioner avers that on June 10, 2019, he received a copy of his criminal file from his trial lawyer, Mr. Ernest E. Barrow, pertaining to his arrest, prosecution and conviction in this matters See Ex.-"D".

Petitioner contends that upon reviewing the documents in said file, he discovered a copy of his affidavit of probable cause, and several police reports, In the affidavit of probable cause, it clearly states:

"On Wednesday August 26, 2015, pursuant to a narcotics investigation it was learned Marlin Brumfield would be driving a white four door Nissan Titan and delivering promethazin with Codine (Schedule II) to an individual in the Wendy's parking lot located at 69340 Highway 21, Convington, La."

Now at the Criminal trial in this matter Detective Scott Thomas testified at trial, that:

"Once he saw the vehicle description that we gave him that we were going to be in, he actually sent a text message to the cooperating individual asking who the white guy was with him."

Tr.p. 412.

So with that being testified to, under oath at trial, and in the affidavit of probable cause means the cooperating individual was in the parking lot. So, when detective Bart Ownby (T.p. 412), that the person was at the Sheriff's Complex such was a lie at trial, and perjured testimony at trial, and the prosecutor stayed mum and silent.

Further, detective Bart Ownby testified on trial p. 412 that:

"Detective, did the text message that you previously testified to in which the defendant said who is that white boy, is that what that text message said ? Yes."

The only was that Det. Ownby and other detectives can say what the text message said, they either had to see said text, the only way that could have happened, if the cooperating individual was in the car with the detectives at the Wendy's parking lot, which shows and proves all detectives that testified to such at trial, lied under oath and perjured themselves. Petitioner never text-ed anyone he called the guy on his cell phone so that is why they could not retrieve any text off petitioner's phone or the so called cooperating individual phone.

Next perjury issue deals with the state allowing the detectives at trial calling the C.I. Cooperating individual a confidential informant. Although both words starts with a C/I, both words ment the same, and doesn't have the same meaning. Please see Tr.p. 335, which states:

A.     "We were working with the individual from a separate incident who determined he was going to cooperate with us and he subsequently led us to Mr. Brumfield.

Q.     It there a certain terminology for that individual ?

A.     That's going to be a "cooperating individual."

A confidential informant is an unknown person who informs against another or a person who makes a practice esp. for money or informs police of others criminal activity and has been reliable in the past. At the trial of this matter, confidential informant was stated several times, see Tr.p. 322, 414, 417, 502, & 511. The prosecutor even referred to this guy as a confidential informant in his opening

6.

arguments (Tr.p. 322). Clearly, this guy should not have been called a confidential informant, when he wasn't one. Please see trans. p. 156, which states:

"Well, we was attempting to make a traffic stop to determine, to investigate further if we were wasting time or we were actually –if this guy was giving us good information."

The police themselves knew this guy wasn't reliable. Obviously he wasn't a confidential informant, because they wouldn't have referred to him as being a cooperating individual, they would have known he was reliable and credible. Again, the prosecutor never said one word, when such was stated at trial.

Next issue the petitioner would like to point out, several detectives testified at trial, when the petitioner was apprehended he immediately stated: "I will give you anybody you want." (Tr.P. 354)

Said statement is not true and perjured testimony. If said statement was true, why didn't the officers allow petitioner to do the very same as the cooperating individual was doing to the petitioner ? The officers clearly stated that they were investigating Narcotics in St. Tammany Parish. So if they use a small fish to catch a medium fish, why not use a mid-level dealer to catch a King Pen ? Such was never the intentions of said officers. The intentions of the officers was to arrest the petitioner and send him to prison for life, being the officers were upset, that petitioner was a black man, dating a white female.

The state cannot contend these officers did not testify falsely in this case, because the record shows otherwise, and the use of perjured testimony violated clearly established law in accordance with such cases as: *Napue v. Illinoise*, 360 U.S. 264 (1954); *Pyle v. Kansas*, 317 U.S. 213 (1942); *Mooney v. Holohan*, 294 U.S. 103 (1935). In *Napue*, the Supreme Court held:

"Convictions obtained through the use of false testimony known to be such by representatives of the state is a denial of due process, and there is also a denial of due process when the state though not soliciting false evidence allows it to go uncorrected when it appears."

The material fact in this knowing use of perjury is evident. Petitioner's allegations are apparently true, as can bee seen from the exhibits and the trial testimony. Any reasonable court official should have known to allow these witnesses to testify falsely is shameful and violates Petitioner's constitutional rights. This court can find that the genuine issues of fact exist, that those particular state witnesses testified falsely, and the attached documents and trial records clearly established these reports were used to bring charges against petitioner. It would prove that the officers have filed false reports and false information to have charges brought against petitioner.

7.

Petitioner further contends that he suffered prejudice due to these police witnesses committing perjury and testifying falsely. Had the witnesses not committed perjury or testified falsely, petitioner would not have been convicted. The testimony of these witnesses were the only testimony (evidence) that was vital to the petitioners case. The jury relied upon their testimony in reaching a verdict. Had the jury been made known of these witnesses perjury (untruthfulness) there would have been a different outcome. Petitioner submit that his conviction and sentence be reversed on the prosecution knowing use of false or perjured testimony.  Being that the prosecutor made the jury aware of the fact no nuns were in that van. Please be advised that is the sole and only time the state pointed out a lie to the jury. See Tran.p. 494 which states:

"And I know some of you have probably heard one of the officers testimony that were nuns and then the deacon came and said, oh, it was me and my wife."

The above is what is required by law, and should have been did each time when such occurred at this trial, but wasn't therefore, relief should be granted in its entirety.

C.    Whether law enforcement and the district attorney discriminates against the Black, African-American Race in St. Tammany Parish ?

Petitioner represents and shows race plays a major factor in St. Tammany Parish when a person is arrested and prosecuted. African-American (black), males are discriminated when arrested. A black male more then likely will be over-charged for violating the laws in said parish. However, a white male with the same record more likely won't be arrested, and he has violated too. If he is arrested, he would be arrested for a lesser crime than the black male, which is unconstitutional.

Petitioner further represents and shows its unfair and offensive and discriminatory practices for a black defendant charged with a crime, be charged as a habitual offender when they exercise constitutional rights to a trial and get convicted. However, when a white male or white person exercises their rights to trial in St. Tammany Parish, and get convicted they don't get prosecuted as a habitual offender, and their record is 10 times worse than a black defendants record. Such has been the practice in St. Tammany parish for several years. Article 61 states:

"Subject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every prosecution instituted or pending in his district, and determines whom, when and how he shall prosecute."

Petitioner represents and shows he would like to propound discovery on the district attorney for the parish of St. Tammany Parish for the last 10 years for further support his claim. Said discovery will

clearly show blacks are discriminated against and receive harsher sentences that white offenders. Therefore, once discovery is completed, petitioner would like to supplement this claim, and other claims. To deny petitioner to propound discovery would be stopping petitioner from proving his claim. Also, such would be denying him due process and equal protection of the laws which is forbidden by the United States Constitution, Amendment 14. Petitioner further represents and shows this honorable court and other judges within St. Tammany Parish may be called to court to testify regarding this claim, which may cause for all judges within the 22nd Judicial District Court to recuse themselves from this case, and have the Louisiana Supreme Court, to appoint a retired judge to handle all future proceedings in this matter, as it pertains to this instant application for post-conviction relief, as it pertains to petitioner.

### LAW AND ARGUMENT OF CLAIM 2

### THE STATUTE CREATING THE OFFENSE FOR WHICH HE WAS CONVICTED AND SENTENCED IS UNCONSTITUTIONAL

Aggravated Obstruction of a Highway of Commerce is Unconstitutional being its vague, overboard, ambiguous, and doesn't include interstate in the statute.

As a general matter, a statute is presumed to be constitutional, and the burden of showing otherwise falls to the challenger. *State v. Muschkat*, 706 So.2d 429. Further, criminal statutes are given a genuine construction according to the fair import of their words, taken in their usual sense, in context, and with reference to the purpose for the provision La. R.S. 14:3; *Muschkat*, 706 So.2d @ 432; *State v. Griffin*, 495 So.2d 1306, 1308 (La. 1986). Additionally, when the constitutionality of a statute is at issue, and under one construction it can be upheld, while under the other it cannot, a court must adopt the constitutional construction. *State v. Lecompte*, 406 So.2d 1300, 1311 (La. 1981). Therefore, a court may avoid constitutional problems by adopting a narrowing construction of the statute as long as that interpretation remains consistent with the overall purpose behind the legislation. *Muschkat, Supra.*, (stating "[W]hile we recognize our duty to interpret statutes in a manner consistent with the state and federal constitutions, we may only preserve a statue by a constitutional construction provided that the saving construction is a plausible one.") (Citation omitted). In addition to criminal statutes being strictly and narrowly construed, any ambiguity must be resolved in favor of the accused. *State v. Williams*, 800 So.2d 790; *State v. Carr*, 761 So.2d 1271.

Petitioner represents and shows within the current statutory criminal law and procedure it states each and every offense except for R.S. 14:96. Whereas, the alleged conduct is not allowed by statute is clearly spelled out. However, R.S. 14: 96 is unconstitutional because it does not spell out what conduct

is a violation of the statute. A citizen can not be arrested for violating state laws when the law is as vague as R.S. 14:96, because a citizen cannot reasonably understand the conduct, citizens cant be punished or arrested, unless they have been given advance "fair notice" of the action they charged with is prohibited. The prohibited description must be clear and not vague. Citizens should not be made to abide by laws that they have not been informed of. The criminal statute defines R.S. 14:96, as follows:

"Simple Obstruction of a highway of commerce is the intentional or criminally neglect placing of anything or performance of any act on any railway, railroad, navigable waterway, roadway of an air port, wherein it is foreseeable that human life might be endangered."

Being that performance of "any act" is too broad, uncertain, vague, and ambiguous. The citizens do not know what conduct they are being arrested for. This allows law enforcement to make rules as they go or as incidents arise. Legislature can not make a rule or law, that conflicts with state and federal law or the Louisiana and United States Constitution. If a citizen as myself, was aware that the act or actions were a crime or a violation of the law, there is a very strong probability they would have not done the violation. By having such a vague law when law enforcement can not charge a citizen with a certain violation they use the statute R.S. 14:96, which is a catch-all, and is illegal, unlawful, and unconstitutional. Especially, in the petitioner's case. He should have been charged with speeding, hit a run, flight from an officer, running a red light or two, which all are misdemeanor offenses which carries no more than 6 months (non-felony).

According to the statue as it is currently written, anybody who is speeding, driving reckless, runs a red light or stop sign, throws trash out of the window while driving, a person who crosses the road or highway walking really slow and a car must swerve or leave the highway from hitting that person, all could be charged under this unconstitutionally broad statute (R.S. 14:96). Even a mother or parent whom allows their young child to walk across the roads or highways, and a car almost hit the child, and must leave the highway to keep from hitting said child. Petitioner can go on and on but will stop here, the law is vague and nobody shouldn't have to guess or wonder if or if not their actions constitute a crime.

Now if, and I say only if this Honorable Court does not find R.S. 14:96, to be unconstitutional, such is unconstitutional as it is applied to the petitioner in this instant case, being interest is not part of the criminal statute. Further, because Louisiana has a stand your ground law, which gives a person the right to use deadly force if he fears for his life or to stop an intruder. All officers testified at trial, petitioner hadn't broken any laws when they tried to box him in their unmarked car. So at that point,

petitioner feared for his life, and had the right to kill, but instead, he fled the scene, at a high rate of speed being being he was scared, afraid, and out of his mind thinking several white men were out to kill him and kidnap him, especially since none of the policemen had their lights or sirens on when they tried to block him in, when the chase first started. Please see transcript page 385, lines 15-21, which states:

"My practice is being an unmarked, I know people don't really recognize my truck to be a police vehicle. They may not see the light because they are more directed to the front and not the side, so I typically slow or stop, if I have to at every intersection and make sure I don't injure someone or get injured."

Now, the state of Louisiana is trying to hold the petitioner to a higher standard than everyday citizens. If citizens of this state, and St. Tammany Parish can't recognize and determine an unmarked police car with flashing lights and sirens on, what makes the petitioner so different, that he suppose to recognize such ? Petitioner urges this honorable court to find such unconstitutional as it pertains to petitioner's case, under these circumstances being he was out of his mind, afraid being he thought he was about to be killed by these unknown white men.

<div align="center">CLAIM NO. 3<br>THE COURT EXCEEDED ITS JURISDICTION</div>

Petitioner contends that his conviction and sentence regarding the crime of aggravated obstruction of a highway of commerce is illegal and contrary and in conflict with La. Cr.C.P. Art. 872, which states: "A valid sentence must rest upon a valid and sufficient:

(1) Statute;

(2) Indictment; and

(3) Verdict, Judgment, or plea of guilty."

Petitioner represents and shows his conviction and sentence are invalid, and the trial court didn't have jurisdiction to proceed to trial regarding count-1, in this matter. In order for trial and its verdict and judgment to be valid it is essential that the indictment it is based upon be itself valid. The judge therefore had no authority or legal power to sentence petitioner as to count one. There can be no trial, conviction, or punishment for a crime without a formal and sufficient accusation. *State v. Soileau*, 138 So.92 (1931), recognizes the jurisdictional requirements by making a valid and sufficient indictment a prerequisite for a valid sentence.

Although petitioner was charged by a bill of information rather than by indictment, the law is the same as it pertains to both. An indictment must contain every element of the charged offense to pass

<div align="center">11.</div>

constitutional muster. This is because "[t]he Sixth Amendment guarantees every defendant the right to be informed of the governments accusation against him." The district court should have observed that count 1 failed to allege that the state failed to charge the petitioner with a crime in count 1 of the bill of information, Exhibit-E which states:

"Count-1, R.S. Aggravated Obstruction of a Highway, Marlone R. Brumfield, on or about August 26, 2015, by the intentional or criminally neglect placing of anything or performance of any act, on any railway, railroad, navigable waterway, road, way of an airport, wherein it is foreseeable that human life might be endangered."

Please note, "of commerce" is not within the information but is included in the statute of said offense. Such does not charge a crime / offense, the prosecutor merely recited the statute as is written in the criminal code, which is incorrect. Petitioner has enclosed a bill of information which was filed, against him in his previous charges, see Ex- "F" which is the correct way to file a bill of information. The petitioner represents and shows he was prejudiced in preparing a defense in this matter. The statute does not include "interstate" in the wording of said statue. Petitioner represents and shows if he did violate any laws, it would be on the interstate. However, since interstate is not part of the statute itself, petitioner didn't and couldn't violate said statute. Clearly, when the state didn't include in the bill of information what unlawful act petitioner committed.

Now the prosecutor is a very smart and intelligent individual whom went to law school and pass the bar to be a lawyer. Also has filed many bills of information within the 22nd Judicial District Court, therefore this honorable court shouldn't allow the state to use mistake or ignorance of the law, for not filing a proper bill of information. If the defendant cant use mistake or ignorance for a defense for breaking the law, the state shouldn't be allowed to use such when prosecuting the law.

Being Count -1, neither contains every element of the offense charged under R.S. 14:96, nor refers with sufficient specificity to the alleged act committed by petitioner, the bill of information did not allege a cognizable offense and the trial court neither the state had jurisdiction to proceed to trial on said charges, therefore, relief should be granted in its entirety on this claim pursuant to *U.S. v. Cabera-Teran*, 168 F.3d 141 (C.A. 5 Cir. 1999).

## LAW AND ARGUMENT CLAIM NO. 4
## INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Generally, an ineffective assistance of counsel claim must be appropriately addressed through an application for post conviction relief filed in the district court, where a full evidentiary hearing can be conducted, if necessary, rather than by direct appeal. *State v. Jones*, 13-19 (La. App. 5 Cir. 8/27/13),

123 So.3d 758, 765, See *State v. Hartshorn,* 09-47 (La. App. 5 Cir. 11/10/09), 25 So.3d 172, 181., writ denied, 09-2654 (La. 6/4/10), 38 So.3d 298.

Under the Sixth Amendment to the United States Constitution and Article 1 § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. *State v. McDonald,* 04-550 (La. App.5 Cir. 11/16/045), 889 So.2d 1039, 1042, writ denied, 04-3088 (La. 4/1/05), 897 So.2d 599. A claim of ineffective assistance of counsel must satisfy the two pronged test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984); *State v. Dabney,* 05-53 (La. App. 5 Cir. 6/28/05), 908 So.2d 60, 63.

Under the *Strickland v. Washington* test, the defendant must show: 1) that counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under the professional norms; and 2) that the deficient performance prejudiced the defense. *State v. Dabney,* 05-53, 908 So2d at 63(Citing *Strickland,*466 U.S. at 687, 104 S,Ct. At 2064). This requires showing that counsel's errors were so serious as to deprive the defendant of a trial whose result is reliable. Id. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the out come. Id.

A court must indulge a strong presumption that counsel's conduct fails within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Id. There is no precise definition of reasonably effective assistance of counsel, so any inquiry into the effectiveness of counsel must be specific to the facts of the case, and must take into consideration the counsel's perspective at the time. *State v. LeCaze,* 99-0584(La. 1/25/02), 824 So.2d 1063, 1078-79, cert. Denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed. 2d 110 (2002). The Sixth Amendment does not guarantee error-less counsel or counsel judged ineffective by hindsight. Id.

Petitioner represents and shows his counsel was ineffective at trial when he did not move for a mistrial. At trail on transcript page 340 & 341, which states:

BY MR. MACKE

Q.    You may continue.

A.    "Once he sent that text message, we had a good idea that that's who was going to be in the vehicle. And one of the other detectives has dealt with him on numerous other occasions and actually know him personally through previous arrests. And once that detective, saw him he said that's who it is and that's when we knew - -

13.

MR. BARROW

I'm going to object. That's hearsay. Although counsel lodged an objection, he should have requested a mistrial at that moment. Once the bell has rung, you can not take away the sound. La.C.Cr.P. Art. 775 provides that the trial court shall grant a mistrial when prejudicial conduct in or outside of the court room make it impossible for the defendant to obtain a fair trial. Being counsel did not request for a mistrial, the court could not grant a mistrial. However, the judge immediately knew that the Petitioner would be prejudiced and could not receive a fair trial at that point. So what does the judge do? Still on trial page 340, line 15-31, which states:

THE COURT

I'm going to sustain that objection. I'm going to admonish the jury not to consider the last answer at all. Don't consider that at all, okay?

I want to take a short recess. Ladies and gentlemen, if you would just step out, it's not going to be more than two minutes. Okay.    (JURY EXITS)

THE COURT

Be seated, counsel, I'm going to give you an opportunity to speak to your client - - to your witness and advise him that prior arrests are not something that can be gone into, and I need you -- all to make sure that other witness understand that that's totally improper.

Trial Transcript page 341, which provides:

THE COURT

I don't think in this case it was done maliciously, and I have admonished. But I'm going to admonish it now and make sure that it doesn't happen again.

Petitioner represent and shows the court in its decision to admonish knew Petitioner was prejudiced, but since he said: 'I don't think in this case it was done maliciously," he allowed the trial to continue. However, the statute does not require if it was did intentionally or unintentionally or maliciously or not, the statue says if the prejudice conduct make it impossible for the defendant to obtain a fair trial.

Now, defendant wanted to testify and catch the stand at his trial, however, he refused to do so, being other arrest and convictions would come before the jury and they would use such to convict on this instant charges he stood trial for, so other arrest and numerous run-ins with law enforcement prejudiced the petitioner before the jury, and made it appear as if the petitioner was a straight up outlaw and bad person, and the jury would convict on such, without even considering any further evidence or testimony adduced at trial.

14.

Now the State of Louisiana also knew that petitioner was prejudiced too, please continue trial transcripts page 341, lines 7-13, which provides:

MR MACKE

And the judge, the state just wants to put on the record that this individual is not the narcotic agent that does know Mr. Brumfield from the prior arrest, and we did speak with that individual any my apologies to the court for that.

A apology to the court does not cure that defect, only a mistrial would have done so. Now, what is more prejudiced to the petitioner, at no time whatsoever did his lawyer or the state make a request for the judge to even admonish the jury. La. Cr.C.P. Art. 771 which provides in part:

In the following cases, upon the request of the defendant or the state the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument withing the hearing of the jury when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:

(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Art. 770.

In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

In this case, if the trial court himself, went beyond the statute and law to admonish the jury without being asked by either party, the trial court obviously felt like the petitioner was prejudiced. The trial court even felt the need to talk to the witness and admonish the jury twice in this matter. Still on trial transcript page 341, lines 14-30, which provides:

THE COURT

I want you to discuss it with him now, and I'm sure you all don't have any objection to that.

MR. BARROW

No, you honor.

THE COURT

Take about a two minutes. (Recess taken).

THE COURT

Let's return the jury. (JURY ENTERS).

THE COURT

Be seated please. I just want to re-emphasize and admonish again not to consider anything in that prior answer.

15.

By the trial court putting further emphasis on the jury not to consider the prejudicial testimony and evidence of prior arrest and dealing with the petitioner such prejudice the petitioner and counsel was ineffective for not requesting a mistrial.

Next reason why counsel was ineffective during these proceedings because counsel brought race into his trial, and petitioner was on trial with an all white jury, except for one juror whom appeared to be half white. Counsel at trial stated on transcript page 331, that:

"In fact, Mr. Brumfield was getting a hamburger at Wendy's when four, at least four, burley white guys, late at night, in some ragged out cars with lights decide to chase him."

Such was not sound trial strategy, and inflame the jury and prejudice the petitioner in the eyes of the jury. If the jury had considered finding the petitioner not guilty, once petitioner's counsel brought race in the trial, all defendant's chances of being found not guilty vanished. It wasn't no longer about the trial, the evidence, the testimony, it then became a race issue, being counsel had insulted the white jury, by alleging that their race of people jumped out on a black man, such prejudiced the petitioner, and had race not came before the jury as it did, petitioner would have been found not guilty at trial in this matter.

Now the next reason why counsel was ineffective in these proceedings, because at trial, he stated on transcript page 288, lines 12-18, which provides:

"Now, I know a lot of you, and I am too concerned about our budget situation. And I know a lot of you have probably been reading a lot about what—where we can cut, about how Louisiana has the highest incarceration rate per capital in the country.

The above statement prejudiced the petitioner before the jury at trial. First of all, the above mentioned is not related to this case in any way whatsoever. Further, by counsel talking about high incarceration rate in Louisiana, he is basically saying that my client is guilty as charged, no need for a trial in this matter, but don't convict him to make the incarceration rate one more person on the already high rate. Once the jury had heard such, it had already determined petitioner was guilty as charged. No lawyer in his right mind would tell the jury his client is guilty but, this lawyer did such, making him totally ineffective at trial, which resulted in prejudice to petitioner, and led him to being convicted.

Next reason why counsel is ineffective in these proceedings, because trial transcript page 333, lines 15-20, which trial counsel stated:

"And knowledge that he had the cocaine on him is an element of the crime. If you find that he had the cocaine on him and that it was cocaine, then I put it to you, he had no idea it was there.

16.

Said argument is without merit, and it prejudiced the petitioner at trial before the jury. At the trial on the merits several officers got on the stand and testified that he found the cocaine in a cigarette pack, on the petitioner's person. Counsel has committed a fraud upon the court and the jury, which made the jury look at counsel and defendant is a totally different light. The jury concluded if counsel went to the point to lie for defendant, the defendant had to be guilty of both charges being counsel was trying to fool and trick the jury. Had counsel not tried to trick and fool, lie, or commit a fraud upon the jury, he would have been found not guilty at trial.

Next reason why counsel was ineffective during these proceedings for the reasons stated in claims two and three of this application for post conviction relief, and claim 1(b) no competent attorney or no attorney in his right mind would allow his client to go to trial, and the trial court didn't have jurisdiction to proceed on one of the charges, or allow the prosecutor to use perjured testimony and information, or a unconstitutional charge / offense, said actions clearly prejudiced petitioner at trial.

Finally, petitioner represents and shows counsel was ineffective in these proceedings because he filed several different motions in this matter, and not one of said motions or pleadings are a motion to quash, based on the statute being unconstitutional or the bill of information doesn't list the elements of the crime or the elements which constitute a crime within the statute. Said bill of information was defective and such prejudiced petitioner at trial. Had counsel filed a pre-trial motion to quash, the outcome would have been different, therefore, relief should be granted on this claim in it entirety. Accumulatively, all of defense counsel's errors amount to a denial of effective assistance of counsel during pre-trial, and during trial in this matter.

**Witnesses addresses and names who could testify in support of my claims.**

### Claim 1 (A)

Ernest F. Barrow, III 113 E. 23rd Ave., Convington, La. 70433; Frederick H. Kroenke, Jr. 707 Rapides Street, Baton Rouge, La. 70806; Rachel Yezbeck 701 Loyola Ave., Ste. 404, New Orleans, La. 70113; The Three Judge Panel of the Court of Appeals, First Circuit Court of Appeals, whom heard said appeal, Baton Rouge, La.; Marlone Rashen Brumfield, Louisiana State Prison, Angola, La., Court Reporter, Theresa Trapan, Courthouse, Convington, La; and this case, Courthouse, Convington, La. Plus the record transcript of the trial proceedings.

### Claim 1 (B)

Asst. District Attorney, Kilion and Macke, both at Courthouse in Convington, La. Plus the record transcript of the trial proceedings. Marlone R. Brumfield La. State Prison; Attorney Ernest E.

17.

Barrow III, 113 E. 23rd Ave., Convington, La. 70433; and all police officers whom testified at trial, being that I am incarcerated and I don't have their addresses.

## Claim 1 (C)

The Sheriff and district attorney of St. Tammany Parish, Courthouse in Convington, La; Marlone R. Brumfield, Louisiana State Prison, Angola, La; Whatever discovery the state provides to petitioner in this matter, Attorney Ernest E. Barrow, III 113 E. 23rd Ave., Convington, La. 70433.

## Claim No. 2

The Louisiana Legislatures, State Capital, 22nd Floor, Baton Rouge, La. 70809, Marlone R. Brumfield, La. State Prison, Angola, La 70712, and all judges over this case, Courthouse, Convington, La. 70433;

## Claim No. 3

The District Attorney whom prosecuted this case, Courthouse, Convington, La.   Marlone R. Brumfield, La. State Prison, Angola, La 70712; Ernest E. Barrow, III 113 E. 23rd Ave., Convington, La. 70433;

## Claim No. 4

Marlone R. Brumfield, La. State Prison, Angola, La 70712; Ernest E. Barrow, III 113 E. 23rd Ave., Convington, La. 70433; The trial transcripts and appellant record, will best support this claim, plus the court reporter and clerk of court both located at the Courthouse in Convington, La.

## CONCLUSION AND PRAYER

**WHEREFORE,** Petitioner respectfully prays that for these reasons argued:

1.   The State of Louisiana through its district attorney be duly served with a copy of the foregoing Application;

2.   The State of Louisiana be required to answer same or file any procedural objections it might have within 30 days, pursuant to La.C.Cr.P. Art. 927 (A); .

3.   The Court set a date for an evidentiary hearing at which Petitioner may question his attorney(s) regarding the ineffective assistance of counsel claims;

4.   After said evidentiary hearing be held, Petitioner be allowed to supplement his application, so that he may raise any additional claims that be discovered at said hearing;

5.   The Court authorized request for admission of fact and genuineness of documents be propounded on the State of Louisiana pursuant to La. Cr.C.P.Art. 929 (B); also he be allowed to supplement once the State of Louisiana allow him to purchase his District attorney file, See Ex.-G, which state agreed to to provide said cost, but hasn't did so yet.

6.     After taking evidence, the court granted post-conviction relief, setting aside Petitioner's conviction and sentence and order that Petitioner be released immediately; and

7.     Grant such order and further relief as appears reasonable and just to which petitioner may be entitled.

Respectfully Submitted,

Marlone R. Brumfield

Marlone Rashen Brumfield # 496966
CBC, L/R Cell # 8
Louisiana State Prison
Angola, La. 70712

19.

IN THE
FIRST CIRCUIT
COURT OF APPEAL
STATE OF LOUISIANA


STATE OF LOUISIANA

vs.

MARLONE R. BRUMFIELD

---

# SUPERVISORY WRIT OF REVEIW
# APPLICATION FOR POST-CONVICTION RELIEF

---

22nd JDC, St. Tammany case
No.: 567470; Div. "E"


Respectfully submitted this _____ day of _____, 2019.



_____
Marlone R. Brumfield, #496966
Main Prison, CBC  L/R
La. State Penitentiary
Angola, La 70712



# CRIMINAL PROCEEDING



TYPED & FORMATTED BY:
Offender Counsel Substitute
Main Prison Legal Aid Office

# TABLE OF CONTENTS:

MEMORANDUM OF LAW IN SUPPORT ............................................................................1
JURISDICTION AND VENUE ..........................................................................................1
NOTICE OF PRO-SE FILING ...........................................................................................1
STATEMENT OF THE CASE .............................................................................................1
CLAIMS FOR RELIEF .......................................................................................................3
B. WHETHER THE PROSECUTOR KNOWINGLY USED FALSE TESTIMONY / INFORMATION
TO OBTAIN A CONVICTION? ..........................................................................................5
C. Whether law enforcement and the district attorney discriminates against the Black, African-
American Race in St. Tammany Parish? .............................................................................8
THE STATUTE CREATING THE OFFENSE FOR WHICH HE WAS CONVICTED ...................9
THE COURT EXCEEDED ITS JURISDICTION ...................................................................11
INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL ............................................................13
.........................................................................................................................................19
CONCLUSION AND PRAYER ...........................................................................................19
CERTIFICATE OF SERVICE ..............................................................................................20
VERIFICATION ................................................................................................................20

EXHIBITS

i

## TABLE OF AUTHORITIES:

### UNITED STATES CONSTITUTION
5th, 6th and 14th Amendments.................................................................5
Constitution of the United States..............................................................3
Sixth Amendment...........................................................................12pp., 13
United States Constitution, Amendment 14.................................................9

### FEDERAL CASES
Mooney v. Holohan, 294 U.S. 103 (1935)....................................................7
Napue v. Illinoise, 360 U.S. 264 (1954).......................................................7
Pyle v. Kansas, 317 U.S. 213 (1942)...........................................................7
Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984)....................13
U.S. v. Cabera-Teran, 168 F.3d 141 (C.A. 5 Cir. 1999).................................13

### STATE CONSTITUTION
Louisiana Constitution Art. 1 § 13 and 16....................................................5
Article 1 § 13 of the Louisiana Constitution................................................13
Louisiana Constitution of 1974..................................................................3
LSA-Const. Art. 1 § 19 provides.................................................................3

### STATE STATUES
La. Cr.C.P. Art. 17...................................................................................5
La. Cr.C.P. Art. 771................................................................................15
La. Cr.C.P. Art. 843..................................................................................3
La. Cr.C.P. Art. 872................................................................................12
La. R.S. 14:3...........................................................................................9
La C.Cr.P. Art. 770.................................................................................15
La.C.Cr.P. Art. 775.................................................................................14
La.C.Cr.P. Article 62................................................................................9
La.Cr.C.P. Art 920(2)...............................................................................5
La.Cr.C.P. Art. 843..................................................................................5
LSA-R.S. 15:529.1....................................................................................2
R.S. 13: 961 (C).......................................................................................3
R.S. 14:56...............................................................................................2
R.S. 14:96.......................................................................................2, 10p., 13
R.S. 40:966(C)(E)(3).................................................................................2
R.S. 40:967(A)(1)......................................................................................2

### STATE CASES
Muschkat, 706 So.2d @ 432.......................................................................9
State Pinion, 06-2436 (La. 10/26/07), 968 So2d 131, 134-35 (per curiam)........5
State v. Boatner, 03-485 (La. 12/3/03, 861 So.2s 149, 152)............................3
State v. Boatner, 03-485 (La. 12/3/03, 861 So.2s 149, 153.............................4
State v. Brumnfield, 96-2667 (La. 10/28/98), 737 So.2s 660, 669, cert denied, 526 U.S. 1025 (1999)....4
State v. Carr, 761 So.2d 1271....................................................................10
State v. Dabney, 05-53 (La. App. 5 Cir. 6/28/05), 908 So.2d 60, 63................13
State v. Dabney, 05-53, 908 So2d at 63(Citing Strickland,466 U.S. at 687, 104 S.Ct. At 2064)........13
State v. Griffin, 495 So.2d 1306, 1308 (La. 1986)..........................................9
State v. Hartshorn, 09-47 (La. App. 5 Cir. 11/10/09), 25 So.3d 172, 181., writ denied, 09-2654 (La. 6/4/10), 38 So.3d 298...........................................13
State v. Jones, 13-19 (La. App. 5 Cir. 8/27/13), 123 So.3d 758, 765................13
State v. Landry, 97-499 (La. 6/29/990, 751 So.2d 734, 736............................5
State v. LeCaze, 99-0584(La. 1/25/02), 824 So.2d 1063, 1078-79, cert. Denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed. 2d 110 (2002)....................................14
State v. Lecompte, 406 So.2d 1300, 1311 (La. 1981).....................................10
State v. McDonald, 04-550 (La. App.5 Cir. 11/16/045), 889 So.2d 1039, 1042, writ denied, 04-3088 (La. 4/1/05), 897 So.2d 599.................................................13
State v. Muschkat, 706 So.2d 429.................................................................9
State v. Parker, 361 So.2d 226, 227 (La. 1978)..............................................4
State v. Soileau, 138 So.92 (1931)..............................................................12
State v. Williams, 800 So.2d 790................................................................10

STATE OF LOUISIANA

Vs.

MARLONE R. BRUMFIELD

COURT OF APPEAL

FIRST CIRCUIT, CASE NO.: _____

STATE OF LOUISIANA

_____
Date Filed By Clerk of Court

_____
Dpcy, Clerk of Court.

## MEMORANDUM OF LAW IN SUPPORT

MAY IT PLEASE THE COURT:

NOW INTO COURT COMES, Marlone R. Brumfield, *Pro Se* Petitioner, who respectfully presents this Supervisory Writ of Review on his Post-Conviction Application and "Memorandum of Law in Support," of which he respectfully incorporates into and makes a part of his Uniform Application for Post-Conviction Relief. Furthermore, after due and proper consideration of the merits herein and the argument presented, Petitioner respectfully moves this Honorable Court to either remand this case back to the trial court for a hearing and further development of the trial court record before embarking upon Supervisory review of the Claims present, or should this Honorable Court deem petitioner to have made a sufficient showing of entitlement to relief, grant him post-conviction relief, and set aside his current conviction and sentence for the reasons established herein.

### JURISDICTION AND VENUE

Jurisdiction and venue are proper before this Honorable Court pursuant to *La. Const. 1974, Art. V, § 16, La. C.Cr.P. art. 924, et seq.* and *La.C.Cr.P. Art. 912.1(C)(1).*

### NOTICE OF PRO SE FILING

Mr. Brumfield requests that this Honorable Court view these Claims in accordance with the rulings of *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *State v. Meak*, 387 So.2d 1108 (La. 1980)(Pro-se petitioner not held to same stringent standards as a trained lawyer); *State v. Egana*, 771 So.2d 638 (La. 2000)(less stringent standards than formal pleadings filed by lawyers). Mr. Brumfield is a layman of the law and untrained in the ways of filings and proceedings of formal pleadings in this Court.

### STATEMENT OF THE CASE

Petitioner, Marlone Rashen Brumfield was convicted of Aggravated Obstruction of a Highway of Commerce, and possession of cocaine on February 18, 2017, after a jury trial in the 22nd Judicial

1.

District Court in for the Parish of St. Tammany, State of Louisiana in Case No. 567470, Div."E," the Honorable William J. Burris, Judge Presiding.

On November 15, 2016, a habitual offender hearing was held, in which petitioner was found to be a fourth-time felony offender, Judge Burris then sentenced petitioner in accordance with *L.S.A.-R.S. 15:529.1* to a mandatory life sentence as to count one and twenty years at hard labor as to count two, to run concurrently with each other. A copy of the minutes showing the conviction, and the sentence are attached.

Petitioner's conviction and sentence were based on a four count bill of information charging aggravated obstruction of a highway, simple criminal damage to property, and possession with the intent to distribute Schedule II Controlled dangerous substance and possession of marijuana (3 rd offense, all in violation of *R.S. 14:96, R.S. 14:56, R.S. 40:967(A)(1), R.S. 40:966(C)(E)(3)*. The bill of information was amended later by the state, count 2 to read possession of schedule II to wit: Cocaine, dismissing the simple criminal damage to property and the possession of marijuana third offense on August 22, 2016. Petitioner entered a not guilty plea said charges in the amended bill of information. On the date of the scheduled trial, petitioner's motion to suppress statements and evidence was heard along with the preliminary examination, in which both were denied. Trial began February 16, 2016, Petitioner was convicted as charged on the obstruction of a highway of commerce and possession of cocaine.

Attorney Ernest E. Barrow III 113 E. 23rd Ave., Convington, La. 70433, represented Petitioner at trial and during the motion to suppress and preliminary hearing, said attorney was a conflict attorney appointed by the trial court.

The court of appeals First Circuit No. 2017-KA-0080, denied petitioner direct appeal on September 21, 2017. The case is reported as unpublished. The Supreme Court denied writs on June 15, 2018, No. 2017-KO-1790.

Petitioner argued three claims for relief on appeal. Arguing that: 1) the district court erred when it denied defendant's motion to suppress evidence and statements because it was acquired via illegal search and seizure; 2) The states failed to prove sufficient evidence to convict Bramfield of possession of cocaine, and 3) The habitual offender law is excessive and cruel and unusual punishment. The Louisiana Appellate Project was appointed to represent Petitioner on appeal. However, Petitioner hired attorney Rachel Yazbeck to do his appeal in this matter (701 Loyola Ave. Suite 404, New Orleans, La. 70113).

2.

Petitioner represents and shows said application for post-conviction relief it timely, being that Supreme Court of Louisiana denied his direct appeal on June 15, 2017. Petitioner had 90 day in which to seek writs in the United States Supreme Court. However, his conviction became final once the time period for him to seek writs expired, or on September 15, 2018. Petitioner has two (2) year to seek post conviction relief in the district court. Therefore, this application is timely filed.

## CLAIMS FOR RELIEF

The trial court made a determination which was contrary to and/or involved an unreasonable application of cleary established federal law as determined by the Supreme Court of the United States.

The instant conviction was obtained in violation of the *Constitution of the United States* and *Louisiana Constitution of 1974*. As to the controlling law on the issue, petitioner hereby presents the following.

**A. Denied a right to judicial review on direct appeal.**

LSA-Const. Art. 1 § 19 provides:

> No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. This right may be intelligently waived....

La. Cr.C.P. Art. 843 pertinently states:

> In felony cases . . .the clerk of court stenographer shall record all of the proceedings, including the examination of witnesses, statements, rulings, orders and charges by the court and objections, questioning, statements and arguments of counsel.

Moreover, in criminal proceedings the court reporter shall record all portions of the proceedings required by law and shall transcribe those portions of the trial proceedings required by *R.S. 13: 961 (C)*.

Both the Louisiana Supreme Court and the Untied States Supreme Court have made it clear that a criminal defendant has a right to a complete transcript of the trial proceedings particular where, as in this case appellant counsel was not counsel at trial. *State v. Boatner*, 03-485 (La. 12/3/03, 861 So.2s 149, 152). These rulings were handed down long before today, and have been in effect for the trial court to be aware of their existence at the time it rendered its September 17, 2019, judgment denying petitioner relief based upon such Supreme Court decisisons.

The current state of the law provides that: material omissions from trial court proceedings

3.

bearing on the merits on an appeal require reversal. *State v. Boatner*, 03-485 (La. 12/3/03, 861 So.2s 149, 153. However, "slight inaccuracy in a record or an inconsequential omission from it which is immaterial to the proper determination of the appeals" does not require reversal of a conviction. Id., quoting *State v. Brumfield*, 96-2667 (La. 10/28/98), 737 So.2s 660, 669, cert denied, 526 U.S. 1025 (1999); *State v. Parker*, 361 So.2d 226, 227 (La. 1978). A defendant is not entitled to relief of an incomplete record absent a showing of prejudice based on the missing portions of the transcripts. Id.

In this case, there are portions of the transcripts that weren't transcribed because it was an off the record bench discussion, see Exhibit-"A", pages 135,137,143, 157,159, 166,168,267,457,& 485-89. On pages 172,m 73,273, 290, off the record discussion were held but such was transcribed and did correctly and accordingly to the law and statute. Petitioner would like to point out on page 485, the court stated:

THE COURT

Yes, Lets do the charge conference (court adjourned).

Petitioner represents and shows he wasn't present during said proceedings and such wasn't transcribed and made part of the appellant record. On the following day of trial (page 489 attached under Ex.- A) which states:

THE COURT

Counsel, we went over instructions yesterday after court and made a few changes.

MR. MACKE

No objection from the state, pursuant to the changes that were made at that pretrial conference or the charge conference.

MR. BARROW

The only objection I had your honor is, and I asked for it was the off the record in chambers asked for a responsive to the Agg. Obstruction of a highway to be reckless operation. I believe it contains some of the lesser included facts, and I believe it would be appropriate to include it as a responsive verdict to Agg. Obstruction. I know your Honor is not inclined to do that, but just note my objection.

Petitioner wasn't present, whatever went on during the charge conference should have been transcribed and made part of the appellate record, being such was did off the record in chambers. Petitioner can't challenge on appeal or post-conviction proceedings if his lawyer was ineffective at such conference or if any of his other constitutional rights were violated.

4.

*La.Cr.C.P. Art. 843* requires either the clerk of the court reporter to record all proceedings, including the examination of prospective jurors, rulings, objections, and arguments of counsel. In *State Pinion*, 06-2436 (La. 10/26/07), 968 So.2d 131, 134-35 (per curiam)(citations omitted), the Louisiana Supreme Court explained that "the failure to record bench conferences will ordinarily not affect the direct review process when the record suggest that the unrecorded had no discernible impact on the proceedings and did not result in any specific prejudice to the defendant.

As in *State v. Landry*, 97-499 (La. 6/29/990, 751 So.2d 214, 216, the record is grossly incomplete in several respects and the deficient record deprived the defendant of his constitutional rights of appeal and judicial review, Landry reaffirmed that "it is not the defendants obligation to ensure an adequate record....it is the duty of the court...to see that the court reporter makes a true, complete, and accurate record of the trial." 751 So.2d @ 216, citing in part *La. Cr.C.P. Art. 17.*

Petitioner represents and shows at one point the District Attorney had a discussion with one of the arresting narcotic agents, and such wasn't made part of the record. See Exhibit -A, last page which is transcript page 341, line 14-17, which provides:

THE COURT

I want you to discuss it with him now, and I'm sure you-all don't have any objection to that.

The trial was recessed, and I assumed at that time, the DA went discuss such with the officer. However, Petitioner, his lawyer, or the judge wasn't part of said discussion, and being such wasn't transcribed and made part of the record, petitioner can't raise no claim or issue regarding such discussion. Such should have been made part of the appellate record. Whatever was discussed, counsel for petitioner had a right to be present.

Further, Petitioner represents and shows the appellate record didn't consist of any of the police reports regarding this matter or the affidavit of probable cause (See Ex. B"), neither did said record contain any of petitioners Boykin transcripts regarding prior charges used to enhance his sentences. (see Ex.- "C"). Petitioner represents he was prejudiced by such not being made part of the record, because he was denied error patent review, pursuant to *La.Cr.C.P. Art 920(2)*, therefore, relief should be granted on this claim in its entirety.

B.  WHETHER THE PROSECUTOR KNOWINGLY USED FALSE TESTIMONY / INFORMATION TO OBTAIN A CONVICTION?

Petitioner avers that his constitutional rights by the *United States Constitution 5th, 6th and 14th Amendments* as well as the *Louisiana Constitution Art. 1 § 13 and 16* were violated when the prosecution knowingly used false testimony or information to secure a conviction for the Aggravated

5.

Obstruction of a Highway of Commerce and Possession of Cocaine.

Petitioner avers that on June 10, 2019, he received a copy of his criminal file from his trial lawyer, Mr. Ernest E. Barrow, pertaining to his arrest, prosecution and conviction in this matters. (See Ex. "D").

Petitioner contends that upon reviewing the documents in said file, he discovered a copy of his affidavit of probable cause, and several police reports, In the affidavit of probable cause, it clearly states:

> "On Wednesday August 26, 2015, pursuant to a narcotics investigation it was learned Marlin Brumfield would be driving a white four door Nissan Titan and delivering promethazin with Codine (Schedule II) to an individual in the Wendy's parking lot located at 69340 Highway 21, Convington, La."

Now at the Criminal trial in this matter Detective Scott Thomas testified at trial, that:

> "Once he saw the vehicle description that we gave him that we were going to be in, he actually sent a text message to the cooperating individual asking who the white guy was with him."
> Tr.p. 412.

So with that being testified to, under oath at trial, and in the affidavit of probable cause means the cooperating individual was in the parking lot. So, when detective Bart Ownby (T.p. 412), that the person was at the Sheriff's Complex such was a lie at trial, and perjured testimony at trial, and the prosecutor stayed mum and silent.

Further, detective Bart Ownby testified on trial p. 412 that:

> "Detective, did the text message that you previously testified to in which the defendant said who is that white boy, is that what that text message said ? Yes."

The only was that Det. Ownby and other detectives can say what the text message said, they either had to see said text, the only way that could have happened, if the cooperating individual was in the car with the detectives at the Wendy's parking lot, which shows and proves all detectives that testified to such at trial, lied under oath and perjured themselves. Petitioner never text-ed anyone he called the guy on his cell phone so that is why they could not retrieve any text off petitioner's phone or the so called cooperating individual phone.

Next perjury issue deals with the state allowing the detectives at trial calling the C.I. Cooperating individual a confidential informant. Although both words starts with a C/I, both words

ment the same, and doesn't have the same meaning. Please see Tr.p. 335, which states:

> A.  "We were working with the individual from a separate incident who determined he was going to cooperate with us and he subsequently led us to Mr. Brumfield.
>
> Q.  Is there a certain terminology for that individual ?
>
> A.  That's going to be a "cooperating individual."

A confidential informant is an unknown person who informs against another or a person who makes a practice esp. for money or informs police of others criminal activity and has been reliable in the past. At the trial of this matter, confidential informant was stated several times, see Tr.p. 322, 414, 417, 502, & 511. The prosecutor even referred to this guy as a confidential informant in his opening arguments (Tr.p. 322). Clearly, this guy should not have been called a confidential informant, when he wasn't one. Please see trans. p. 156, which states:

> "Well, we was attempting to make a traffic stop to determine, to investigate further if we were wasting time or we were actually –if this guy was giving us good information."

The police themselves knew this guy wasn't reliable. Obviously he wasn't a confidential informant, because they wouldn't have referred to him as being a cooperating individual, they would have known he was reliable and credible. Again, the prosecutor never said one word, when such was stated at trial.

Next issue the petitioner would like to point out, several detectives testified at trial, when the petitioner was apprehended he immediately stated: "I will give you anybody you want." (Tr.P. 354)

Said statement is not true and perjured testimony. If said statement was true, why didn't the officers allow petitioner to do the very same as the cooperating individual was doing to the petitioner? The officers clearly stated that they were investigating Narcotics in St. Tammany Parish. So if they use a small fish to catch a medium fish, why not use a mid-level dealer to catch a King Pen? Such was never the intentions of said officers. The intentions of the officers was to arrest the petitioner and send him to prison for life, being the officers were upset, that petitioner was a black man, dating a white female.

The state cannot contend these officers did not testify falsely in this case, because the record shows otherwise, and the use of perjured testimony violated clearly established law in accordance with such cases as: *Napue v. Illinois*, 360 U.S. 264 (1954); *Pyler v. Kansas*, 317 U.S. 213 (1942); *Mooney v. Holohan*, 294 U.S. 103 (1935). In *Napue*, the Supreme Court held.

> "Convictions obtained through the use of false testimony
> known to be such by representatives of the state is a denial
> of due process, and there is also a denial of due process
> when the state though not soliciting false evidence allows it
> to go uncorrected when it appears."

The material fact in this knowing use of perjury is evident. Petitioner's allegations are apparently true, as can bee seen from the exhibits and the trial testimony. Any reasonable court official should have known to allow these witnesses to testify falsely is shameful and violates Petitioner's constitutional rights. This court can find that the genuine issues of fact exist, that those particular state witnesses testified falsely, and the attached documents and trial records clearly established these reports were used to bring charges against petitioner. It would prove that the officers have filed false reports and false information to have charges brought against petitioner.

Petitioner further contends that he suffered prejudice due to these police witnesses committing perjury and testifying falsely. Had the witnesses not committed perjury or testified falsely, petitioner would not have been convicted. The testimony of these witnesses were the only testimony (evidence) that was vital to the petitioners case. The jury relied upon their testimony in reaching a verdict. Had the jury been made known of these witnesses perjury (untruthfulness) there would have been a different outcome. Petitioner submit that his conviction and sentence be reversed on the prosecution knowing use of false or perjured testimony. Being that the prosecutor made the jury aware of the fact no nuns were in that van. Please be advised that is the sole and only time the state pointed out a lie to the jury. See Tran.p. 494 which states:

> "And I know some of you have probably heard one of the
> officers testimony that were nuns and then the deacon came
> and said, oh, it was me and my wife."

The above is what is required by law, and should have been did each time when such occurred at this trial, but wasn't therefore, relief should be granted in its entirety.

C.   Whether law enforcement and the district attorney discriminates against the Black, African-American Race in St. Tammany Parish?

Petitioner represents and shows race plays a major factor in St. Tammany Parish when a person is arrested and prosecuted. African-American (black), males are discriminated when arrested. A black male more then likely will be over-charged for violating the laws in said parish. However, a white male with the same record more likely won't be arrested, and he has violated too. If he is arrested, he would be arrested for a lesser crime than the black male, which is unconstitutional.

Petitioner further represents and shows its unfair and offensive and discriminatory practices for

8.

a black defendant charged with a crime, be charged as a habitual offender when they exercise constitutional rights to a trial and get convicted. However, when a white male or white person exercises their rights to trial in St. Tammany Parish, and get convicted they don't get prosecuted as a habitual offender, and their record is 10 times worse than a black defendants record. Such has been the practice in St. Tammany parish for several years. Article 61 states:

"Subject to the supervision of the attorney general, as provided in *La.C.Cr.P. Article 62*, the district attorney has entire charge and control of every prosecution instituted or pending in his district, and determines whom, when and how he shall prosecute."

Petitioner represents and shows he would like to propound discovery on the district attorney for the parish of St. Tammany Parish for the last 10 years for further support his claim. Said discovery will clearly show blacks are discriminated against and receive harsher sentences that white offenders. Therefore, once discovery is completed, petitioner would like to supplement this claim, and other claims. To deny petitioner to propound discovery would be stopping petitioner from proving his claim. Also, such would be denying him due process and equal protection of the laws which is forbidden by the *United States Constitution, Amendment 14*. Petitioner further represents and shows this honorable court and other judges within St. Tammany Parish may be called to court to testify regarding this claim, which may cause for all judges within the 22nd Judicial District Court to recuse themselves from this case, and have the Louisiana Supreme Court, to appoint a retired judge to handle all future proceedings in this matter, as it pertains to this instant application for post-conviction relief, as it pertains to petitioner.

<center>LAW AND ARGUMENT OF CLAIM 2</center>

<center>THE STATUTE CREATING THE OFFENSE FOR WHICH HE WAS CONVICTED<br>AND SENTENCED IS UNCONSTITUTIONAL</center>

The trial court rendered a decision which was contrary to and/or involved and unreasonable application of clearly established law and determined by the United States Supreme Court. Petitioner urges that the Louisiana Criminal Definition for Aggravated Obstruction of a Highway of Commerce is Unconstitutional being it is vague, overboard, ambiguous, and doesn't include interstate in the statute.

As a general matter, a statute is presumed to be constitutional, and the burden of showing otherwise falls to the challenger. *State v. Muschkat*, 706 So.2d 429. Further, criminal statutes are given a genuine construction according to the fair import of their words, taken in their usual sense, in context, and with reference to the purpose for the provision La. R.S. 14:3; *Muschkat*, 706 So.2d @ 432; *State v. Griffin*, 495 So.2d 1306, 1308 (La. 1986). Additionally, when the constitutionality of a statute is at

<center>9.</center>

issue, and under one construction it can be upheld, while under the other it cannot, a court must adopt the constitutional construction. *State v. Lecompte*, 406 So.2d 1300, 1311 (La. 1981). Therefore, a court may avoid constitutional problems by adopting a narrowing construction of the statute as long as that interpretation remains consistent with the overall purpose behind the legislation. *Muschkat, Supra.*, (stating "[W]hile we recognize our duty to interpret statutes in a manner consistent with the state and federal constitutions, we may only preserve a statue by a constitutional construction provided that the saving construction is a plausible one.") (Citation omitted). In addition to criminal statutes being strictly and narrowly construed, any ambiguity must be resolved in favor of the accused. *State v. Williams*, 800 So.2d 790; *State v. Carr*, 761 So.2d 1271.

Petitioner represents and shows within the current statutory criminal law and procedure it states each and every offense except for *R.S. 14:96*. Whereas, the alleged conduct is not allowed by statute is clearly spelled out. However, *R.S. 14: 96* is unconstitutional because it does not spell out what conduct is a violation of the statute. A citizen can not be arrested for violating state laws when the law is as vague as *R.S. 14:96*, because a citizen cannot reasonably understand the conduct, citizens cant be punished or arrested, unless they have been given advance "fair notice" of the action they charged with is prohibited. The prohibited description must be clear and not vague. Citizens should not be made to abide by laws that they have not been informed of. The criminal statute defines *R.S. 14:96*, as follows:

> "Simple Obstruction of a highway of commerce is the intentional or criminally neglect placing of anything or performance of any act on any railway, railroad, navigable waterway, roadway of an air port, wherein it is foreseeable that human life might be endangered."

Being that performance of "any act" is too broad, uncertain, vague, and ambiguous. The citizens do not know what conduct they are being arrested for. This allows law enforcement to make rules as they go or as incidents arise. Legislature can not make a rule or law, that conflicts with state and federal law or the Louisiana and United States Constitution. If a citizen as myself, was aware that the act or actions were a crime or a violation of the law, there is a very strong probability they would have not done the violation. By having such a vague law when law enforcement can not charge a citizen with a certain violation they use the statute *R.S. 14:96*, which is a catch-all, and is illegal, unlawful, and unconstitutional. Especially, in the petitioner's case. He should have been charged with speeding, hit a run, flight from an officer, running a red light or two, which all are misdemeanor offenses which carries no more than 6 months (non-felony).

According to the statue as it is currently written, anybody who is speeding, driving reckless,

10.

runs a red light or stop sign, throws trash out of the window while driving, a person who crosses the road or highway walking really slow and a car must swerve or leave the highway from hitting that person, all could be charged under this unconstitutionally broad statute (*R.S. 14:96*). Even a mother or parent whom allows their young child to walk across the roads or highways, and a car almost hit the child, and must leave the highway to keep from hitting said child. Petitioner can go on and on but will stop here, the law is vague and nobody shouldn't have to guess or wonder if or if not their actions constitute a crime.

Now if, and I say only if this Honorable Court does not find *R.S. 14:96*, to be unconstitutional, such is unconstitutional as it is applied to the petitioner in this instant case, being intent is not part of the criminal statute. Further, because Louisiana has a stand your ground law, which gives a person the right to use deadly force if he fears for his life or to stop an intruder. All officers testified at trial, petitioner hadn't broken any laws when they tried to box him in their unmarked car. So at that point, petitioner feared for his life, and had the right to kill, but instead, he fled the scene, at a high rate of speed being being he was scared, afraid, and out of his mind thinking several white men were out to kill him and kidnap him, especially since none of the policemen had their lights or sirens on when they tried to block him in, when the chase first started. Please see transcript page 385, lines 15-21, which states:

> "My practice is being an unmarked, I know people don't really recognize my truck to be a police vehicle. They may not see the light because they are more directed to the front and not the side, so I typically slow or stop, if I have to at every intersection and make sure I don't injure someone or get injured."

Now, the state of Louisiana is trying to hold the petitioner to a higher standard than everyday citizens. If citizens of this state, and St. Tammany Parish can't recognize and determine an unmarked police car with flashing lights and sirens on, what makes the petitioner so different, that he suppose to recognize such? Petitioner urges this honorable court to find such unconstitutional as it pertains to petitioner's case, under these circumstances being he was out of his mind, afraid being he thought he was about to be killed by these unknown white men.

## CLAIM NO. 3
### THE COURT EXCEEDED ITS JURISDICTION

Petitioner contends that the trial court grossly failed to properly consider this claim under the provisions of both the Federal and State Constitutions. Petitioner maintains that his conviction and sentence regarding the crime of aggravated obstruction of a highway of commerce is illegal and

11.

contrary and in conflict with *La. Cr.C.P. Art. 872*, which states: "A valid sentence must rest upon a valid and sufficient:

(1) Statute;

(2) Indictment; and

(3) Verdict, Judgment, or plea of guilty."

Petitioner represents and shows his conviction and sentence are invalid, and the trial court didn't have jurisdiction to proceed to trial regarding count-1, in this matter. In order for trial and its verdict and judgment to be valid it is essential that the indictment it is based upon be itself valid. The judge therefore had no authority or legal power to sentence petitioner as to count one. There can be no trial, conviction, or punishment for a crime without a formal and sufficient accusation. *State v. Soileau*, 138 So.92 (1931), recognizes the jurisdictional requirements by making a valid and sufficient indictment a prerequisite for a valid sentence.

Although petitioner was charged by a bill of information rather than by indictment, the law is the same as it pertains to both. An indictment must contain every element of the charged offense to pass constitutional muster. This is because "[t]he Sixth Amendment guarantees every defendant the right to be informed of the governments accusation against him." The district court should have observed that count 1 failed to allege that the state failed to charge the petitioner with a crime in count 1 of the bill of information, Exhibit-E which states:

> "Count-1, R.S. Aggravated Obstruction of a Highway, Marlone R. Brumfield, on or about August 26, 2015, by the intentional or criminally neglect placing of anything or performance of any act, on any railway, railroad, navigable waterway, road, way of an airport, wherein it is foreseeable that human life might be endangered."

Please note, "of commerce" is not within the information but is included in the statute of said offense. Such does not charge a crime / offense, the prosecutor merely recited the statute as is written in the criminal code, which is incorrect. Petitioner has enclosed a bill of information which was filed, against him in his previous charges, see Ex- "F" which is the correct way to file a bill of information. The petitioner represents and shows he was prejudiced in preparing a defense in this matter. The statute does not include "interstate" in the wording of said statue. Petitioner represents and shows if he did violate any laws, it would be on the interstate. However, since interstate is not part of the statute itself, petitioner didn't and couldn't violate said statute. Clearly, when the state didn't include in the bill of information what unlawful act petitioner committed.

12.

Now, the prosecutor is a very smart and intelligent individual whom went to law school and pass the bar to be a lawyer. Also has filed many bills of information within the 22nd Judicial District Court, therefore this honorable court shouldn't allow the state to use mistake or ignorance of the law, for not filing a proper bill of information. If the defendant cant use mistake or ignorance for a defense for breaking the law, the state shouldn't be allowed to use such when prosecuting the law.

Being Count -1, neither contains every element of the offense charged under *R.S. 14:96*, nor refers with sufficient specificity to the alleged act committed by petitioner, the bill of information did not allege a cognizable offense and the trial court neither the state had jurisdiction to proceed to trial on said charges, therefore, relief should be granted in its entirety on this claim pursuant to *U.S. v. Cabera-Teran*, 168 F.3d 141 (C.A. 5 Cir. 1999).

## LAW AND ARGUMENT CLAIM NO. 4
### INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Generally, an ineffective assistance of counsel claim must be appropriately addressed through an application for post conviction relief filed in the district court, where a full evidentiary hearing can be conducted, if necessary, rather than by direct appeal. *State v. Jones*, 13-19 (La. App. 5 Cir. 8/27/13), 123 So.3d 758, 765, See *State v. Hartshorn*, 09-47 (La. App. 5 Cir. 11/10/09), 25 So.3d 172, 181., writ denied, 09-2654 (La. 6/4/10), 38 So.3d 298.

Under the *Sixth Amendment to the United States Constitution* and *Article 1 § 13 of the Louisiana Constitution*, a defendant is entitled to effective assistance of counsel. *State v. McDonald*, 04-550 (La. App.5 Cir. 11/16/045), 889 So.2d 1039, 1042, writ denied, 04-3088 (La. 4/1/05), 897 So.2d 599. A claim of ineffective assistance of counsel must satisfy the two pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984); *State v. Dabney*, 05-53 (La. App. 5 Cir. 6/28/05), 908 So.2d 60, 63.

Under the *Strickland v. Washington* test, the defendant must show: 1) that counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under the professional norms; and 2) that the deficient performance prejudiced the defense. *State v. Dabney*, 05-53, 908 So2d at 63(Citing *Strickland,466* U.S. at 687, 104 S.Ct. At 2064). This requires showing that counsel's errors were so serious as to deprive the defendant of a trial whose result is reliable. Id. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the out come. Id.

A court must indulge a strong presumption that counsel's conduct falls within the wide range of

13.

reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Id. There is no precise definition of reasonably effective assistance of counsel, so any inquiry into the effectiveness of counsel must be specific to the facts of the case, and must take into consideration the counsel's perspective at the time. *State v. LeCaze*, 99-0584(La. 1/25/02), 824 So.2d 1063, 1078-79, cert. Denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed. 2d 110 (2002). The *Sixth Amendment* does not guarantee error-less counsel or counsel judged ineffective by hindsight. Id.

Petitioner represents and shows his counsel was ineffective at trial when he did not move for a mistrial. At trail on transcript page 340 & 341, which states:

BY MR. MACKE

Q.    You may continue.

A.    "Once he sent that text message, we had a good idea that that's who was going to be in the vehicle. And one of the other detectives has dealt with him on numerous other occasions and actually know him personally through previous arrests. And once that detective, saw him he said that's who it is and that's when we knew – –

MR. BARROW

I'm going to object. That's hearsay. Although counsel lodged an objection, he should have requested a mistrial at that moment. Once the bell has rung, you can not take away the sound. *La.C.Cr.P. Art. 775* provides that the trial court shall grant a mistrial when prejudicial conduct in or outside of the court room make it impossible for the defendant to obtain a fair trial. Being counsel did not request for a mistrial, the court could not grant a mistrial. However, the judge immediately knew that the Petitioner would be prejudiced and could not receive a fair trial at that point. So what does the judge do? Still on trial page 340, line 15-31, which states:

THE COURT

I'm going to sustain that objection. I'm going to admonish the jury not to consider the last answer at all. Don't consider that at all, okay?

I want to take a short recess. Ladies and gentlemen, if you would just step out, it's not going to be more than two minutes. Okay.   (JURY EXITS)

THE COURT

Be seated, counsel, I'm going to give you an opportunity to speak to your client – – to your witness and advise him that prior arrests are not something that can be gone into, and I need you – all to make sure that other witness understand that that's totally improper.

Trial Transcript page 341, which provides:

14.

THE COURT

    I don't think in this case it was done maliciously, and I have admonished. But I'm going to admonish it now and make sure that it doesn't happen again.

Petitioner represent and shows the court in its decision to admonish knew Petitioner was prejudiced, but since he said: "I don't think in this case it was done maliciously," he allowed the trial to continue. However, the statute does not require if it was did intentionally or unintentionally or maliciously or not, the statue says if the prejudice conduct make it impossible for the defendant to obtain a fair trial.

Now, defendant wanted to testify and catch the stand at his trial, however, he refused to do so, being other arrest and convictions would come before the jury and they would use such to convict on this instant charges he stood trial for, so other arrest and numerous run-ins with law enforcement prejudiced the petitioner before the jury, and made it appear as if the petitioner was a straight up out-law and bad person, and the jury would convict on such, without even considering any further evidence or testimony adduced at trial.

Now the State of Louisiana also knew that petitioner was prejudiced too, please continue trial transcripts page 341, lines 7-13, which provides:

MR MACKE:

    And the judge, the state just wants to put on the record that this individual is not the narcotic agent that does know Mr. Brumfield from the prior arrest, and we did speak with that individual any my apologies to the court for that.

A apology to the court does not cure that defect, only a mistrial would have done so. Now, what is more prejudiced to the petitioner, at no time whatsoever did his lawyer or the state make a request for the judge to even admonish the jury. *La. Cr.C.P.Art. 771* which provides in part:

In the following cases, upon the request of the defendant or the state the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument withing the hearing of the jury when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:

(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of *La.C.Cr.P. Art. 770.*

In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

In this case, if the trial court himself, went beyond the statute and law to admonish the jury

15.

without being asked by either party, the trial court obviously felt like the petitioner was prejudiced. The trial court even felt the need to talk to the witness and admonish the jury twice in this matter. Still on trial transcript page 341, lines 14-30, which provides:

THE COURT

        I want you to discuss it with him now, and I'm sure you all don't have any objection to that.

MR. BARROW

        No, you honor.

THE COURT

        Take about a two minutes. (Recess taken).

THE COURT

        Let's return the jury. (JURY ENTERS).

THE COURT

        Be seated please. I just want to re-emphasize and admonish again not to consider anything in that prior answer.

By the trial court putting further emphasis on the jury not to consider the prejudicial testimony and evidence of prior arrest and dealing with the petitioner such prejudice the petitioner and counsel was ineffective for not requesting a mistrial.

Next reason why counsel was ineffective during these proceedings because counsel brought race into his trial, and petitioner was on trial with an all white jury, except for one juror whom appeared to be half white. Counsel at trial stated on transcript page 331, that:

"In fact, Mr. Brumfield was getting a hamburger at Wendy's when four, at least four, burley white guys, late at night, in some ragged out cars with lights decide to chase him."

Such was not sound trial strategy, and inflame the jury and prejudice the petitioner in the eyes of the jury. If the jury had considered finding the petitioner not guilty, once petitioner's counsel brought race in the trial, all defendant's chances of being found not guilty vanished. It wasn't no longer about the trial, the evidence, the testimony, it then became a race issue, being counsel had insulted the white jury, by alleging that their race of people jumped out on a black man, such prejudiced the petitioner, and had race not came before the jury as it did, petitioner would have been found not guilty at trial in this matter.

Now the next reason why counsel was ineffective in these proceedings, because at trial, he stated on transcript page 288, lines 12-18, which provides:

16.

"Now, I know a lot of you, and I am too concerned about our budget situation. And I know a lot of you have probably been reading a lot about what—where we can cut, about how Louisiana has the highest incarceration rate per capital in the country.

The above statement prejudiced the petitioner before the jury at trial. First of all, the above mentioned is not related to this case in any way whatsoever. Further, by counsel talking about high incarceration rate in Louisiana, he is basically saying that my client is guilty as charged, no need for a trial in this matter, but don't convict him to make the incarceration rate one more person on the already high rate. Once the jury had heard such, it had already determined petitioner was guilty as charged. No lawyer in his right mind would tell the jury his client is guilty but, this lawyer did such, making him totally ineffective at trial, which resulted in prejudice to petitioner, and led him to being convicted.

Next reason why counsel is ineffective in these proceedings, because trial transcript page 333, lines 15-20, which trial counsel stated:

"And knowledge that he had the cocaine on him is an element of the crime. If you find that he had the cocaine on him and that it was cocaine, then I put it to you, he had no idea it was there.

Said argument is without merit, and it prejudiced the petitioner at trial before the jury. At the trial on the merits several officers got on the stand and testified that he found the cocaine in a cigarette pack, on the petitioner's person. Counsel has committed a fraud upon the court and the jury, which made the jury look at counsel and defendant is a totally different light. The jury concluded if counsel went to the point to lie for defendant, the defendant had to be guilty of both charges being counsel was trying to fool and trick the jury. Had counsel not tried to trick and fool, lie, or commit a fraud upon the jury, he would have been found not guilty at trial.

Next reason why counsel was ineffective during these proceedings for the reasons stated in claims two and three of this application for post conviction relief, and claim 1(b) no competent attorney or no attorney in his right mind would allow his client to go to trial, and the trial court didn't have jurisdiction to proceed on one of the charges, or allow the prosecutor to use perjured testimony and information, or an unconstitutional charge / offense, said actions clearly prejudiced petitioner at trial.

Finally, petitioner represents and shows counsel was ineffective in these proceedings because he filed several different motions in this matter, and not one of said motions or pleadings are a motion to quash, based on the statute being unconstitutional or the bill of information doesn't list the elements of the crime or the elements which constitute a crime within the statute. Said bill of information was defective and such prejudiced petitioner at trial. Had counsel filed a pre-trial motion to quash, the

17.

outcome would have been different, therefore, relief should be granted on this claim in it entirety. Cumulatively, all of defense counsel's errors amount to a denial of effective assistance of counsel during pre-trial, and during trial in this matter.

Witnesses addresses and names who could testify in support of my claims.

### Claim 1 (A)

Ernest F. Barrow, III 113 E. 23rd Ave., Convington, La. 70433; Frederick H. Kroenke, Jr. 707 Rapides Street, Baton Rouge, La. 70806; Rachel Yezbeck 701 Loyola Ave., Ste. 404, New Orleans, La. 70113; The Three Judge Panel of the Court of Appeals, First Circuit Court of Appeals, whom heard said appeal, Baton Rouge, La.; Marlone Rashen Brumfield, Louisiana State Prison, Angola, La., Court Reporter, Theresa Trapan, Courthouse, Convington, La; and this case, Courthouse, Convington, La. Plus the record transcript of the trial proceedings.

### Claim 1 (B)

Asst. District Attorney, Kilien and Macke, both at Courthouse in Convington, La. Plus the record transcript of the trial proceedings. Marlone R. Brumfield La. State Prison; Attorney Ernest E. Barrow III, 113 E. 23rd Ave., Convington, La. 70433; and all police officers whom testified at trial, being that I am incarcerated and I don't have their addresses.

### Claim 1 (C)

The Sheriff and district attorney of St. Tammany Parish, Courthouse in Convington, La; Marlone R. Brumfield, Louisiana State Prison, Angola, La; Whatever discovery the state provides to petitioner in this matter, Attorney Ernest E. Barrow, III 113 E. 23rd Ave., Convington, La. 70433.

### Claim No. 2

Members of The Louisiana Legislature, State Capital, 22nd Floor, Baton Rouge, La. 70809, Marlone R. Brumfield, La. State Prison, Angola, La 70712, and all judges over this case, Courthouse, Convington, La. 70433;

### Claim No. 3

The District Attorney whom prosecuted this case, Courthouse, Convington, La.  Marlone R. Brumfield, La. State Prison, Angola, La 70712; Ernest E. Barrow, III 113 E. 23rd Ave., Convington, La. 70433;

### Claim No. 4

Marlone R. Brumfield, La. State Prison, Angola, La 70712; Ernest E. Barrow, III 113 E. 23rd Ave., Convington, La. 70433; The trial transcripts and appellant record, will best support this claim,

plus the court reporter and clerk of court both located at the Courthouse in Convington, La.

## CONCLUSION AND PRAYER

WHEREFORE, Petitioner respectfully prays that for these reasons argued:

1.  The State of Louisiana through its district attorney be duly served with a copy of the foregoing Supervisory Writ of Review on Petitioner's Application for Post-Conviction Relief;

2.  The State of Louisiana be required to answer

3.  The Court remand this case back to the trial court for a hearing with directive orders to set a date for an evidentiary hearing at which Petitioner may question his attorney(s) regarding the ineffective assistance of counsel claims;

4.  After said evidentiary hearing be held, Petitioner be allowed to supplement his application, so that he may raise any additional claims that be discovered at said hearing;

5.  The Court authorized request for admission of fact and genuineness of documents be propounded on the State of Louisiana pursuant to La. Cr.C.P.Art. 929 (B); also he be allowed to supplement once the State of Louisiana allow him to purchase his District attorney file, See Ex.-G, which state agreed to to provide said cost, but hasn't did so yet.

6.  After taking evidence, the court granted post-conviction relief, setting aside Petitioner's conviction and sentence and order that Petitioner be released immediately; and

7.  Grant such order and further relief as appears reasonable and just to which petitioner may be entitled.

Respectfully Submitted,

_____
Marlone Rashen Brumfield # 496966
CBC, L/R Cell # 8
Louisiana State Prison
Angola, La. 70712

19.

## CERTIFICATE OF SERVICE

I Marlone R. Brumfield, hereby certify that I have served a true and correct copy of the above and foregoing Supervisory Writ of Review upon the District Attorney, St. Tammany Parish, by placing same in the Institution's Legal Mail System for depositing in the U.S. Mail, properly addressed and with proper first-class postage pre-paid, this _____ day of _____, 2019.

_____
Marlone R. Brumfield

## VERIFICATION

STATE OF LOUISIANA
PARISH OF WEST FELICIANA

### MARLONE RASHEN BRUMFIELD

Before me, the undersigned Ex-Officio Notary, did personally appear Marlone R. Brumfield, #496966, who after having been duly sworn, does verify that he is the Petitioner in the above and foregoing; that he has read and understands the contents thereof; that he believes the contents thereof to be true and correct to the best of his knowledge, belief, and information, under the penalties of perjury proscribed by law.

_____
Marlone R. Brumfield, #496966

SWORN TO AND SUBSCRIBED BEFORE ME this _____ day of _____, 2019.

_____
EX-OFFICIO NOTARY

20.

IN THE
SUPREME COURT
FOR THE
STATE OF LOUISIANA

STATE OF LOUISIANA

vs.

MARLONE R. BRUMFIELD

# SUPERVISORY WRIT OF REVEIW
# APPLICATION FOR POST-CONVICTION RELIEF

22ⁿᵈ JDC, St. Tammany case
No.: <u>567470; Div. "E"</u>

Respectfully submitted this _8ᵗʰ_ day of ____April____, 2020.

Marlone Brumfield
Marlone R. Brumfield, #496966
Main Prison, _CBA L/R 12_
La. State Penitentiary
Angola, La 70712

# CRIMINAL PROCEEDING

TYPED & FORMATTED BY:
Offender Counsel Substitute
Main Prison Legal Aid Office

# TABLE OF CONTENTS:

MEMORANDUM OF LAW IN SUPPORT.................................................................................1

JURISDICTION AND VENUE.............................................................................................1

NOTICE OF PRO-SE FILING............................................................................................1

STATEMENT OF THE CASE.............................................................................................2

CLAIMS FOR RELIEF....................................................................................................3

B. WHETHER THE PROSECUTOR KNOWINGLY USED FALSE TESTIMONY / INFORMATION
TO OBTAIN A CONVICTION?..........................................................................................5

C. Whether law enforcement and the district attorney discriminates against the Black, African-
American Race in St. Tammany Parish?..............................................................................9

THE STATUTE CREATING THE OFFENSE FOR WHICH HE WAS CONVICTED........................10

THE COURT EXCEEDED ITS JURISDICTION....................................................................12

INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL............................................................14

CONCLUSION AND PRAYER..........................................................................................19
..................................................................................................................19

CERTIFICATE OF SERVICE...........................................................................................20

VERIFICATION............................................................................................................21

**EXHIBITS**

i

# TABLE OF AUTHORITIES:

**FEDERAL CONSTITUTION**
5th, 6th and 14th Amendments........................................................................6
Sixth Amendment................................................................................13p.
Sixth Amendment to the United States Constitution.................................14
United States Constitution, Amendment 14....................................................10


**FEDERAL CASES**
Mooney v. Holohan, 294 U.S. 103 (1935)..........................................................8
Muschkat, 706 So.2d @ 432...........................................................................10
Napue v. Illnoise, 360 U.S. 264 (1954)..............................................................8
Pyle v. Kansas, 317 U.S. 213 (1942)..................................................................8
Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984)....................14
U.S. v. Cabera-Teran, 168 F.3d 141 (C.A. 5 Cir. 1999).................................14


**STATE CONSTITUTION**
Article 1 § 13 of the Louisiana Constitution...................................................14
La. Const. 1974..................................................................................................1
Louisiana Constitution Art. 1 § 13 and 16.........................................................6
Louisiana Constitution of 1974..........................................................................3
LSA-Const. Art. 1 § 19 provides......................................................................3]


**STATE STATUTES & RULES**
Constitution of the United States......................................................................3
La. Cr.C.P. Art. 17............................................................................................5
La. Cr.C.P. Art. 771.........................................................................................16
La. Cr.C.P. Art. 843...........................................................................................3
La. Cr.C.P. Art. 872.........................................................................................12
La. R.S. 14:3....................................................................................................10
La.C.Cr.P. Art. 770..........................................................................................16
La.C.Cr.P. Art. 775..........................................................................................15
La.C.Cr.P. Article 62..........................................................................................9
La.Cr.C.P. Art 920(2)..........................................................................................5
La.Cr.C.P. Art. 843.............................................................................................5
LSA-R.S. 15:529.1..............................................................................................2
R.S. 13: 961 (C)..................................................................................................3
R.S. 14:56...........................................................................................................2
R.S. 14:96..................................................................................2, 10p., 13
R.S. 40:966(C)(E)(3)..........................................................................................2
R.S. 40:967(A)(1)...............................................................................................2
Rule X................................................................................................................1


**STATE CASES**
State Pinion, 06-2436 (La. 10/26/07), 968 So.2d 131, 134-35 (per curiam)............5
State v. Boatner, 03-485 (La. 12/3/03, 861 So.2s 149, 152).................................4
State v. Boatner, 03-485 (La. 12/3/03, 861 So.2s 149, 153.................................4
State v. Brumnfield, 96-2667 (La. 10/28/98), 737 So.2s 660, 669, cert denied, 526 U.S. 1025 (1999)....4
State v. Carr, 761 So.2d 1271...........................................................................10
State v. Dabney, 05-53 (La. App. 5 Cir. 6/28/05), 908 So.2d 60, 63.................14
State v. Dabney, 05-53, 908 So2d at 63(Citing Strickland,466 U.S. at 687, 104 S,Ct. At 2064)............14
State v. Griffin, 495 So.2d 1306, 1308 (La. 1986).............................................10
State v. Hartshorn, 09-47 (La. App. 5 Cir. 11/10/09), 25 So.3d 172, 181., writ denied, 09-2654 (La.
6/4/10), 38 So.3d 298.......................................................................................14
State v. Jones, 13-19 (La. App. 5 Cir. 8/27/13), 123 So.3d 758, 765..................14
State v. Landry, 97-499 (La. 6/29/990, 751 So.2d 214, 216.................................5
State v. LeCaze, 99-0584(La. 1/25/02), 824 So.2d 1063, 1078-79, cert. Denied, 537 U.S. 865, 123 S.Ct.
263, 154 L.Ed. 2d 110 (2002)...........................................................................14
State v. Lecompte, 406 So.2d 1300, 1311 (La. 1981).........................................10
State v. McDonald, 04-550 (La. App.5 Cir. 11/16/045), 889 So.2d 1039, 1042, writ denied, 04-3088
(La. 4/1/05), 897 So.2d 599...............................................................................14
State v. Muschkat, 706 So.2d 429.....................................................................10

State v. Parker, 361 So.2d 226, 227 (La. 1978)..................................................................................4
State v. Soileau, 138 So.92 (1931)......................................................................................................12
State v. Williams, 800 So.2d 790.......................................................................................................10

STATE OF LOUISIANA                    SUPREME COURT

Vs.                                   CASE NO.: _____

MARLONE R. BRUMFIELD                  STATE OF LOUISIANA

_____             _____
Date Filed By Clerk of Court          Dpty. Clerk of Court

---

## MEMORANDUM OF LAW IN SUPPORT

---

**MAY IT PLEASE THE COURT:**

      **NOW INTO COURT COMES,** Marlone R. Brumfield, *Pro Se* Petitioner, who respectfully presents this Supervisory Writ of Review on his Post-Conviction Application and "Memorandum of Law in Support," of which he respectfully incorporates into and makes a part of his Uniform Application for Post-Conviction Relief. Furthermore, after due and proper consideration of the merits herein and the argument presented, Petitioner respectfully moves this Honorable Supreme Court to either remand this case back to the trial court for a hearing and further development of the trial court record before embarking upon Supervisory review of the Claims present, or should this Honorable Court deem petitioner to have made a sufficient showing of entitlement to relief, grant him post-conviction relief, and set aside his current conviction and sentence for the reasons established herein so that he might be relieved of this current illegal restraint.

### JURISDICTION AND VENUE

      Jurisdiction and venue are proper before this Honorable Court pursuant to *La. Const. 1974,* and *Rule X* of this Honorable Court's Rules and Filing requirements

### NOTICE OF PRO-SE FILING

      Mr. Brumfield calls this Honorable Court's attention to the fact that he will be proceeding before this Honorable Court in his request that the Claims presented herein be reviewed in accordance with the rulings of *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *State v. Moak,* 387 So.2d 1108 (La. 1980)(Pro-se petitioner not held to same stringent standards as a trained lawyer); *State v. Egana,* 771 So.2d 638 (La. 2000)(less stringent standards than formal pleadings filed by lawyers). Mr. Brumfield is a layman of the law and untrained in the proper ways of filing and proceeding properly in the manner that the formal pleadings must be submitted to this Honorable Court.

## STATEMENT OF THE CASE

Petitioner, Marlone Rashen Brumfield was convicted of Aggravated Obstruction of a Highway of Commerce, and possession of cocaine on February 18, 2017, after a jury trial in the 22nd Judicial District Court in for the Parish of St. Tammany, State of Louisiana in Case No. 567470, Div."E," the Honorable William J. Burris, Judge Presided.

On November 15, 2016, a habitual offender hearing was held, in which petitioner was found to be a fourth-time felony offender, Judge Burris then sentenced petitioner in accordance with *LSA-R.S. 15:529.1* to a mandatory life sentence as to count one and twenty years at hard labor as to count two, to run concurrently with each other. A copy of the minutes showing the conviction, and the sentence are attached.

Petitioner's conviction and sentence were based on a four count bill of information charging aggravated obstruction of a highway, simple criminal damage to property, and possession with the intent to distribute Schedule II Controlled dangerous substance and possession of marijuana (3 rd offense, all in violation of *R.S. 14:96, R.S. 14:56, R.S. 40:967(A)(1), R.S. 40:966(C)(E)(3)*. The bill of information was amended later by the state, count 2 to read possession of schedule II to wit: Cocaine, dismissing the simple criminal damage to property and the possession of marijuana third offense on August 22, 2016. Petitioner entered a not guilty plea said charges in the amended bill of information. On the date of the scheduled trial, petitioner's motion to suppress statements and evidence was heard along with the preliminary examination, in which both were denied. Trial began February 16, 2016, Petitioner was convicted as charged on the obstruction of a highway of commerce and possession of cocaine.

Attorney Ernest E. Barrow III 113 E. 23rd Ave., Convington, La. 70433, represented Petitioner at trial and during the motion to suppress and preliminary hearing, said attorney was a conflict attorney appointed by he trial court.

The court of appeals First Circuit No. 2017-KA-0080, denied petitioner direct appeal on September 21, 2017. The case is reported as unpublished. The Supreme Court denied writs on June 15, 2018, No. 2017-KO-1790.

Petitioner argued three claims for relief on appeal. Arguing that: 1) the district court erred when it denied defendant's motion to suppress evidence and statements because it was acquired via illegal search and seizure; 2) The states failed to prove sufficient evidence to convict Brumfield of possession of cocaine, and 3) The habitual offender law is excessive and cruel and unusual punishment. The

Louisiana Appellate Project was appointed to represent Petitioner on appeal. However, Petitioner hired attorney Rachel Yazbeck to do his appeal in this matter (701 Loyola Ave. Suite 404, New Orleans, La. 70113).

Petitioner represents and shows said application for post-conviction relief it timely, being that Supreme Court of Louisiana denied his direct appeal on June 15, 2017. Petitioner had 90 day in which to seek writs in the United States Supreme Court. However, his conviction became final once the time period for him to seek writs expired, or on September 15, 2018. Petitioner has two (2) year to seek post conviction relief in the district court. Therefore, this application is timely filed.

## CLAIMS FOR RELIEF

It is the contention of petitioner that both the trial court as well as the Court of Appeal made a determination of the facts and evidence in dispute which was contrary to and/or involved an unreasonable application of cleary established federal law as determined by the Supreme Court of the United States.

Petitioner urges that the instant conviction was obtained in violation of the *Constitution of the United States* and *Louisiana Constitution of 1974.* As to the controlling law on the issue, petitioner hereby presents the following.

**A. Denied a right to judicial review on direct appeal.**

**LSA-Const. Art. 1 § 19 provides:**

> No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. This right may be intelligently waived....

La. Cr.C.P. Art. 843 pertinently states:

> In felony cases . . .the clerk of court stenographer shall record all of the proceedings, including the examination of witnesses, statements, rulings, orders and charges by the court and objections, questioning, statements and arguments of counsel.

Moreover, in criminal proceedings the court reporter shall record all portions of the proceedings required by law and shall transcribe those portions of the trial proceedings required by *R.S. 13: 961 (C),* this is echoed by the (Federal) *Court Reporter Act.*

Both the Louisiana Supreme Court and the Untied States Supreme Court have made it clear that a criminal defendant has a right to a complete transcript of the trial proceedings particular where, as in

this case appellant counsel was not counsel at trial. *State v. Boatner,* 03-485 (La. 12/3/03, 861 So.2s 149, 152). These rulings were handed down long before today, and have been in effect for the trial court to be aware of their existence at the time it rendered its September 17, 2019, judgment denying petitioner relief based upon such Supreme Court decisions.

The current state of the law provides that: material omissions from trial court proceedings bearing on the merits on an appeal require reversal. *State v. Boatner,* 03-485 (La. 12/3/03, 861 So.2s 149, 153. However, "slight inaccuracy in a record or an inconsequential omission from it which is immaterial to the proper determination of the appeals" does not require reversal of a conviction. Id., quoting *State v. Brumfield,* 96-2667 (La. 10/28/98), 737 So.2s 660, 669, cert denied, 526 U.S. 1025 (1999); *State v. Parker,* 361 So.2d 226, 227 (La. 1978). A defendant is not entitled to relief of an incomplete record absent a showing of prejudice based on the missing portions of the transcripts. Id.

In this case, there are portions of the transcripts that weren't transcribed because it was an off the record bench discussion, see Exhibit-"A", **pages 135,137,143, 157,159, 166,168,267,457,& 485-89.** On pages 172,m 73,273, 290, off the record discussion were held but such was transcribed and did correctly and accordingly to the law and statute. Petitioner would like to point out on page 485, the court stated:

**THE COURT**

Yes, Lets do the charge conference (court adjourned).
Petitioner represents and shows he wasn't present during said proceedings and such wasn't transcribed and made part of the appellant record. On the following day of trial (page 489 attached under Ex.- A) which states:

**THE COURT**

Counsel, we went over instructions yesterday after court and made a few changes.

**MR. MACKE**

No objection from the state, pursuant to the changes that were made at that pretrial conference or the charge conference.

**MR. BARROW**

The only objection I had your honor is, and I asked for it was the off the record in chambers asked for a responsive to the Agg. Obstruction of a highway to be reckless operation. I believe it contains some of the lesser included facts, and I believe it would be appropriate to include it as a responsive verdict to Agg. Obstruction. I know your Honor is not inclined to do that, but just note my objection.

Petitioner wasn't present, whatever went on during the charge conference should have been transcribed and made part of the appellate record, being such was did off the record in chambers. Petitioner can't challenge on appeal or post-conviction proceedings if his lawyer was ineffective at such

4.

conference or if any of his other constitutional rights were violated.

*La.Cr.C.P. Art. 843* requires either the clerk of the court reporter to record all proceedings, including the examination of prospective jurors, rulings, objections, and arguments of counsel. In State Pinion, 06-2436 (La. 10/26/07), 968 So.2d 131, 134-35 (per curiam)(citations omitted), the Louisiana Supreme Court explained that "the failure to record bench conferences will ordinarily not affect the direct review process when the record suggest that the unrecorded had no discernible impact on the proceedings and did not result in any specific prejudice to the defendant.

As in *State v. Landry*, 97-499 (La. 6/29/990, 751 So.2d 214, 216, the record is grossly incomplete in several respects and the deficient record deprived the defendant of his constitutional rights of appeal and judicial review, Landry reaffirmed that "it is not the defendants obligation to ensure an adequate record....it is the duty of the court...to see that the court reporter makes a true, complete, and accurate record of the trial." 751 So.2d at 216, citing in part *La. Cr.C.P. Art. 17.*

Petitioner represents and shows at one point the District Attorney had a discussion with one of the arresting narcotic agents, and such wasn't made part of the record. See Exhibit -A, last page which is transcript page 341, line 14-17, which provides:

THE COURT

I want you to discuss it with him now, and I'm sure you-all don't have any objection to that.

The trial was recessed, and I assumed at that time, the DA went discuss such with the officer. However, Petitioner, his lawyer, or the judge wasn't part of said discussion, and being such wasn't transcribed and made part of the record, petitioner can't raise no claim or issue regarding such discussion. Such should have been made part of the appellate record. Whatever was discussed, counsel for petitioner had a right to be present.

Further, Petitioner represents and shows the appellate record didn't consist of any of the police reports regarding this matter or the affidavit of probable cause (See Ex.-B"), neither did said record contain any of petitioners Boykin transcripts regarding prior charges used to enhance his sentences. (see Ex.- "C"). Petitioner represents he was prejudiced by such not being made part of the record, because he was denied error patent review, pursuant to *La.Cr.C.P. Art 920(2)*, therefore, relief should be granted on this claim in its entirety.

**B.    WHETHER THE PROSECUTOR KNOWINGLY USED FALSE TESTIMONY /
INFORMATION TO OBTAIN A CONVICTION?**

Petitioner herein lays challenge to the rulings of both the trial court and the Court of Appeal as to the claims presented herein. The decision rendered by both of the courts below were a violation of

5.

clearly established Federal Law as determined by the Supreme Court of the United States when interpreting the Amendments of the Constitution. In addition to the foregoing, the rulings of the courts below prove themselves to facilitate a Federal Question which brings to light that their remains critical questions in dispute which cannot be resolved based upon the existing record alone. As such, this matter is ripe for a remand and evidentiary hearing, or the Respondent devotes a solemn agreement to join petitioner efforts in federal court to jointly pursue an evidentiary hearing so that the record can be expanded and all critical facts in dispute laid to rest as to all claims herein. Petitioner avers that his constitutional rights by the *United States Constitution 5th, 6th and 14th Amendments* as well as the *Louisiana Constitution Art. 1 § 13 and 16* were violated when the prosecution knowingly used false testimony or information to secure a conviction for the Aggravated Obstruction of a Highway of Commerce and Possession of Cocaine.

Petitioner avers that on June 10, 2019, he received a copy of his criminal file from his trial lawyer, Mr. Ernest E. Barrow, pertaining to his arrest, prosecution and conviction in this matters. (See Ex.-"D").

Petitioner contends that upon reviewing the documents in said file, he discovered a copy of his affidavit of probable cause, and several police reports, In the affidavit of probable cause, it clearly states:

> "On Wednesday August 26, 2015, pursuant to a narcotics investigation it was learned Marlin Brumfield would be driving a white four door Nissan Titan and delivering promethazin with Codine (Schedule II) to an individual in the Wendy's parking lot located at 69340 Highway 21, Convington, La."

Now at the Criminal trial in this matter Detective Scott Thomas testified at trial, that:

> "Once he saw the vehicle description that we gave him that we were going to be in, he actually sent a text message to the cooperating individual asking who the white guy was with him."
> Tr.p. 412.

So with that being testified to, under oath at trial, and in the affidavit of probable cause means the cooperating individual was in the parking lot. So, when detective Bart Ownby (T.p. 412), that the person was at the Sheriff's Complex such was a lie at trial, and perjured testimony at trial, and the prosecutor stayed mum and silent.

Further, detective Bart Ownby testified on trial p. 412 that:

> "Detective, did the text message that you previously

testified to in which the defendant said who is that white
boy, is that what that text message said ? Yes."

The only was that Det. Ownby and other detectives can say what the text message said, they

either had to see said text, the only way that could have happened, if the cooperating individual was in

the car with the detectives at the Wendy's parking lot, which shows and proves all detectives that

testified to such at trial, lied under oath and perjured themselves. Petitioner never text-ed anyone he

called the guy on his cell phone so that is why they could not retrieve any text off petitioner's phone or

the so called cooperating individual phone.

Next perjury issue deals with the state allowing the detectives at trial calling the C.I.

Cooperating individual a confidential informant. Although both words starts with a C/I, both words

ment the same, and doesn't have the same meaning. Please see Tr.p. 335, which states:

> A.     "We were working with the individual from a
> separate incident who determined he was going to
> cooperate with us and he subsequently led us to Mr.
> Brumfield.
>
> Q.     It there a certain terminology for that individual ?
>
> A.     That's going to be a "cooperating individual."

A confidential informant is an unknown person who informs against another or a person who

makes a practice esp. for money or informs police of others criminal activity and has been reliable in

the past. At the trial of this matter, confidential informant was stated several times, see Tr.p. 322, 414,

417, 502, & 511. The prosecutor even referred to this guy as a confidential informant in his opening

arguments (Tr.p. 322). Clearly, this guy should not have been called a confidential informant, when he

wasn't one. Please see trans. p. 156, which states:

> "Well, we was attempting to make a traffic stop to
> determine, to investigate further if we were wasting time or
> we were actually —if this guy was giving us good
> information."

The police themselves knew this guy wasn't reliable. Obviously he wasn't a confidential

informant, because they wouldn't have referred to him as being a cooperating individual, they would

have known he was reliable and credible. Again, the prosecutor never said one word, when such was

stated at trial.

Next issue the petitioner would like to point out, several detectives testified at trial, when the

petitioner was apprehended he immediately stated: "I will give you anybody you want." (Tr.P. 354)

Said statement is not true and perjured testimony. If said statement was true, why didn't the

officers allow petitioner to do the very same as the cooperating individual was doing to the petitioner? The officers clearly stated that they were investigating Narcotics in St. Tammany Parish. So if they use a small fish to catch a medium fish, why not use a mid-level dealer to catch a King Pen? Such was never the intentions of said officers. The intentions of the officers was to arrest the petitioner and send him to prison for life, being the officers were upset, that petitioner was a black man, dating a white female.

The state cannot contend these officers did not testify falsely in this case, because the record shows otherwise, and the use of perjured testimony violated clearly established law in accordance with such cases as: *Napue v. Illinoise*, 360 U.S. 264 (1954); *Pyle v. Kansas*, 317 U.S. 213 (1942); *Mooney v. Holohan*, 294 U.S. 103 (1935). In *Napue*, the Supreme Court held:

> "Convictions obtained through the use of false testimony
> known to be such by representatives of the state is a denial
> of due process, and there is also a denial of due process
> when the state though not soliciting false evidence allows it
> to go uncorrected when it appears."

The material fact in this knowing use of perjury is evident. Petitioner's allegations are apparently true, as can bee seen from the exhibits and the trial testimony. Any reasonable court official should have known to allow these witnesses to testify falsely is shameful and violates Petitioner's constitutional rights. This court can find that the genuine issues of fact exist, that those particular state witnesses testified falsely, and the attached documents and trial records clearly established these reports were used to bring charges against petitioner. It would prove that the officers have filed false reports and false information to have charges brought against petitioner.

Petitioner further contends that he suffered prejudice due to these police witnesses committing perjury and testifying falsely. Had the witnesses not committed perjury or testified falsely, petitioner would not have been convicted. The testimony of these witnesses were the only testimony (evidence) that was vital to the petitioners case. The jury relied upon their testimony in reaching a verdict. Had the jury been made known of these witnesses perjury (untruthfulness) there would have been a different outcome. Petitioner submit that his conviction and sentence be reversed on the prosecution knowing use of false or perjured testimony. Being that the prosecutor made the jury aware of the fact no nuns were in that van. Please be advised that is the sole and only time the state pointed out a lie to the jury. See Tran.p. 494 which states:

> "And I know some of you have probably heard one of the
> officers testimony that were nuns and then the deacon came
> and said, oh, it was me and my wife."

8.

The above is what is required by law, and should have been did each time when such occurred at this trial, but wasn't therefore, relief should be granted in its entirety.

### C.   Whether law enforcement and the district attorney discriminates against the Black, African-American Race in St. Tammany Parish?

Although not allowed thus far, petitioner wishes to gather the data and bring in the experts to show that the law enforcement in St. Tammany Parish is race driven and the interest of those in power within the borders of St. Tammany are full speed ahead with those who set discrimination in place in the Constitutional Convention of 1898 whereby the delegates specified that they sought to install, preserve and promote White Supremacy for generations to come. For generations, the objectives of Law Enforcement in St. Tammany Parish has held true to those principles and objectives, and that is something the numbers will prove. Petitioner continues to represent and show that race plays a major factor in St. Tammany Parish when a person is arrested and prosecuted. African-American (black), males are discriminated against in the frequency of arrest, when arrested, the method of arrest, and the manner and extent to which the prosecution is pursued by law enforcement. A black male more then likely will be over-charged for violating the laws in said parish. However, a white male with the same record more likely won't be arrested, and he has violated too. If he is arrested, he would be arrested for a lesser crime than the black male, which is unconstitutional.

Petitioner further represents and shows its unfair and offensive and discriminatory practices for a black defendant charged with a crime, be charged as a habitual offender when they exercise constitutional rights to a trial and get convicted. However, when a white male or white person exercises their rights to trial in St. Tammany Parish, and get convicted they don't get prosecuted as a habitual offender, and their record is 10 times worse than a black defendants record. Such has been the practice in St. Tammany parish for several years. Article 61 states:

"Subject to the supervision of the attorney general, as provided in *La.C.Cr.P. Article 62*, the district attorney has entire charge and control of every prosecution instituted or pending in his district, and determines whom, when and how he shall prosecute."

Petitioner represents and shows he would like to propound discovery on the district attorney for the parish of St. Tammany Parish for the last 10 years for further support his claim. Said discovery will clearly show blacks are discriminated against and receive harsher sentences that white offenders. Therefore, once discovery is completed, petitioner would like to supplement this claim, and other claims. To deny petitioner to propound discovery would be stopping petitioner from proving his claim.

Also, such would be denying him due process and equal protection of the laws which is forbidden by the *United States Constitution, Amendment 14*. Petitioner further represents and shows this honorable court and other judges within St. Tammany Parish may be called to court to testify regarding this claim, which may cause for all judges within the 22nd Judicial District Court to recuse themselves from this case, and have the Louisiana Supreme Court, to appoint a retired judge to handle all future proceedings in this matter, as it pertains to this instant application for post-conviction relief, as it pertains to petitioner.

## LAW AND ARGUMENT OF CLAIM 2

### THE STATUTE CREATING THE OFFENSE FOR WHICH HE WAS CONVICTED AND SENTENCED IS UNCONSTITUTIONAL

The trial court rendered a decision which was contrary to and/or involved and unreasonable application of clearly established law and determined by the United States Supreme Court, thereafter, when petitioner presented his claims to the Court of Appeals, instead of tailoring a remedy to the disregard of federal Law, the Court allowed the deprivation to live on. Petitioner urges that the Louisiana Criminal Definition for Aggravated Obstruction of a Highway of Commerce is Unconstitutional being it is vague, overboard, ambiguous, and doesn't include interstate in the statute.

As a general matter, a statute is presumed to be constitutional, and the burden of showing otherwise falls to the challenger. *State v. Muschkat*, 706 So.2d 429. Further, criminal statutes are given a genuine construction according to the fair import of their words, taken in their usual sense, in context, and with reference to the purpose for the provision La. R.S. 14:3; *Muschkat*, 706 So.2d @ 432; *State v. Griffin*, 495 So.2d 1306, 1308 (La. 1986). Additionally, when the constitutionality of a statute is at issue, and under one construction it can be upheld, while under the other it cannot, a court must adopt the constitutional construction. *State v. Lecompte*, 406 So.2d 1300, 1311 (La. 1981). Therefore, a court may avoid constitutional problems by adopting a narrowing construction of the statute as long as that interpretation remains consistent with the overall purpose behind the legislation. *Muschkat, Supra.*, (stating "[W]hile we recognize our duty to interpret statutes in a manner consistent with the state and federal constitutions, we may only preserve a statue by a constitutional construction provided that the saving construction is a plausible one.") (Citation omitted). In addition to criminal statutes being strictly and narrowly construed, any ambiguity must be resolved in favor of the accused. *State v. Williams*, 800 So.2d 790; *State v. Carr*, 761 So.2d 1271.

Petitioner represents and shows within the current statutory criminal law and procedure it states each and every offense except for *R.S. 14:96*. Whereas, the alleged conduct is not allowed by statute is

clearly spelled out. However, *R.S. 14: 96* is unconstitutional because it does not spell out what conduct is a violation of the statute. A citizen can not be arrested for violating state laws when the law is as vague as *R.S. 14:96*, because a citizen cannot reasonably understand the conduct, citizens cant be punished or arrested, unless they have been given advance "fair notice" of the action they charged with is prohibited. The prohibited description must be clear and not vague. Citizens should not be made to abide by laws that they have not been informed of. The criminal statute defines *R.S. 14:96*, as follows:

> "Simple Obstruction of a highway of commerce is the intentional or criminally neglect placing of anything or performance of any act on any railway, railroad, navigable waterway, roadway of an air port, wherein it is foreseeable that human life might be endangered."

Being that performance of "any act" is too broad, uncertain, vague, and ambiguous. The citizens do not know what conduct they are being arrested for. This allows law enforcement to make rules as they go or as incidents arise. Legislature can not make a rule or law, that conflicts with state and federal law or the Louisiana and United States Constitution. If a citizen as myself, was aware that the act or actions were a crime or a violation of the law, there is a very strong probability they would have not done the violation. By having such a vague law when law enforcement can not charge a citizen with a certain violation they use the statute *R.S. 14:96*, which is a catch-all, and is illegal, unlawful, and unconstitutional. Especially, in the petitioner's case. He should have been charged with speeding, hit a run, flight from an officer, running a red light or two, which all are misdemeanor offenses which carries no more than 6 months (non-felony).

According to the statue as it is currently written, anybody who is speeding, driving reckless, runs a red light or stop sign, throws trash out of the window while driving, a person who crosses the road or highway walking really slow and a car must swerve or leave the highway from hitting that person, all could be charged under this unconstitutionally broad statute (*R.S. 14:96*). Even a mother or parent whom allows their young child to walk across the roads or highways, and a car almost hit the child, and must leave the highway to keep from hitting said child. Petitioner can go on and on but will stop here, the law is vague and nobody shouldn't have to guess or wonder if or if not their actions constitute a crime.

Now if, and I say only if this Honorable Court does not find *R.S. 14:96*, to be unconstitutional, such is unconstitutional as it is applied to the petitioner in this instant case, being interest is not part of the criminal statute. Further, because Louisiana has a stand your ground law, which gives a person the right to use deadly force if he fears for his life or to stop an intruder. All officers testified at trial,

11.

petitioner hadn't broken any laws when they tried to box him in their unmarked car. So at that point, petitioner feared for his life, and had the right to kill, but instead, he fled the scene, at a high rate of speed being being he was scared, afraid, and out of his mind thinking several white men were out to kill him and kidnap him, especially since none of the policemen had their lights or sirens on when they tried to block him in, when the chase first started. Please see transcript page 385, lines 15-21, which states:

> "My practice is being an unmarked, I know people don't really recognize my truck to be a police vehicle. They may not see the light because they are more directed to the front and not the side, so I typically slow or stop, if I have to at every intersection and make sure I don't injure someone or get injured."

Now, the state of Louisiana is trying to hold the petitioner to a higher standard than everyday citizens. If citizens of this state, and St. Tammany Parish can't recognize and determine an unmarked police car with flashing lights and sirens on, what makes the petitioner so different, that he suppose to recognize such? Petitioner urges this honorable court to find such unconstitutional as it pertains to petitioner's case, under these circumstances being he was out of his mind, afraid being he thought he was about to be killed by these unknown white men.

## CLAIM NO. 3
### THE COURT EXCEEDED ITS JURISDICTION

Petitioner contends that the trial court grossly failed to properly consider this claim under the provisions of both the Federal and State Constitutions. Petitioner maintains that his conviction and sentence regarding the crime of aggravated obstruction of a highway of commerce is illegal and contrary and in conflict with *La. Cr.C.P. Art. 872*, which states: "A valid sentence must rest upon a valid and sufficient:

(1) Statute;

(2) Indictment; and

(3) Verdict, Judgment, or plea of guilty."

Petitioner represents and shows his conviction and sentence are invalid, and the trial court didn't have jurisdiction to proceed to trial regarding count-1, in this matter. In order for trial and its verdict and judgment to be valid it is essential that the indictment it is based upon be itself valid. The judge therefore had no authority or legal power to sentence petitioner as to count one. There can be no trial, conviction, or punishment for a crime without a formal and sufficient accusation. *State v. Soileau*, 138 So.92 (1931), recognizes the jurisdictional requirements by making a valid and sufficient indictment a

12.

prerequisite for a valid sentence.

Although petitioner was charged by a bill of information rather than by indictment, the law is the same as it pertains to both. An indictment must contain every element of the charged offense to pass constitutional muster. This is because "[t]he Sixth Amendment guarantees every defendant the right to be informed of the governments accusation against him." The district court should have observed that count 1 failed to allege that the state failed to charge the petitioner with a crime in count 1 of the bill of information, Exhibit-E which states:

> "Count-1, R.S. Aggravated Obstruction of a Highway, Marlone R. Brumfield, on or about August 26, 2015, by the intentional or criminally neglect placing of anything or performance of any act, on any railway, railroad, navigable waterway, road, way of an airport, wherein it is foreseeable that human life might be endangered."

Please note, "of commerce" is not within the information but is included in the statute of said offense. Such does not charge a crime / offense, the prosecutor merely recited the statute as is written in the criminal code, which is incorrect. Petitioner has enclosed a bill of information which was filed, against him in his previous charges, see Ex- "F" which is the correct way to file a bill of information. The petitioner represents and shows he was prejudiced in preparing a defense in this matter. The statute does not include "interstate" in the wording of said statue. Petitioner represents and shows if he did violate any laws, it would be on the interstate. However, since interstate is not part of the statute itself, petitioner didn't and couldn't violate said statute. Clearly, when the state didn't include in the bill of information what unlawful act petitioner committed.

Now, the prosecutor is a very smart and intelligent individual who went to law school and passed the bar to be a lawyer. This is something which can be taken as fact on its face. In his career, it can be safely said that, said Asst. District Atty. has filed many bills of information within the 22nd Judicial District Court, therefore this honorable court should not allow the state to use mistake or ignorance of the law, for not filing a proper bill of information. If the defendant cannot use mistake or ignorance of the law as a defense for breaking the law, the State (Prosecution) is likewise not allowed to use ignorance or mistake when prosecuting someone with a violation of the law.

Being Count -1, neither contains every element of the offense charged under *R.S. 14:96*, nor refers with sufficient specificity to the alleged act committed by petitioner, the bill of information did not allege a cognizable offense and the trial court neither the state had jurisdiction to proceed to trial on

13.

said charges, therefore, relief should be granted in its entirety on this claim pursuant to *U.S. v. Cabera-Teran*, 168 F.3d 141 (C.A. 5 Cir. 1999).

## LAW AND ARGUMENT CLAIM NO. 4
## INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Generally, an ineffective assistance of counsel claim must be appropriately addressed through an application for post conviction relief filed in the district court, where a full evidentiary hearing can be conducted, if necessary, rather than by direct appeal. *State v. Jones*, 13-19 (La. App. 5 Cir. 8/27/13), 123 So.3d 758, 765, See *State v. Hartshorn*, 09-47 (La. App. 5 Cir. 11/10/09), 25 So.3d 172, 181., writ denied, 09-2654 (La. 6/4/10), 38 So.3d 298.

Under the *Sixth Amendment to the United States Constitution* and *Article 1 § 13 of the Louisiana Constitution*, a defendant is entitled to effective assistance of counsel. *State v. McDonald*, 04-550 (La. App.5 Cir. 11/16/045), 889 So.2d 1039, 1042, writ denied, 04-3088 (La. 4/1/05), 897 So.2d 599. A claim of ineffective assistance of counsel must satisfy the two pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984); *State v. Dabney*, 05-53 (La. App. 5 Cir. 6/28/05), 908 So.2d 60, 63.

Under the *Strickland v. Washington* test, the defendant must show: 1) that counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under the professional norms; and 2) that the deficient performance prejudiced the defense. *State v. Dabney*, 05-53, 908 So2d at 63(Citing *Strickland*,466 U.S. at 687, 104 S,Ct. At 2064). This requires showing that counsel's errors were so serious as to deprive the defendant of a trial whose result is reliable. Id. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the out come. Id.

A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Id. There is no precise definition of reasonably effective assistance of counsel, so any inquiry into the effectiveness of counsel must be specific to the facts of the case, and must take into consideration the counsel's perspective at the time. *State v. LeCaze*, 99-0584(La. 1/25/02), 824 So.2d 1063, 1078-79, cert. Denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed. 2d 110 (2002). The *Sixth Amendment* does not guarantee error-less counsel or counsel judged ineffective by hindsight. Id.

Petitioner represents and shows his counsel was ineffective at trial when he did not move for a

14.

mistrial. At trail on transcript page 340 & 341, which states:

BY MR. MACKE

    Q.    You may continue.

    A.    "Once he sent that text message, we had a good idea that that's who was going to be in the vehicle. And one of the other detectives has dealt with him on numerous other occasions and actually know him personally through previous arrests. And once that detective, saw him he said that's who it is and that's when we knew - -

MR. BARROW

        I'm going to object. That's hearsay. Although counsel lodged an objection, he should have requested a mistrial at that moment. Once the bell has rung, you can not take away the sound. *La.C.Cr.P. Art. 775* provides that the trial court shall grant a mistrial when prejudicial conduct in or outside of the court room make it impossible for the defendant to obtain a fair trial. Being counsel did not request for a mistrial, the court could not grant a mistrial. However, the judge immediately knew that the Petitioner would be prejudiced and could not receive a fair trial at that point. So what does the judge do? Still on trial page 340, line 15-31, which states:

THE COURT

        I'm going to sustain that objection. I'm going to admonish the jury not to consider the last answer at all. Don't consider that at all, okay?

        I want to take a short recess. Ladies and gentlemen, if you would just step out, it's not going to be more than two minutes. Okay.   (JURY EXITS)

THE COURT

        Be seated, counsel, I'm going to give you an opportunity to speak to your client - - to your witness and advise him that prior arrests are not something that can be gone into, and I need you – all to make sure that other witness understand that that's totally improper.

    Trial Transcript page 341, which provides:

THE COURT

        I don't think in this case it was done maliciously, and I have admonished. But I'm going to admonish it now and make sure that it doesn't happen again.

    Petitioner represent and shows the court in its decision to admonish knew Petitioner was prejudiced, but since he said: "I don't think in this case it was done maliciously," he allowed the trial to continue. However, the statute does not require if it was did intentionally or unintentionally or maliciously or not, the statue says if the prejudice conduct make it impossible for the defendant to obtain a fair trial.

    Now, defendant wanted to testify and catch the stand at his trial, however, he refused to do so, being other arrest and convictions would come before the jury and they would use such to convict on

this instant charges he stood trial for, so other arrest and numerous run-ins with law enforcement prejudiced the petitioner before the jury, and made it appear as if the petitioner was a straight up outlaw and bad person, and the jury would convict on such, without even considering any further evidence or testimony adduced at trial.

Now the State of Louisiana also knew that petitioner was prejudiced too, please continue trial transcripts page 341, lines 7-13, which provides:

MR MACKE:

And the judge, the state just wants to put on the record that this individual is not the narcotic agent that does know Mr. Brumfield from the prior arrest, and we did speak with that individual any my apologies to the court for that.

A apology to the court does not cure that defect, only a mistrial would have done so. Now, what is more prejudiced to the petitioner, at no time whatsoever did his lawyer or the state make a request for the judge to even admonish the jury. *La. Cr.C.P. Art. 771* which provides in part:

In the following cases, upon the request of the defendant or the state the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument withing the hearing of the jury when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:

(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of *La.C.Cr.P. Art. 770.*

In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

In this case, if the trial court himself, went beyond the statute and law to admonish the jury without being asked by either party, the trial court obviously felt like the petitioner was prejudiced. The trial court even felt the need to talk to the witness and admonish the jury twice in this matter. Still on trial transcript page 341, lines 14-30, which provides:

THE COURT

I want you to discuss it with him now, and I'm sure you all don't have any objection to that.

MR. BARROW

No, you honor.

THE COURT

Take about a two minutes. (Recess taken).

16.

THE COURT

   Let's return the jury. (JURY ENTERS).

THE COURT

   Be seated please. I just want to re-emphasize and admonish again not to consider anything in that prior answer.

By the trial court putting further emphasis on the jury not to consider the prejudicial testimony and evidence of prior arrest and dealing with the petitioner such prejudice the petitioner and counsel was ineffective for not requesting a mistrial.

Next reason why counsel was ineffective during these proceedings because counsel brought race into his trial, and petitioner was on trial with an all white jury, except for one juror whom appeared to be half white. Counsel at trial stated on transcript page 331, that:

"In fact, Mr. Brumfield was getting a hamburger at Wendy's when four, at least four, burley white guys, late at night, in some ragged out cars with lights decide to chase him."

Such was not sound trial strategy,  and inflame the jury and prejudice the petitioner in the eyes of the jury. If the jury had considered finding the petitioner not guilty, once petitioner's counsel brought race in the trial, all defendant's chances of being found not guilty vanished. It wasn't no longer about the trial, the evidence, the testimony, it then became a race issue, being counsel had insulted the white jury, by alleging that their race of people jumped out on a black man, such prejudiced the petitioner, and had race not came before the jury as it did, petitioner would have been found not guilty at trial in this matter.

Now the next reason why counsel was ineffective in these proceedings, because at trial, he stated on transcript page 288, lines 12-18, which provides:

"Now, I know a lot of you, and I am too concerned about our budget situation. And I know a lot of you have probably been reading a lot about what—where we can cut, about how Louisiana has the highest incarceration rate per capital in the country.

The above statement prejudiced the petitioner before the jury at trial. First of all, the above mentioned is not related to this case in any way whatsoever. Further, by counsel talking about high incarceration rate in Louisiana, he is basically saying that my client is guilty as charged, no need for a trial in this matter, but don't convict him to make the incarceration rate one more person on the already high rate. Once the jury had heard such, it had already determined petitioner was guilty as charged. No lawyer in his right mind would tell the jury his client is guilty but, this lawyer did such, making him totally ineffective at trial, which resulted in prejudice to petitioner, and led him to being convicted.

17.

Next reason why counsel is ineffective in these proceedings, because trial transcript page 333, lines 15-20, which trial counsel stated:

"And knowledge that he had the cocaine on him is an element of the crime. If you find that he had the cocaine on him and that it was cocaine, then I put it to you, he had no idea it was there.

Said argument is without merit, and it prejudiced the petitioner at trial before the jury. At the trial on the merits several officers got on the stand and testified that he found the cocaine in a cigarette pack, on the petitioner's person. Counsel has committed a fraud upon the court and the jury, which made the jury look at counsel and defendant is a totally different light. The jury concluded if counsel went to the point to lie for defendant, the defendant had to be guilty of both charges being counsel was trying to fool and trick the jury. Had counsel not tried to trick and fool, lie, or commit a fraud upon the jury, he would have been found not guilty at trial.

Next reason why counsel was ineffective during these proceedings for the reasons stated in claims two and three of this application for post conviction relief, and claim 1(b) no competent attorney or no attorney in his right mind would allow his client to go to trial, and the trial court didn't have jurisdiction to proceed on one of the charges, or allow the prosecutor to use perjured testimony and information, or an unconstitutional charge / offense, said actions clearly prejudiced petitioner at trial.

Finally, petitioner represents and shows counsel was ineffective in these proceedings because he filed several different motions in this matter, and not one of said motions or pleadings are a motion to quash, based on the statute being unconstitutional or the bill of information doesn't list the elements of the crime or the elements which constitute a crime within the statute. Said bill of information was defective and such prejudiced petitioner at trial. Had counsel filed a pre-trial motion to quash, the outcome would have been different, therefore, relief should be granted on this claim in it entirety. Cumulatively, all of defense counsel's errors amount to a denial of effective assistance of counsel during pre-trial, and during trial in this matter.

**Witnesses addresses and names who could testify in support of my claims.**

**Claim 1 (A)**

Ernest F. Barrow, III 113 E. 23rd Ave., Convington, La. 70433; Frederick H. Kroenke, Jr. 707 Rapides Street, Baton Rouge, La. 70806; Rachel Yezbeck 701 Loyola Ave., Ste. 404, New Orleans, La. 70113; The Three Judge Panel of the Court of Appeals, First Circuit Court of Appeals, whom heard said appeal, Baton Rouge, La.; Marlone Rashen Brumfield, Louisiana State Prison, Angola, La., Court Reporter, Theresa Trapan, Courthouse, Convington, La; and this case, Courthouse, Convington, La.

Plus the record transcript of the trial proceedings.

## Claim 1 (B)

Asst. District Attorney, Kilion and Macke, both at Courthouse in Convington, La. Plus the record transcript of the trial proceedings. Marlone R. Brumfield La. State Prison; Attorney Ernest E. Barrow III, 113 E. 23rd Ave., Convington, La. 70433; and all police officers whom testified at trial, being that I am incarcerated and I don't have their addresses.

## Claim 1 (C)

The Sheriff and district attorney of St. Tammany Parish, Courthouse in Convington, La; Marlone R. Brumfield, Louisiana State Prison, Angola, La; Whatever discovery the state provides to petitioner in this matter, Attorney Ernest E. Barrow, III 113 E. 23rd Ave., Convington, La. 70433.

## Claim No. 2

Members of The Louisiana Legislature, State Capital, 22nd Floor, Baton Rouge, La. 70809, Marlone R. Brumfield, La. State Prison, Angola, La 70712, and all judges over this case, Courthouse, Convington, La. 70433;

## Claim No. 3

The District Attorney whom prosecuted this case, Courthouse, Convington, La.  Marlone R. Brumfield, La. State Prison, Angola, La 70712; Ernest E. Barrow, III 113 E. 23rd Ave., Convington, La. 70433;

## Claim No. 4

Marlone R. Brumfield, La. State Prison, Angola, La 70712; Ernest E. Barrow, III 113 E. 23rd Ave., Convington, La. 70433; The trial transcripts and appellant record, will best support this claim, plus the court reporter and clerk of court both located at the Courthouse in Convington, La.

## CONCLUSION AND PRAYER

WHEREFORE, Petitioner respectfully prays that for these reasons argued:

1. The State of Louisiana through its district attorney be duly served with a copy of the foregoing Supervisory Writ of Review on Petitioner's Application for Post-Conviction Relief;

2. The State of Louisiana be required to answer

3. The Court remand this case back to the trial court for a hearing with directive orders to set a date for an evidentiary hearing at which Petitioner may question his attorney(s) regarding the ineffective assistance of counsel claims;

4. After said evidentiary hearing be held, Petitioner be allowed to supplement his application, so that he may raise any additional claims that be discovered at said hearing;

19.

5.  The Court authorized request for admission of fact and genuineness of documents be propounded on the State of Louisiana pursuant to La. Cr.C.P.Art. 929 (B); also he be allowed to supplement once the State of Louisiana allow him to purchase his District attorney file, See Ex.-G, which state agreed to to provide said cost, but hasn't did so yet.

6.  After taking evidence, the court granted post-conviction relief, setting aside Petitioner's conviction and sentence and order that Petitioner be released immediately; and

7.  Grant such order and further relief as appears reasonable and just to which petitioner may be entitled.

Respectfully Submitted,

Marlone Rashen Brumfield # 496966
Louisiana State Prison
Angola, La. 70712

## CERTIFICATE OF SERVICE

I Marlone R. Brumfield, hereby certify that I have served a true and correct copy of the above and foregoing Supervisory Writ of Review upon the District Attorney, St. Tammany Parish, by placing same in the Institution's Legal Mail System for depositing in the U.S. Mail, properly addressed and with proper first-class postage pre-paid, this 8th day of ___April___, 2020.

Marlone R. Brumfield

20.

## VERIFICATION

STATE OF LOUISIANA
PARISH OF WEST FELICIANA

### MARLONE RASHEN BRUMFIELD

Before me, the undersigned Ex-Officio Notary, did personally appear <u>Marlone R. Brumfield,</u> <u>#496966</u>, who after having been duly sworn, does verify that he is the Petitioner in the above and foregoing; that he has read and understands the contents thereof; that he believes the contents thereof to be true and correct to the best of his knowledge, belief, and information, under the penalties of perjury prescribed by law.

Marlone R. Brumfield, #496966

SWORN TO AND SUBSCRIBED BEFORE ME this 8th day of April , 2020.

EX-OFFICIO NOTARY

21.